UNITED STATES DISTRICT COURT
for the
Southern District Of Florida
Miami Division

FILED BY ___PG___ D.C.

APR 21 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

| | |
|---|---|
| Joe Morford ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. ___1:21-cv-20039___ . |
| ) | |
| Maurizio Cattelan ) | |
| Defendant ) | |

## CLAIM

I, Joe Morford, plaintiff, created an artistic expression in 2000 entitled "Banana & Orange."

In 2020 I discovered that the work had been misappropriated by someone named Maurizio Cattelan who claimed it as his original creation. The accepted gallery photo of the work can be viewed here: https://en.wikipedia.org/wiki/Comedian_(artwork)

I discovered his plagiarism when it became a viral sensation online the result of its success at Art Basel in Miami Beach in 2019. His work was entitled "Comedian" and was a replication of the banana section of my work "Banana & Orange." He had simply extracted the heart of my work and claimed it as his own original creation. I then registered my work with the copyright office and shortly thereafter filed suit seeking profits generated from my misappropriated work as well as injunctive relief and court costs.

1. I have proof of my **origin** date via witness affidavits (2000) and unedited online posts (2008, 2015), which establish dates far-in-advance of the defendant's known display(s) (2018). 17 U.S. Code § 102 - Subject matter of copyright: In general (a)Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.

2. I have proof of **access** to my work since 2000 and, more specifically, international platforming (online) without interruption since 2008. The proof of worldwide access since 2008 is not simply speculation; suffice it to say the provided evidence exceeds the minimum threshold of proof allowing for more than simple inference of access established, which was rejected in (See *Selle v. Gibb*, 567 F. Supp. 1173 (N.D. Ill. 1983)). The cited instances can be confirmed to have been online with neither edits or respite since the stated time.

3. The **similarity** between the two works is more than substantial--it is striking. They are the exact same visual presentation with only nominal variations. As well, the infringement meeting the burden of both Extrinsic and Intrinsic test is moreover, **to the point where** 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" [Original Appalachian Artworks, Inc. v. Toy Loft, 684 F.2d 821, 829 (11th Cir. 1982) (quoting Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905, 911 (2d Cir. 1980))].

4. The **genre** itself of "wall sculpture" or "conceptual art" is not copyrightable (See Scènes à faire) also (See Herzog v. Castle Rock Entertainment); and of particular relevance this

category does lend itself to limitless possibilities for medium and materials, which make it even more blatant that the two works should end up with the exact two incongruous materials displayed in the same manner.

    5. The **context** and intent of the defendant's works is significant in that the infringement happened between two pieces created as "art." This is important because my work was not simply done as a random fruit display in a market which inspired an artist, nor was it realized as some drunken indulgence wherein the photo ended up on social media and became artistic inspiration. My work was originated as an artistic expression and the infringer simply replicated it using a real banana, which is nothing more than a crude and obvious attempt to hide the plagiarism. "Such cases are consistent with the general principle stated in 1 M. and D. Nimmer, *Nimmer on Copyright,* (1989) "The fact that a work in one medium has been copied from a work in another medium does not render it any less a "copy".

    6. **Simplicity** does not equal commonplace as an infinite number of simple arrangements are inherently incongruous or astronomically unlikely. Furthermore simplicity is established as to not be a factor in determining as defining art standard for protection (See **Feist Pubs., Inc. v. Rural Tel. Svc. Co., Inc., 499 U.S. 340 (1991)**) i.e. the "Sweat of the brow" doctrine wherein the standard for deciding whether a work can gain copyright protection is its originality rather than its creator's effort. This particular arrangement, though simple, is unique and the defendant's replication was the result of intentional imitation. The simplicity is the point. Why are there not two pieces of tape—or three bananas? Why not three plantains and four pieces of packing twine?

