# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No. 1:21-cv-20039-RNS

JOE MORFORD,

        Plaintiff,

vs.

MAURIZIO CATTELAN,

        Defendant.

_____/

## MOTION TO SET ASIDE ENTRY OF CLERK'S DEFAULT[1]

Defendant Maurizio Cattelan ("Cattelan"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 55(c), moves for the Court to set aside entry of the Clerk's default in this case.  In further support of this Motion, Cattelan states as follows:

### INTRODUCTION

Cattelan has good cause to vacate the default.  <u>First</u>, Cattelan's default was not willful. Plaintiff purports to have served a copy of the complaint in March 2021 by leaving a copy with the manager of a building in New York City in which Cattelan has an apartment and then by mailing a copy to the apartment.  Cattelan was out of the United States in March 2021.  In fact, Cattelan, a citizen of Italy, departed the United States at the end of February 2020 or the beginning

---

[1] Among other applicable reservations, Defendant Maurizio Cattelan, and undersigned counsel acting on his behalf, specially appears for the limited purpose of filing this Motion and expressly reserves, and does not waive, any and all defenses related to this action, including, without limitation, the defenses of lack of personal jurisdiction and insufficient service of process and all other defenses otherwise available under the Federal Rules of Civil Procedure.

of March 2020 due to the emerging COVID-19 pandemic.  He did not return to the United States and his New York City apartment until October 28, 2021.  And he did not review the mail and other material delivered to his apartment until October 29, 2021 at which point he diligently commenced efforts to retain counsel.  Cattelan's failure in timely responding to the complaint was not willful.

      Second, Plaintiff will not be prejudiced by having to litigate this case.  Cattelan's absence from the country means he received a copy of the complaint seven (7) months after service was attempted.  This delay should not cause evidence to be lost or make discovery more difficult.

      Third, Cattelan has meritorious defenses.  The Court lacks personal jurisdiction over Cattelan because service was improper and Florida's long-arm statute and due process have not been satisfied.  Further, Plaintiff purports to allege a copyright infringement against Cattelan.  It appears that Plaintiff's sculpture, Banana & Orange, is a sculptural banana and orange suspended from a green background by duct tape which adheres the fruit to the background. It is impossible to tell what is the media for Plaintiff's work but it appears to be made out of plastic or some other inorganic material.  Cattelan's piece, *Comedian*, on the other hand consists of an actual banana duct-taped to a wall.  Cattelan has been working with duct tape since at least 1999.  Plaintiff seeks to own the idea of a banana duct-taped to a wall.  The copyright laws do not extend protection over ideas or to functional objects (duct tape), or natural objects (fruit).  Further, Plaintiff cannot establish that Cattelan copied Plaintiff's work; Plaintiff cannot establish that Cattelan had access to Banana & Orange. Finally,  there is no substantial similarity between the protectible aspects of either party's work rendering Plaintiff's copyright claim without merit.

## PROCEDURAL HISTORY AND BACKGROUND

1.      On January 4, 2021, Plaintiff filed a complaint that purports to state a claim for copyright infringement (the "Complaint"). [ECF No. 1.]

2.      On March 22, 2021, Plaintiff filed an Affidavit of Service that states the Summons and Complaint were served on Cattelan at "263 9th Ave., #9C, New York, NY" by delivering them to "John Doe – REUSED NAME (BUILDING MANAGER)" and that a copy was mailed to Cattelan in an envelope addressed to "263 9th AVE., #9C, New York, NY 10001." [ECF No. 13, at 3.]  Based on the Affidavit of Service, the deadline to respond to the Complaint was April 7, 2021. [ECF No. 14.]

3.      On April 12, 2021, the Court entered an Order on Clerk's Default Procedure, ordering Plaintiff to submit a Motion for Entry of Clerk's Default by April 16, 2021 and "to include a certificate of service indicating that Plaintiff sent it to the Defendant(s), including the address(es) it was mailed to." [ECF No. 15.]   On the same day, Plaintiff filed a request for entry of Clerk's default. [ECF No. 18.]