    7. The **fame** of the defendant as an "artist" should not be construed as acceptable excuse for the copying of my expression in that his plagiarism could elevate the visibility of my work. Misappropriation by the famous is no excuse as was stated in (See **Rogers v. Koons (1992)**) "The copying was so deliberate as to suggest that defendants resolved so long as they were significant players in the art business, and the copies they produced bettered the price of the copied work by a thousand to one, their piracy of a less well-known artist's work would escape being sullied by an accusation of plagiarism. (CARDAMONE, Circuit Judge)."

    8. The relevance of **experts** in this case is of no consequence in that the overriding issue here is the visual similarity between the two pieces and one not need to study art to come to that conclusion. Any reasonable person can make a relevant observation upon simple visual inspection (See Jenkins v. Jury, No. 5:07-cv-133-Oc-GRJ, 2009 WL 1043965, at *4 & n.24 (M.D. Fla. Apr. 16, 2009) (finding sculptures "strikingly similar" and noting that "expert testimony . . . [was] unnecessary . . . because this [was] not a 'technical' field in which the trier of fact [would] not [be] able to make [such a] determination" (internal quotation marks omitted) (quoting Kent v. Revere, No. 84-798-CIV-ORL-18, 1985 WL 6453, at *7 (M.D. Fla. Oct. 28, 1985))).

    9. The defendant did not have my permission, or right, to excerpt my piece as **derivation**. My work consists of a banana and orange separated into two independent sections. The banana cannot be taken out as it functions as a self-contained heart of the work. The infringer has co-opted the banana claiming it as his own original expression; and not including the orange in his piece does not protect him from a legitimate charge of copyright infringement in that the one who created the artwork maintains sole possession; including derivation in (See **Steinberg v. Columbia Pictures Industries, Inc (1987)** where the finding established the originator of the artwork owns the copyright against derivation).

10. The defendant cannot claim **fair-use** as simple copying of a work is not "commentary" or "criticism" it is misappropriation (See **Rogers v. Koons**); nor was it "commercial parody" (See **Campbell v. Acuff-Rose Music, Inc.**).

11. The **duration** of the artist's work due to the use of organic material does not accomplish a "transitory duration" defense as either works are in a "fixed medium of tangible expression." The defendant's copy of my work is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration (See **Cartoon Network v. CSC Holdings**).

12. The complaint requested **relief** via profits, expenses and injunctive relief in "the cessation of sale, distribution and display of any infringing material." It is vital that all violating material be removed as in (Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992) Holding that requiring a defendant to turn over infringing works "is an equitable remedy issued under the broad powers vested in a trial judge"). I believe it reasonable for all plagiarizing works to be removed as equitable remedy.

13. This complaint is not a **statutory** claim. And though it is my contention that the infringement was willful, because I am seeking profits in this case I do not have the burden of proving willful infringement (See Romag Fasteners Inc. v. Fossil Inc. et al., case number 18-1233). The issue here is not whether the act of infringement was accidental, coincidence or intentional it is substantial/striking similarity. And to that end, I submit the two works are strikingly similar and that all stated relief be awarded (17 U.S. Code § 504 - Remedies for infringement: Damages and profits). Additionally (See, e.g., 17 U.S.C. § 504(b) (2012) (specifying burdens of proof when plaintiff seeks recovery of the alleged infringer's profits); § 504(c) (2012) (specifying burdens of proof concerning willful or innocent infringement when plaintiff seeks recovery of statutory damages); and § 1203(c)(4)–(5) (2012) (specifying burdens of proof with respect to enhancements and limitations of statutory damages available for violations of §§ 1201 and 1202 regarding technological protection measures and copyright management information).

_____
Joe Morford, Pro Se

# REQUEST FOR INJUNCTIVE RELIEF

## Relief

The complaint requested **relief** via profits, expenses and injunctive relief in "the cessation of sale, distribution and display of any infringing material." It is vital that all violating material be removed as in (See Rogers v. Koons, 960 F.2d 301 (2d Cir. 1992) Holding that requiring a defendant to turn over infringing works "is an equitable remedy issued under the broad powers vested in a trial judge"). I believe it reasonable for all plagiarizing works to be removed as equitable remedy.