4.      On April 12, 2021, the Clerk entered a Default.  [ECF No. 19.]

5.      Cattelan's primary residence is in Milan, Italy.  Cattelan has an apartment located at 263 9th Avenue, #9C, New York, NY.   *See* Declaration of Maurizio Cattelan, attached hereto as Exhibit A.

6.      At the end of February 2020 or early March 2020 Cattelan was in New York.  He departed the United States and his New York apartment at that time due to the emerging COVID-19 pandemic.  Cattelan Decl. ¶ 3. Cattelan did not return to the United States and his New York apartment until Thursday, October 28, 2021.  No one had access to Cattelan's New York apartment in his absence or reviewed his mail.  *Id.*

7.     On Friday, October 29, 2021, Cattelan reviewed the mail and other material that were delivered to his New York apartment during his 20-month absence, include the complaint filed in this action.  *Id.* ¶ 4. Cattelan immediately commenced efforts to retain counsel to defend him.  *Id.* ¶ 5.

8.     Undersigned counsel entered an appearance in this matter on November 5, 2021. [ECF Nos. 27 & 28.]

## ARGUMENT

The Court may set aside an entry of default "for good cause." Fed. R. Civ. P. 55(c). "Good cause" is "mutable" and "liberal" standard.  *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).  Although "not susceptible to precise formula," good cause is measured by some general factors.  *Id.*   These factors include: "(1) whether the default was culpable or willful; (2) whether setting it aside would prejudice the adversary; and (3) whether the defaulting party presents a meritorious defense."  *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).

To vacate a default, the moving party need only make a "bare minimum showing." *Pure Fresh, LLC v. Liaison Can./U.S. Logistics (USA) Corp.*, No. 19-CV-60079, 2019 WL 1921991, at *1 (S.D. Fla. Apr. 30, 2019). The Eleventh Circuit maintains "a strong policy of determining cases on their merits and [] therefore view[s] defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

**Good Cause Exists for Cattelan's Failure to Respond to the Complaint**

**I.    Defendant's Default Was Neither Culpable nor Willful**

Cattelan's default was neither culpable nor willful.  A "party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings." *Compania*, 88 F.3d at 951.  That is not the case here.

Cattelan's first notice of the complaint was on October 29, 2021.  Cattelan Decl. ¶¶ 3-5. Cattelan, a citizen of Italy, was out of the country from the end of February 2020 or early March 2020 to October 28, 2021.  *Id.* ¶ 3. He left the United States due to the emerging COVID-19 pandemic and did not return to the country, much less his New York apartment, for 20 months. *Id.*  No one had access to Cattelan's apartment or reviewed his mail and deliveries during his 20-month absence.  *Id.*  On October 29, 2021, Cattelan reviewed the mail and other material delivered to his New York apartment in his absence.  *Id.* ¶ 4.  The collection of mail and deliveries included a copy of the complaint that was not enclosed in an envelope.  *Id.*  Upon reviewing the complaint, he immediately commenced efforts to retain counsel to defend him. *Id.* ¶ 5.

Nothing about these circumstances demonstrates that Cattelan was at fault for not responding to the complaint.

**II.   Setting Aside the Default in this Matter Will Not Prejudice Plaintiff**

Plaintiff will not be prejudiced if the default is vacated.  In evaluating prejudice, the focus is on "the effect of setting aside the default, if any, on [p]laintiff's ability to prosecute the case on the merits." *Tyco Fire & Sec. v. Alcocer*, No. 04-23127-CIV, 2009 WL 789657, at *3 (S.D. Fla. Mar. 23, 2009).  The relevant "inquiry is whether prejudice results from the delay, not from having to continue to litigate the case." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1357 (11th Cir. 2009).