*

**Reference:**

**17 U.S.C. § 503. Remedies for infringement: Impounding and disposition of infringing articles**
https://www.copyright.gov/title17/92chap5.html

(a)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable—
(A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;
(B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; and
(C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.
(2) For impoundments of records ordered under paragraph (1)(C), the court shall enter an appropriate protective order with respect to discovery and use of any records or information that has been impounded. The protective order shall provide for appropriate procedures to ensure that confidential, private, proprietary, or privileged information contained in such records is not improperly disclosed or used.
(3) The relevant provisions of paragraphs (2) through (11) of section 34(d) of the Trademark Act (15 U.S.C. 1116(d)(2) through (11)) shall extend to any impoundment of records ordered under paragraph (1)(C) that is based upon an ex parte application, notwithstanding the provisions of rule 65 of the Federal Rules of Civil Procedure. Any references in paragraphs (2) through (11) of section 34(d) of the Trademark Act to section 32 of such Act shall be read as references to section 501 of this title, and references to use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services shall be read as references to infringement of a copyright.

(b) As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

Below is an additional list of partial platforming/merchandising at present:

**Guggenheim**

**The New York Times**
It's a Banana. It's Art. And Now It's the Guggenheim's Problem
https://www.nytimes.com/2020/09/18/arts/design/banana-art-guggenheim.html

**Artsynet**
Maurizio Cattelan's "Comedian" was gifted to the Guggenheim Museum
https://www.artsy.net/news/artsy-editorial-maurizio-cattelans-comedian-gifted-guggenheim-museum

**The Art Newspaper**
Cattelan's notorious banana finds a home at the Guggenheim
https://www.theartnewspaper.com/blog/cattelan-s-notorious-banana-finds-a-home-at-the-guggenheim

\*

**Spreadshirt**
https://www.spreadshirt.com/shop/design/banana+duct+tape+art+basel+miami+duct-taped+mens+premium+t-shirt-D5df01493f937640f7bf36035

**Redbubble**
https://www.redbubble.com/shop/banana+duct+tape

**Medium**
https://medium.com/@jlevski111/a-duct-tape-banana-has-stolen-the-internet-and-now-you-can-buy-it-on-a-t-shirt-b1e3c455fbf3

**Bananateeofficial**
https://bananateeofficial.wixsite.com/bananatee/product-page/taped-tee

**Instagram - Bananateeofficial**
https://www.instagram.com/bananateeofficial/?hl=en

**Instagram - Artbaselbanana**
https://www.instagram.com/artbaselbanana/?hl=en

Civil Action No.:1:21-cv-20039
Morford v. Cattelan

# SUM CERTAIN SOURCES

## Sales

## "Comedian"
### Art Basel, Miami Beach (December 5 - 8, 2019)

| Work | Source | Quantity | Price |
|---|---|---|---|
| Wall Sculpture | WSJ, New York Times, PBS | 1 | $120,000.00 |
| Wall Sculpture | WSJ, New York Times, PBS | 1 | $120,000.00 |
| Wall Sculpture | WSJ, New York Times, PBS | 1 | $150,000.00 |
| Artist Proof | WSJ, New York Times, *PBS | 1 | $150,000.00 |
| Artist Proof | WSJ, New York Times, *PBS | 1 | $150,000.00 |
|  | **TOTAL** | **5** | **$690,000.00** |

*PBS - Price Graphic, attached.

## SOURCES

**WSJ**
By Brian P. Kelly
Dec. 9, 2019 3:46 pm ET
https://www.wsj.com/articles/in-defense-of-maurizio-cattelans-banana-11575924402
**Excerpt:**
1) "This work by Mr. Cattelan, an Italian artist known as a prankster, was scooped up for $120,000. Another edition quickly went for the same price. A third was later bought in the ballpark of $150,000. By the end of the weekend, two "artist's proofs" of the work had also been acquired by museums (though the gallery declined to say which ones or how much they paid)."