If the default is vacated, Plaintiff retains the ability to prosecute the case on the merits. Plaintiff purports to have served Cattelan in March 2021. A seven-month delay should not result in a loss of evidence or difficulty obtaining discovery. At most, Plaintiff must now proceed to litigate his case, which comports with the Eleventh Circuit's policy that cases should be determined on the merits and that entry of judgment by default is reserved only for extreme situations. *Worldwide Web Sys.*, 328 F.3d at 1295.

### III.    Cattelan Has Meritorious Defenses

The third factor – a meritorious defense – also weighs in Cattelan's favor. Where a defendant "has provided by clear statements a 'hint of a suggestion' that his case has merit, that is sufficient" for establishing a meritorious defense. *Griffin IT Media, Inc. v. Intelligentz Corp.*, No. 07-80535, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16, 2008) (quoting *Moldwood Corp. v.* Stutts, 410 F.2d 351, 352 (5th Cir. 1969)). "Likelihood of success is not the measure." *Id.* at *3 (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

Cattelan has meritorious defenses.

### A.    Service of the Summons and Complaint Was Improper.

Service of the Summons and Complaint were improper and should be quashed. "Service of process upon a natural person must be made in strict compliance with the statutory methods of service set forth in CPLR 308." *Kondaur Cap. Corp. v. McAuliffe*, 156 A.D.3d 778, 779, 67 N.Y.S.3d 653, 655 (2017). Service of the Summons and Complaint purports to have been by CPLR § 308.2, which provides that

> Personal service upon a natural person shall be made . . .
> * * *
> 2. delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served ***and*** by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an

> envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other

CPLR § 308.2 (emphasis added).  "A sworn denial containing a detailed and specific contradiction of the allegations in the process server's affidavit will defeat the presumption of proper service." *Machovec v. Svoboda*, 120 A.D.3d 772, 773-74, 992 N.Y.S.2d 279 (2014).

The Affidavit of Service filed by Plaintiff avers that service was effectuated by delivering a copy of the Summons and Complaint to the "BUILDING MANAGER" and by mailing a copy to Cattelan at his New York apartment.  [ECF No. 13, at 3.]  Cattelan did not receive a copy of the Summons and Complaint through the mail.  Cattelan only received one copy of the Summons and Complaint, and it was not enclosed in an envelope.  Cattelan received other papers filed in the lawsuit enclosed in stamped envelopes.  None of these papers were the Summons and Complaint. This does not constitute proper service pursuant to CPLR § 308.2, which requires service on a person of suitable age at the apartment **and** mailing to the apartment.

## B.    The Court Lacks Personal Jurisdiction.

There is no basis for exercising personal jurisdiction over Cattelan.  Because the copyright statute, 28 U.S.C. § 1338(a), is silent as to service of process, the forum state's long-arm statute is applied to evaluate personal jurisdiction over a nonresident defendant.  *See Sculptchair , Inc. v. Century Arts, Ltd*., 94 F.3d 623, 626-27 (11th Cir. 1996).  The allegations in the Complaint must withstand a two-part analysis to establish personal jurisdiction, namely: (1) whether a factual basis exists under Florida's long-arm statute, Fla. Stat. § 48.193, and (2) whether personal jurisdiction satisfies federal due process requirements.  *Louis Vuitton Malletier, S.A. v. Mosseri*,  736 F.3d 1339, 1350 (11th Cir. 2013).  Plaintiff has failed to allege sufficient facts to make out a prima facie case of personal jurisdiction over Cattelan, and the declaration of Mauricio Cattelan, attached

hereto, demonstrates that there is no basis. *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir.2009).