*

**New York Times**
By Robin Pogrebin
Published Dec. 8, 2019
Updated Sept. 18, 2020
https://www.nytimes.com/2019/12/08/arts/design/banana-removed-art-basel.html
**Excerpts:**
1) "The artist Maurizio Cattelan — whose fruit pinned to the wall with gray duct tape was sold three times at Art Basel Miami, for $120,000 to $150,000 each time — and his

gallery Perrotin announced on Sunday, the last day of the fair, that the banana had been removed from its booth because of the Mona Lisa-like attention it was getting."
2) 'Two "artist proofs" (extra prints signed as part of a limited edition) were sold to unidentified museums.'

\*

**PBS**
THE ART ASSIGNMENT
The $150,000 Banana
Season 6, Episode 19
Aired: 01/21/20
By Sarah Urist Green
https://www.pbs.org/video/the-150000-banana-1di9km/
**Excerpt:**
Video Text (below) starting @ 1:40 / 11:50
1) "Gallerie Perrotin was offering three editions of the work for $120,000.00 each. Two of those sold very quickly and then the dealer raised the price to $150,000.00 for the third, which also sold. There were an additional two artist proofs of comedian that were both sold to museums by the end of the fair. (Video 1:57 / graphic indicating Proofs SOLD @ $150K each). Now, artist proofs are generally the small number of prints in a limited edition that an artist hangs onto for their own collection or to hold back and sell later on to someone important. They're often regarded as special and can sell for more than the original edition even though, yes, they are technically they are the exact same."

\*

**New York Magazine/Vulture**
ART | UPDATED DEC. 8, 2019
Maurizio Cattelan Duct-tapes Banana to Wall, Makes $240,000, Credits New York
By Christopher Bonanos
@heybonanos
https://www.vulture.com/2019/12/man-duct-tapes-banana-to-wall-makes-usd240-000.html

"Maurizio Cattelan Duct-tapes Banana to Wall, Makes **$240,000,** Credits New York"

"What he came up with for us was a photograph of a banana duct-taped to a wall. This week at Art Basel Miami Beach, citing our commission as "the inspiring source," he hung its three-dimensional representation. It's priced at $120,000."

'The new work has been produced in his usual edition (not to say "bunch") of three pieces plus two artist's proofs. Two of the three have already been sold to unnamed collectors; Cattelan knows one of them, and the person "totally makes sense as the

Page 1 of 3

buyer." He's not in Miami for the fair — he doesn't go — and, in his New York apartment this morning, he said, "I just ate one of the two artist's proofs.'"

*

**New York Times**
A (Grudging) Defense of the $120,000 Banana
By Jason Farago
Published Dec. 8, 2019
Updated Sept. 18, 2020
https://www.nytimes.com/2019/12/08/arts/design/a-critics-defense-of-cattelan-banana-.html
As to why Mr. Cattelan's banana has gripped the public imagination, it has something to do with its price — $120,000 to $150,000, in an edition of three and two artists' proofs — and the emperor's-new-clothes impression of the international collecting class fawning over it at Art Basel.

Civil Action No.:1:21-cv-20039
Morford v. Cattelan

# Facebook
## Joe Morford Artist
"Banana & Orange"
Continuously visible and unedited on Facebook since **07/23/2015**.



# LINK:
## Banana & Orange (Facebook)

https://www.facebook.com/joemorfordartist/photos/a.936040206435195/934579329914616/?type=3&theater

Civil Action No.:1:21-cv-20039
Morford v. Cattelan

# YouTube
## Lobster Parlour Art | Joe Morford Abstract Collection 7
"Banana & Orange"
Continuously visible and unedited on YouTube since **07/18/2008**.



# LINK:
## Banana & Orange (YouTube)
https://www.youtube.com/watch?v=3m5JzeSfMBw

Civil Action No.:1:21-cv-20039
Morford v. Cattelan