First, there is no basis for general personal jurisdiction under Florida's long-arm statute. Cattelan is not "engaged in substantial and not isolated activity within [Florida]" to support general jurisdiction *See* Fla. Stat. § 48.193(2); *see also Moreno v. Carnival Corp.*, 488 F. Supp. 3d 1233, 1239 (S.D. Fla. 2020) (holding no general jurisdiction over defendant where complaint failed to allege "substantial and not isolated" activity and defendant's affidavit attested that it did not conduct business in Florida). Cattelan does not reside in Florida. Cattelan Decl. ¶ 6. He does not own or lease real property in Florida. *Id.* He does not have bank accounts in Florida. *Id.* He does not have an office in Florida. *Id.* He does not have investments in Florida. *Id.* He does not operate any businesses or business ventures in Florida. Cattelan Decl. ¶ 6. Accordingly, there is no basis for the Court to exercise general personal jurisdiction over Cattelan.

Second, there is no basis for specific jurisdiction under Florida's long-arm statute. "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352. Plaintiff fails to allege any basis for specific jurisdiction, and none of the provisions of Fla. Stat. § 48.193(1)(a) apply, even if they had been alleged. Cattelan does not operate or carry on a business or business venture in Florida, does not have a mortgage or other lien on real property in Florida, did not procure insurance for risks located in Florida, and Plaintiff's copyright infringement action does not arise from such acts. Cattelan Dec. ¶ 6; *see also* Fla. Stat. § 48.193(1)(a)1, 3, 4.

Further, Cattelan has not committed a tortious act in Florida.  *See* Fla. Stat. § 48.193(1)(a)2.
"[A] nonresident defendant commits 'a tortious act within [Florida]' when he commits an act
outside the state that causes injury within Florida." *Louis Vuitton*, 736 F.3d at 1353 (alteration in
original & citation omitted). "In copyright infringement cases, the situs of injury is generally the
state where the copyright owner resides." *Venus Fashion, Inc. v. Changchun Chengji Tech. Co.*,
No. 16-61752-CIV, 2016 WL 10636377, at *2 (S.D. Fla. Nov. 2, 2016). As alleged, Plaintiff is a
resident of California.  Complaint, at ¶¶ 1.A., B.1.a. [ECF 1].  Therefore, any purported injury
occurred in California and not Florida.  For this reason, there is no specific jurisdiction under Fla.
Stat. § 48.193(1)(a)6, for "[c]ausing injury to persons or property within this state arising out of
an act or omission by the defendant outside this state."

Third, even if the Court were to find that the long-arm statute provides a basis for personal
jurisdiction, exercising personal jurisdiction over Cattelan would violate due process.   The
Eleventh Circuit applies a three-part due process test: "(1) whether the plaintiff's claims 'arise out
of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident
defendant 'purposefully availed" himself of the privilege of conducting activities within the forum
state . . . ; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions
of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (citations omitted).  In an
intentional tort case, the defendant's "purposeful availment" may be evaluated under the "effects
test" and the "minimum contacts" test.[2]

The effects test requires that the tort be intentional, aimed at the forum state, and cause
harm that the defendant should have anticipated would be suffered in the forum state.  *Roberts v.*

---

[2]   Copyright infringement is considered an intentional tort for these purposes.  *Yellow Pages
Photos, Inc. v. Ziplocal, LP,* No. 12-cv-755, 2021 WL 2952452, at *5 (S.D. Fla. July 19, 2021).

*Gordy*, No. 13-24700, 2015 WL 11202324, at *5 (S.D. Fla. Apr. 3, 2015) (citing *Licciardello v. Lovelady,* 544 F.3d 1280, 1284-88 (11th Cir. 2008)).   The Complaint alleges Plaintiff is a California resident.  Accordingly, there is no harm directed at Plaintiff in Florida.  Further, Plaintiff does not allege facts showing that Cattelan would anticipate harm in Florida.  To do so, Plaintiff would have to allege that Cattelan knew he was infringing Plaintiff's copyright and continued to do so anyway.  *Frida Kahlo Corp. v. Pinedo*, No. 18-21826, 2012 WL 4147876, at *6 (S.D. Fla. Sept. 13, 2021).  Plaintiff does not, and cannot, allege such facts.

Alternatively, personal jurisdiction over Cattelan fails to satisfy the minimum contacts test. Minimum contacts require that the defendant's contacts: "(1) [be] related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed [itself] of the privileges of doing business within the forum; and (3) [be] such that the defendant should reasonably anticipate being haled into court in the forum."  *Id.* (citations omitted).  Cattelan did not purposefully direct or conduct any activities in Florida.  *Id.* at *6.  Art Basel is an international art fair held in Basel, Hong Kong, and Miami Beach at different times of the year.  Cattelan did not personally exhibit *Comedian* at Art Basel in Miami Beach in 2019.  Cattelan Dec. ¶ 8.  Perrotin exhibited the work.  *Id.*  Perrotin is a gallery with locations in Paris and New York, among other cities outside of Florida. Cattelan had no control over Perrotin's exhibition at the art fair.  *Id.*  For these reasons, the Court lacks personal jurisdiction over Cattelan.

### C.   Plaintiff Does Not Have a Claim for Copyright Infringement.

The Copyright Clause of the United States Constitution provides that "Congress shall have Power ... to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries ...." U.S. CONST. art. I, § 8, cl. 8. "The primary objective of copyright is not to reward the labor of authors,

but '[t]o promote the Progress of Science and useful Arts.' " *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991).

To establish copyright infringement, a plaintiff must show at least two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Singleton v. Dean*, 611 Fed. Appx. 671, 672 (11th Cir. 2015) (citing *Beal v. Paramount Pictures Corp*., 20 F.3d 454, 459 (11th Cir. 1994)). "The mere fact that a work is copyrighted does not mean that every element of the work is protected, because copyright protection extends only to the original elements of expression in a work." *Id.* "To establish copying, the plaintiff must show that the defendant had access to the copyrighted work and that the two works are so 'substantially similar' that an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Id.* (citing *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002)).

Here, Plaintiff's copyright claim fails because, among other reasons: (1) he is attempting to claim ownership of a natural element that exists in the world (a fruit) and a utilitarian, functional component (duct tape), which U.S Copyright law does not allow; (2) Plaintiff cannot establish Cattelan's access to Plaintiff's work; and (3) there is no substantial similarity between protectible aspects of either party's work.

**1.**       ***Plaintiff Cannot Extend His Alleged Copyright to Cover Elements that Exist in Nature and/or Utilitarian Components.***

It has long been established that ideas that are standard, stock or common to a particular subject are not copyrightable by copyright law. *See, e.g.*, *Stewart v. Abend,* 495 U.S. 207, 234, (1990) (an author "may receive protection only for his original additions," not "elements ... already in the public domain"); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003); *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 741 (9th Cir.1971) ("Any inference of copying based

upon similar appearance lost much of its strength because both [works] were lifelike representations of a natural creature"). "Nature gives us ideas of animals in their natural surroundings… and that "[t]hese ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Satava*, 323 F.3d at 810. The Ninth Circuit in *Satava* considered the scope of copyright protection that could be afforded to a realistic jellyfish sculpture in a glass jar and found that plaintiff's sculpture "merely combined several unprotectable ideas and standard elements" that were elements of the public domain, including tendril-like tentacles, rounded bells, and a clear outer layer of glass, "without the quantum of originality needed to merit copyright protection." *Id.* at 811, 813. The Court concluded that a purported copyright holder "may not prevent others from copying aspects of his sculptures resulting from either [the animal's] physiology or from [the animal's] depiction in the [particular artistic] medium." *Id.* at 810.

Similarly, in *George S. Chen Corp. v. Cadona International, Inc.*, No. 04-365, 2006 WL 8450995 (C.D. Cal. Feb. 14, 2006), the defendant argued that a frog ornament and dolphin wind chimes did not satisfy the originality requirement set forth in 17 U.S.C. 102(a) because they depicted animals found in nature and/or contained standard, stock characteristics. The Court in *Cadona* held, "like the jellyfish sculpture in *Satava*, [plaintiff's products are] a combination of unprotectable ideas without the quantum of originality necessary for the combination to constitute an original work of authorship." Furthermore, the Court's own observation of the exemplar compelled the *Cadona* Court to find that "[t]he frog truly is a simple green frog sitting as it would in nature" and that "[n]o reasonable fact finder would be able to find anything distinctive about the acrylic frog." *Id.* at 5.

In addition, "functional components have generally been denied copyright protection." *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.,* 696 F.2d 918, 923 (11th Cir. 1983) (holding that wire wheel covers were "useful articles containing no physically or conceptually separable works of art" and were not entitled to copyright protection); *Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.*, 549 F. Appx. 913 (11th Cir. 2013) (affirming grant of summary judgment in favor of defendant infringer because light fixture were useful articles without separate artistic, nonfunctional elements);  11 *Nimmer on Copyright* § 906.8 (useful articles).

Here, Plaintiff seeks to prevent Cattelan from depicting – or in this case, using – an actual banana.  The copyright laws were not meant to prevent portrayal of elements existing in nature or the world and, certainly, based on the above authority, Plaintiff cannot own a banana.  Moreover, since the duct tape on both parties' works serves to affix the banana against the surface, the duct tape serves a merely functional purpose, which is similarly not ownable. [3]

## 2.     *Plaintiff Cannot Establish Access.*

Plaintiff's sole argument in support of Cattelan's access to his work – a *sine qua non* of any copyright infringement claim -- is that Plaintiff posted an image of it on his own Facebook page and that it appeared on YouTube.  These allegations are insufficient as a matter of law to establish access necessary to support a copyright claim.  *See, e.g., Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017) (quoting *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984) ("The plaintiff must always present sufficient evidence to support a reasonable possibility of access because the jury cannot draw an inference of access based upon speculation and

---

[3]  Defendant reserves the right to argue at the appropriate time that since Plaintiff's work does not modify or change the banana, orange or other  constituent elements in any manner or otherwise add the quantum of originality required to merit copyright protection, Plaintiff's copyright is itself invalid.

conjecture alone.").  The mere existence of a Facebook post or YouTube video "does not raise a genuine issue of material fact as to access." *Id.*; *see also Cain v. Hallmark Cards, Inc.*, Civ. No. 3:15-00351, 2016 WL 3189231, at *5 (M.D. La. June 6, 2016) ("[E]stablishing a bare possibility of access is not enough, and a plaintiff must prove that ... a defendant had a reasonable possibility of viewing the work. Applying this doctrine, courts have consistently refused to treat internet publication alone as sufficient to engender this requisite possibility"); *Stabile v. Paul Smith Ltd.*, 137 F.Supp.3d 1173, 1187 (C.D. Cal. 2015) ("Even if an inference can be drawn that [Plaintiff's painting] appeared at one time on Plaintiff's website, simply displaying an image on a website for an undeterminable period of time is insufficient to demonstrate that it was widely disseminated."); *Loomis v. Cornish*, No. CV 12-5525, 2013 WL 6044345, at *12 (C.D. Cal. Nov. 13, 2013) ("The availability of a copyrighted work on the Internet, in and of itself, is insufficient to show access through wide-spread dissemination."), *aff'd*, 836 F.3d 991 (9th Cir. 2016); *Hayes v. Minaj*, No. 2:12-cv-07972, 2012 WL 12887393, at *3 (C.D. Cal. Dec. 18, 2012) (same); *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F.Supp.2d 500, 515 (S.D.N.Y. 2008) (same).[4]

**3.** ***Plaintiff Cannot Establish Substantial Similarity Regarding Protectable Elements of His Work.***

Independent of access, Plaintiff cannot establish substantial similarity to any protectable aspects of his work.  In the Eleventh Circuit, to establish substantial similarity, a plaintiff "must satisfy a two-pronged test: (1) an extrinsic, objective test, and (2) an intrinsic, subjective test." *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873,  877 (11th Cir. 2007) (citing *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1257 (11th Cir. 1999))*.* "Under the extrinsic test, a court will inquire

---

[4]  In the absence of access, Plaintiff is left to argue that the two works are "strikingly similar." However, that argument is readily dispatched in Section C.3 below, as there is no similarity, striking or otherwise, as to *protectible* elements of both works.

into whether, as an objective matter, the works are substantially similar in protected expression." *Id.*  For this test, "analytic dissection" is appropriate.  *Herzog,* 193 F.3d 1241 at 1257.

"[A] court must filter out and disregard the non-protectable elements." *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042, 1045 (9th Cir. 1994*)*; *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1303 (11th Cir. 2020) ("Filtration, again, refers to the process of separating the protectable elements of a copyrighted work from elements that, for one reason or another, aren't protected.").  The defendant has the burden of proving that elements of a work are unprotectable. *See Compulife Software Inc.,* 959 F.3d at 1306.  After filtering out similarities as to the non-protectable elements, "the burden shifts back to the plaintiff to prove substantial similarity between any remaining (*i.e.*, unfiltered) protectable material and the allegedly infringing work." *Id.*  If the defendant demonstrates that the works are similar only as to "unprotectable material, such that no substantial similarities remain after filtration, the defendant is entitled to summary judgment." *Id.*  Simply put, for the extrinsic test, "the court will determine whether [the plaintiff] seeks to protect only uncopyrightable elements," and if so, the works are not substantially similar as a matter of law, and summary judgment is appropriate. *Lil' Joe Wein Music,* 245 F. App'x at 877.  In applying the extrinsic test, the court will engage in "analytic dissection" by "breaking the works into their constituent elements." *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC,* No. 12-22539, 2014 WL 7150626, at *7 (S.D. Fla. Dec. 15, 2014).

Here, the constituent elements of Cattelan's work are a banana and duct tape.  For the reasons articulated above, Plaintiff seeks to protect only uncopyrightable elements – a banana and duct tape – the orange in Plaintiff's work not even appearing in Cattelan's work.  Therefore, as a matter of law, the works are not substantially similar, and Plaintiff cannot succeed on his copyright claim. *See, e.g., Cortes v. Universal Music Latino*, 477 F.Supp.3d 1290, 1297 (S.D. Fla. 2020)

("For the substantial similarity analysis, courts must compare the competing works side-by-side…Having done so here, the Court finds that Defendants are entitled to summary judgment because the works are only similar as to unprotectable elements and share no commonality at the level of protectable expression").[5]

## CONCLUSION

For these reasons, the Court should vacate the Clerk's Default entered against Cattelan.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

On November 15, 2021, undersigned counsel attempted to contacted *pro se* Plaintiff by email to confer regarding the relief requested herein.  In the morning of November 16, 2021, undersigned counsel attempted to contact Plaintiff by telephone and left a voice message. To date, Plaintiff has not responded to the email or the telephone message.

/s Julie Nevins

---

[5]  Cattelan has additional meritorious defenses including fair use under section 107 of the Copyright Act that he will interpose at the appropriate motion to dismiss juncture.

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard
Suite 3100
Miami, Florida 33131
Tel:  (305) 358-9900
Fax:  (305) 789-9302

By:  /s/ Julie E. Nevins
  Julie E. Nevins, Esq.
  Florida Bar Number: 182206
  jnevins@stroock.com
  asantiesteban@stroock.com
  Adam R. Hoock, Esq.
  Florida Bar Number: 118264
  ahoock@stroock.com

*Attorney for Defendant Maurizio Cattelan*

Of Counsel:

Kane Kessler, P.C.
600 Third Avenue
New York, NY 10016
(212) 541-6222
Adam Cohen, Esq. (acohen@kanekessler.com) (pro hac vice application to be filed)
Dana Susman, Esq. (dsusman@kanekessler.com) (pro hac vice application to be filed)

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 17, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties and counsel of record.

By: /s/ Julie E. Nevins