UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION
Case No. 1:21-cv-20039-RNS

JOE MORFORD,
Plaintiff,

v.

MAURIZIO CATTELAN,
Defendant.

FILED BY ___PG___ D.C.

JAN 03 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## RESPONSE TO MOTION TO SET ASIDE DEFAULT

There is no good cause to set aside default in this case.

### I. Defendant's Default Was Both Culpable and Willful

There is sufficient evidence to show that the Defendant willfully defaulted by displaying an intentional and reckless disregard for the judicial proceedings. See ""However, if a party willfully defaults by displaying either an **intentional or reckless disregard** for the judicial proceedings, the court need make no other findings in denying relief." *Id.* at 951-52." *Turner v. Smith, Dean Associates*, CASE NO: 8:10-cv-1665-JDW-AEP, 2 (M.D. Fla. Feb. 10, 2011).

1. Ignoring one's residential deliveries (including all mail for 20+ months) is intentional and reckless disregard for basic law.

2. Responding to Summons and Complaint some 7+ months after service is intentional and reckless disregard for this case.

3. Defendant is claiming he intentionally ignored residential delivery to his US Address for a considerable period of time, which is reckless. The Defendant then chooses to address this case some 7+ months later--at his convenience. If the Defendant knew of the Summons and Complaint and did respond, it is unacceptable. If the Defendant did not know, as he claims,

because he simply chose to ignore deliveries to his stated residential address for 20+ months--it is also unacceptable.

I assert the Defendant's actions were willful and deliberate and motivated by bad faith: The Defendant was not hospitalized or otherwise incapacitated.  The Defendant's address did not change.  The Defendant did not become homeless.  The Defendant was not denied access to his residence.  The Defendant had no plausible reason to simply ignore correspondence for some 20+ months.

## II. Setting Aside the Default in this Matter Will Prejudice Plaintiff

I believe I will be prejudiced by setting the default aside.

Upon discovering the infringement I immediately took action as I understood the impact of delay.  Conversely, the Defendant, having been afforded such a considerable period of time in which to respond, is provided an "opportunity for fraud or collusion")." *TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001)

Specifically, the significant extension facilitates the chance to conceal or destroy evidence and retroactively coordinate or fabricate appearance of independent creation should the Defendant be so inclined.  And an individual who has exhibited a "**habit or routine practice (Rule 406)"** in support of art appropriation and disdain for copyright law would seem likely to bear little resistance toward engaging in fraud or collusion in defense of same.

As well, the delay may pose tangible harm in "loss of evidence" and "increased difficulties of discovery" e.g. making it more difficult to locate prior vendors and gallery owners who I intend to depose.  See "To be prejudicial, the setting aside of a default or default judgment must result in greater harm than simply delaying the resolution of this case. Rather, the standard

is whether Plaintiff's claim will be hindered." TCI Group Life Ins. Plan v. Knoebber, 244 F. 3d at 701. To be considered prejudicial, **the delay must result in tangible harm such as a loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion."** TCI Group Life Ins. Plan v. Knoebber, 244 F. 3d at 701 (citing Thompson v. American Home Assurance Co., 95 F. 3d 429, 433-434 (6 Cir. 1996)).

*

### Rule 406. Habit; Routine Practice

"Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."

*

I submit the following evidence of Defendant's Habit/Routine pursuant to Rule 406 in the form of four (4) magazine articles (**W, ArtNews, Vogue, The Guardian**) related to art plagiarism and associated copyright law:

### 1) W Magazine

October 21 2018, Fan Zhong

***Maurizio Cattelan Explains How to Plagiarize Artfully***

https://www.wmagazine.com/story/maurizio-cattelan-interview-yuz-museum-exhibit-gucci

"Every act of appropriation should not start with a question, but with a statement. In the parish where I spent all my childhood, the priest used to say: Ask for forgiveness, not for permission."

--

"I believe we should get rid of the copyright-reigned world, where ideas coincide with property."

**2) ArtNews**

*November 13, 2019, Tessa Solomon*

***Great Artists Steal***

https://www.artnews.com/art-news/news/maurizio-cattelan-arte-generali-toilet-13559/

"My whole career has been based on the non-existence of originality—in other words, the ability to invent by adding to something that has been invented already, or the ability to elicit unexpected emotions by triggering emotions that one felt already before."

**3) Vogue**

*By Emily Farra, October 22, 2018*

***To Steal Is To Love***

https://www.vogue.com/article/the-artist-is-present-maurizio-cattelan-gucci-alessandro-michele-shanghai

'As Cattelan writes in his catalog, "to copy is to love," like the old adage that imitation is the sincerest form of flattery. He argues that it brings greater awareness to the "original" artist, too, and could extend their legacy.'

**4) The Guardian**

*July 19 2005, John Hooper*

***Former Lover Accuses Cattelan Of Stealing Her Ideas***

https://www.theguardian.com/world/2005/jul/19/italy.arts#:~:text=The%20Genoa%2Dborn%20artist%20Vanessa,in%201990%2C%22%20she%20said

"... for an exhibit at the de Appel arts center in Amsterdam, when he was unable to come up with something, he stole the entire exhibition of another artist and tried to pass it off as his own—until the police stormed his stolen exhibition and threatened to toss his Mediterranean ass in jail. After initial rage over the theft, the wronged gallery actually allowed Cattelan to keep the stolen works for a few days."

*

"Agreement is general that habit evidence is highly persuasive as proof of conduct on a particular occasion. Quoting McCormick §162, p. 341"

*

*Rule 406 - Habit; Routine Practice*, Del. R. Evid. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.")

### III. Cattelan Has No Meritorious Defense

"In assessing a Defendant's meritorious defense, the likelihood of success is not the measure. [Defendant's] allegations are meritorious if they contain even a hint of suggestion, which, if proven at trial, would constitute a complete defense." *Sobkowski*, 2004 WL 3569703 at *3." *TYCO FIRE SECURITY v. ALCOCER*, CASE NO. 04-23127-CIV-COOKE/BANDSTRA, 6 (S.D. Fla. Mar. 23, 2009).

1. I have a valid copyright.

2. The Defendant had access and opportunity to steal my work for over a decade.

3. The infringing work is more than substantially similar; it is virtually identical.

4. My work significantly, verifiably, pre-dates the infringing material.

   .. protected elements of expression have obviously been copied.

## A. SERVICE OF SUMMONS AND COMPLAINT WAS PROPER

Proper Service of the Summons and Complaint was executed on the Defendant pursuant

to **CPLR § 308.2:**

"Personal service upon a natural person (CPLR §308):

Personal service shall be made by any of the following methods:

2. Substituted Service: This type of service is considered a form of personal service and

has a two-step procedure. First, delivering the papers within the state to a person of

suitable age and discretion at the actual place of business, dwelling place or usual place

of abode (residence) of the person to be served. Second, by mailing the papers by first

class mail to the person to be served at his or her last known residence or mailing them to

his or her actual place of business (see NOTE below). Such delivery and mailing to be

within 20 days of each other.

[NOTE: The envelope used for the mailing in the 2nd step of Substituted Service above

or (2) of Nail and Mail above must be marked "PERSONAL AND CONFIDENTIAL"

and should not indicate that the matter concerns a legal action against the person being

served.]"

*

Cattelan's affidavit denying proper service appears to be nothing more than a "conclusory denial" (See *The Bank of New York v. Bestbuydigital, Inc.*, 008668/05, 2-3 (N.Y. Sup. Ct. 2010) of receipt of the additional copy via US Mail.  "A sworn denial of service by a Defendant will rebut the presumption of proper service **where it refutes factual allegations in the process server's affidavit or presents a question of fact rather than baldly denying receipt of process.** See *Silverman* v. *Deutsch*, 283 AD2d 478 (2d Dept. 2001) ; *European Am. Bank v. Abramoff*, 201 AD2d 611 (2d Dept. 1994)."

Cattelan cannot refute factual allegations in the server's affidavit or present a question of fact, instead only plainly denies receipt in his (20+ months) of unattended mail.  "Here, Defendant has failed to controvert the affidavit of service or to set forth sufficient facts to warrant a traverse hearing.  Thus, the claim of improper service has no merit. See *The Bank of New York v. Bestbuydigital, Inc.*, 008668/05, 2-3 (N.Y. Sup. Ct. 2010)"

The Process Server is not claiming the Summons and Complaint was served directly to the Defendant; the Process Server is however claiming that the Summons and Complaint was properly served according to the law.  The Defendant cannot specifically refute claims on server's affidavit and his affidavit does nothing to prove that the Summons and Complaint had not been delivered/properly served.  There is not a sworn denial that a Defendant was served with process here only an unverifiable claim that the Defendant did not receive the mailed copy.

\*\*\*

**The process server executed service appropriate to stated protocol.**  See "Service of process upon a natural person must be made in strict compliance with the statutory methods of service set forth in CPLR 308 (*seeHSBC Mtge. Corp. [USA] v. Hollender* , 159 A.D.3d 883, 74 N.Y.S.3d 93 ). CPLR 308 requires that service be attempted by personal delivery of the

Summons "to the person to be served" ( CPLR 308[1] ), or by delivery "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode" ( CPLR 308[2] ).  See *Bank of Am. v. Batson*, 176 A.D.3d 771, (N.Y. App. Div. 2019)

**I do not believe Cattelan's claims in the affidavit are sufficient to defeat the presumption of proper service.**  See: ***Kondaur Capital Corp. v. McAuliffe*** "Here, the process server's affidavit of service established, prima facie, that the Defendants were served with the Summons and Complaint pursuant to CPLR 308(2). **Contrary to the Defendants' contention, their submissions in support of the motion were insufficient to defeat the presumption of proper service.** " *Kondaur Capital Corp. v. McAuliffe*, 67 N.Y.S.3d 653, 655 (N.Y. App. Div. 2017)

**Cattelan does not state a reasonable excuse for his default.  He simply claims he could not find a mailed copy of the Summons and Complaint in 20+ months of unattended mail (after ignoring delivery for 20+ months by his own choosing).**  See "To the extent that the motion sought vacatur pursuant to CPLR 5015(a)(1), **the Defendants were not entitled to such relief since they failed to set forth a reasonable excuse for their default,**" *Kondaur Capital Corp. v. McAuliffe*, 67 N.Y.S.3d 653, 655 (N.Y. App. Div. 2017)

**It seems that Cattelan simply makes a "bare denial" of service with no specific facts to rebut the statement in the process server's affidavits.  Claiming the copy was not received in the mail does not adequately negate the server's affidavit.**  See "Although a [party's] sworn denial of receipt of service generally rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing, no hearing is required where the [party] fails to swear to **'specific facts to rebut the statements in the process server's affidavits'** " ( *Scarano v. Scarano,* 63 A.D.3d 716, 880 N.Y.S.2d 682,

quoting *Simonds v. Grobman,* 277 A.D.2d 369, 370, 716 N.Y.S.2d 692; *see Tikvah Enters., LLC v. Neuman,* 80 A.D.3d at 749, 915 N.Y.S.2d 508). Here, the mother's bare denial of service was insufficient to rebut the prima facie proof of proper service established by the process server's affidavit ( *see Tikvah Enters., LLC v. Neuman,* 80 A.D.3d at 749, 915 N.Y.S.2d 508; *Scarano v. Scarano,* 63 A.D.3d at 716, 880 N.Y.S.2d 682). Accordingly, the Family Court properly determined that no hearing was warranted ( *see Tikvah Enters., LLC v. Neuman,* 80 A.D.3d at 749, 915 N.Y.S.2d 508).

*Romero v. Ramirez*, 100 A.D.3d 909, 910-11 (N.Y. App. Div. 2012)

**Regarding the Service upon Defendant, Cattelan, the Process Server acceptably described attempted dates, person of suitable age and discretion, etc.  None of which the Defendant can dispute.**  See *Stephan B. Gleich & Assoc. v. Gritsipis,* 87 A.D.3d 216, 220, 927 N.Y.S.2d 349).  The Defendant's failure to recall the person of suitable age and discretion who was served, without specific facts of the identity of his employees, employment records, payroll records, or affidavits from others, **fails to rebut the process server's affidavit** (*see Interlink Metals Chems. v Kazdan*, 222 AD2d 55, 56; *see also Pezolano v Incorporated City of Glen Cove*, 71 AD3d at 971; *Sturino v Nino Tripicchio Son Landscaping*, 65 AD3d 1327; *Silverman v Deutsch*, 283 AD2d 478, 478-479). Thus, there is an insufficient basis to vacate the 1994 judgment for lack of jurisdiction under CPLR 5015 (a) (4).

**It seems as though Cattelan's Affidavit is a mere denial of receipt of the duplicate Summons and Complaint by mail and is therefore insufficient to rebut the presumption of service established by the process server's affidavit.  See *Wassertheil v. Elburg, LLC* "The mere denial of the receipt of the Summons and Complaint is insufficient to rebut the presumption of service established by a process server's affidavit** ( *see Wassertheil v. Elburg,*

*LLC,* 94 A.D.3d at 753, 941 N.Y.S.2d 679; *Rockland Bakery, Inc. v. B.M. Baking Co., Inc.,* 83 A.D.3d at 1081–1082, 923 N.Y.S.2d 572; *Irwin Mtge. Corp. v. Devis,* 72 A.D.3d 743, 898 N.Y.S.2d 854; *Beneficial Homeowner Serv. Corp. v. Girault,* 60 A.D.3d 984, 984. 875 N.Y.S.2d 815; *Hamlet on Olde Oyster Bay Homeowners Assn., Inc. v. Ellner,* 57 A.D.3d 732, 732, 869 N.Y.S.2d 591; *Mortgage Elec. Registration Sys., Inc. v. Schotter,* 50 A.D.3d 983, 857 N.Y.S.2d 592)." *Deutsche Bank Nat'l Trust Co. v. Dacosta,* 949 N.Y.S.2d 393, 395 (N.Y. App. Div. 2012)

**Cattelan asserts a conclusion with no supporting evidence.  Cattelan makes a claim that he did not find a copy of the Summons and Complaint in unattended 20+ months of mail and expects this to be accepted as fact.  Essentially an unprovable assertion that runs contrary to the statement of the process server's affidavit, which contains any number of relevant supporting facts.  I do not believe that the Defendant reasonably challenges the affidavit of the process server with a mere assertion.**  See "An affidavit of service by a process server which specifies the papers served, the person who was served, and the date, time, address and sets forth facts showing that service was made by an authorized person, and in an authorized manner, constitutes prima facie evidence of proper service. *Maldonado v. County of Suffolk*, 229 AD2d 376 (2d Dept. 1996), *Sandor Realty Corp v. Arvis*, 209 AD2d 682 (2d Dept. 1994). **A conclusory denial of receipt such as is present here is insufficient to raise an issue of fact which would entitle Defendant to a traverse hearing.** *Id.* **A sworn denial of service by a Defendant will rebut the presumption of proper service where it refutes factual allegations in the process server's affidavit or presents a question of fact rather than baldly denying receipt of process.** *Silverman* v. *Deutsch*, 283 AD2d 478 (2d Dept. 2001); *European Am. Bank v. Abramoff*, 201 AD2d 611 (2d Dept. 1994). **Here, Defendant has failed to controvert the affidavit of service or to set forth sufficient facts to warrant a traverse**

hearing. Thus, the claim of improper service has no merit." *The Bank of New York v.*

*Bestbuydigital, Inc.*, 008668/05, 2-3 (N.Y. Sup. Ct. 2010)

## B. FLORIDA COURT HAS PERSONAL JURISDICTION

This district is the proper venue pursuant to 28 U.S.C. § 1391(b) and (c) as a substantial

part of the acts giving rise to the claims were committed within this district.

The Defendant is subject to personal jurisdiction of the Court as he has committed a tort

in the State of Florida by infringing my work in the southern district of the state.  As well,

subject matter jurisdiction applies under 28 U.S.C. §1332(a) because the parties are citizens of

different states and the amount in controversy exceeds $75,000 (the Defendant's infringing

sculpture(s) sold for no-less than $120,000 each in Art Basel Miami on or around December

2019).

This case is a federal copyright complaint wherein the Southern District of Florida has

jurisdiction per U.S.C. § 1331, 1367, and 1338(a).

Personal Jurisdiction for this case meets the criteria of Florida's Long Arm Statute under

the terms of Specific Jurisdiction wherein the court with power over a Defendant is based on

their action within the State where the court is located.  This is established via a two-step process

that was established in the seminal case ***Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502**

**(Fla. 1989). First, Fla. Stat. § 48.193** must 1) authorize the basis of jurisdiction, and 2) that

basis must meet the constitutional requirement of due process.

**Fla. Stat. § 48.193(1)(a)** sets forth specific acts that subject a Defendant to **Specific**

**Personal Jurisdiction**. This means the Defendant can only be sued within Florida for a claim

that relates to or arises from the Defendant's activities in Florida.  **This claim arises from the**

**Defendant's activities in Florida including 1) "Engaging in business" 2) "Committing a tort," and 3) "Causing injury through solicitation of sales or services of products."**

The Defendant committed an intentional tort with the sales of work in Florida, which he knew were being sold and over which he had control (See **New York Magazine/Vulture,** ART | UPDATED DEC. 8, 2019**).** The Defendant is a listed artist with both the gallery (Perrotin) and vendor (Art Basel). The Defendant, Cattelan, was fully aware of the display, sale(s) and promotion of "Comedian" in "Art Basel" in Miami:

**Art Basel:** https://artbasel.com/cities/catalog/Maurizio-Cattelan

**Perrotin:** https://www.perrotin.com/artists/Maurizio Cattelan/2#news

**New York Magazine/Vulture:** ART | UPDATED DEC. 8, 2019

### Three Part Due Process Test

**1. Prong One: Arising Out Of Relatedness**

The Plaintiff's copyright infringement claims arise from his contacts with Florida. His ties to Florida all involve the advertising, selling, and distributing of infringing material into the state and **accepting payment from customers (in Florida) for such goods." See** *Malletier v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) **As such there is a direct causal relationship between Cattelan, Florida and the Plaintiff's copyright claim.**

"A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the Defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (cleaned up).

The cause of action results from the Defendant's use of copyrighted material which was accessible to residents of Florida via the trade show where the infringing material was sold in Florida at Art Basel in Miami, Florida.

'The Court assumes that the use of a website that is accessible in Florida is a sufficient "contact" under this first prong of the test. **Therefore, the Plaintiffs have articulated that their claims "arise out of or relate to" the alleged contacts.** While this prong is satisfied, the Plaintiffs have not met the purposeful availment test.' *Frida Kahlo Corp. v. Pinedo*, Civil Action 18-21826-Civ-Scola, (S.D. Fla. Sep. 13, 2021)

**2. Prong Two: Purposeful Availment**

In *intentional* tort cases, there are two applicable tests for determining whether purposeful availment occurred. First, we may apply the **"effects test**," which the Supreme Court articulated in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (involving libel claims). Under the "effects test," a nonresident Defendant's single tortious act can establish purposeful availment, without regard to whether the Defendant had any other contacts with the forum state. *See Lovelady,* 544 F.3d at 1285. This occurs when the tort: "(1) [was] intentional; (2)[was] aimed at the forum state; and (3) caused harm that the Defendant should have anticipated would be suffered in the forum state." See *Malletier v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013)

Under the **minimum contacts test** for purposeful availment, we assess the nonresident Defendant's contacts with the forum state and ask whether those contacts: **(1) are related to the plaintiff's cause of action; (2) involve some act by which the Defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the Defendant should reasonably anticipate being**

haled into court in the forum. *See Carrillo*,115 F.3d at 1542.  See: *Malletier v.
Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013)

Cattelan did not need to attend, personally exhibit or sell *Comedian* at Art Basel
in Miami where the work was sold in order to be culpable in the forum state for the act of
infringement or profit.  The contribution of *Comedian* by Perrotin at the art fair was
under control of the Defendant as he intentionally contributed, for exhibition and sale, a
work that infringed on my copyright for which he was fully aware.

Specifically, 1) The Defendants contacts in Florida directly relate to this cause of
action in their facilitation of the infringing material being sold; 2) the Defendant
purposefully solicited business from Florida resident(s) through the use of Art Basel,
Miami; and 3) the Defendant should have reasonably anticipated the selling of infringing
material to Florida resident(s) in Florida would have resulted in his being haled into a
Florida court.  *See Malletier v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013)

"Stating that **"[i]n order to establish that a Defendant was carrying on a
business or business venture in the state, either itself or through an agent**, [t]he
activities of the [Defendant] sought to be served . . . must be considered collectively and
show a general course of business activity in the State for pecuniary benefit."
See: *Energy Smart Indus., LLC v. Big R of Lamar, Inc.*

**3. Prong Three: "Fair Play and Substantial Justice":**

Considering personal jurisdiction over Cattelan in Florida in relation to fair play
and substantial justice *See Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. at 160.  Applying the
following issues: (1) "the burden on the Defendant"; (2) "the forum's interest in
adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective

relief"; and (4) "the judicial system's interest in resolving the dispute." *See Lovelady,* 544 F.3d at 1288; *Malletier v. Mosseri*, 736 F.3d 1339, 1358 (11th Cir. 2013)

       1) Cattelan has not provided any evidence of financial, or any other limitations, that illustrate he would be burdened by this case being adjudicated in Florida;  2) considering Cattelan's selling the copyright-infringing goods in Florida and Art Basel Miami having platform in Florida, Florida has a vital interest in adjudicating the dispute in protection of consumers from such infringement; 3) the Plaintiff has an interest in litigating the case in the forum where the violation originated; and 4) the judiciary has an interest in resolving the dispute expeditiously in the forum where the events and multiple violations occurred directly effecting the community.


**Copyright Infringement/Intentional Tort**

       *See* Fla. Stat. § 48.193

       **Acts subjecting person to jurisdiction of courts of state.  Copyright Infringement is an Intentional Tort.**

       For purposes of determining personal jurisdiction, courts have generally held that the tort of **copyright infringement is an intentional one**. See Bangor Punta Operations v. Universal Marine Co., 543 F.2d 1107, 1109 (11th Cir. 1976) (noting that misappropriation of advertising materials constitutes trademark violation and is considered tort of unfair competition and breach of common law copyright is tort); Edwards v. Trade Publ'g Ltd., 2010 WL 5416190, at *6 (M.D. Fla. 2011), approved in part, 2010 WL 5459549 (M.D. Fla. Aug. 20, 2011) (adopting report and recommendation on issue of personal jurisdiction). See *Yellow Pages Photos, Inc. v. Ziplocal, LP*, CASE NO: 8:12-cv-755-T-26TBM, 10 n.37 (M.D. Fla. Jul. 19, 2012)

**Fla. Stat. § 48.193**

**(a)** A person, whether or not a citizen or resident of this state, who **personally or through an agent** does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

**1.** Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

**2. Committing a tortious act within this state.**

**6.** Causing injury to persons or property within this state arising out of an act or omission by the Defendant outside this state, if, at or about the time of the injury, either:

> **a.** The Defendant was engaged in solicitation or service activities within this state; or

> **b.** Products, materials, or things processed, serviced, or manufactured by the Defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

**Copyright By Distribution**

"(finding personal jurisdiction in Florida under 48.193(1)(f) and (1)(b) for copyright infringement where Oregon infringer shipped infringing products to Florida; time and place of injury was when and where product was "passed off")." *Yellow Pages Photos, Inc. v. Ziplocal, LP, CASE NO: 8:12-cv-755-T-26TBM, 18 n.52 (M.D. Fla. Jul. 19, 2012)*

## C. DEFENDANT CANNOT DEFEND AGAINST COPYRIGHT INFRINGEMENT

The Defendant's case has no merit. I maintain a legitimate copyright registration for my work. A visual comparison of the two pieces not only exhibit striking similarity--they are virtually identical. The individual elements used to create the expression in either piece cannot be legally removed from the analysis as Defense Counsel incorrectly asserts. My date-of-creation is verifiable and for a considerable period of time prior to the appearance of Defendant's infringing work. Additionally, my work has been both accessible and disseminated worldwide for over 10 years for which I possess comprehensive analytics. Lastly the Defendant's account(s) of independent creation (accessible online) are implausible and contradicted. The Defendant's case has no merit.

### 1. NON-COPYRIGHTABLE ITEMS

... a work may be protected by copyright law when its otherwise **unprotectable elements** are arranged in a unique way. *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992) " *Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1341 (11th Cir. 2006)'
Fruit by itself is not entitled to copyright protection--nor is an exact replica. Duct-tape (or a fabricated replica) in-and-of itself is also not entitled to copyright protection. However, in my work, the fruit and duct-tape are selected, coordinated and arranged in a creative manner making the sculptural expression eligible for copyright protection.

#### (a): FRUIT

**Fruit** alone is not entitled to copyright protection any more than a rock. As well, a stereotypical representation of fruit sitting as it would in nature cannot receive copyright protection. See *George v. Cadona*, 266 F. App'x 523, 524 (9th

Cir. 2008).  However, fruit is not found wearing duct-tape in nature as a standard feature.  And the appearance of the fruit represented in my sculpture does not follow from the idea of a banana in its natural habitat.  And as a matter of copyright law a sculptural work including fruit (or realistic representations of same) that are selected, coordinated, and arranged in a creative manner are eligible for copyright protection (312.1 Copyrightable Subject Matter).

**(b):  DUCT-TAPE**

**Duct-tape** alone is not entitled to copyright protection any more than a hand-tool.  However, the duct-tape in my sculpture is not simply a self-contained replica acting independent of original expression--it is expressed in an original manner involving selection, coordination and arrangement in a creative manner.  And as a matter of copyright law a sculptural work including functional items e.g. hand-tools (or representation of same) that are selected, coordinated, and arranged in a creative manner are eligible for copyright protection (312.1 Copyrightable Subject Matter).  *See Feist*, 499 U.S. at 348.  **"the fundamental axiom of copyright law that no one may copyright facts or ideas. Pp. 351-361." Feist Publications, Inc. v. Rural Tel. Service Co., 499 U.S. 340, 341 (1991)**

**(c):  UTILITARIAN FUNCTION**

Further, the appearance of "duct-tape" is **only there to depict "duct-tape" and is not useful**.  The article serves no utilitarian function and is used merely to portray the appearance of the article or to convey information.  **(924.1 What Is a Useful Article?** The Copyright Act defines a useful article as "an

article having an intrinsic utilitarian function **that is not merely to portray the appearance of the article or to convey information."** 17 U.S.C. § 101.)

**See https://www.copyright.gov/register/va-useful.html**

"Copyright in a work that portrays a useful article extends only to the **artistic expression of the author of the pictorial, graphic, or sculptural work.** It does not extend to the design of the article that is portrayed. **For example, a drawing or photograph of an automobile or a dress design may be copyrighted, but that does not give the artist or photographer the exclusive right to make automobiles or dresses of the same design."**

The "duct-tape" in my sculpture serves no utilitarian purpose--**even within the non-useful sculpture itself**. The "duct-tape" affixes nothing to the wall; including itself. The sculpted banana is secured by unseen tacking at the rear while the non-functional fabricated "duct-tape" is held in place by glue, rubber cement and **most obviously, transparent packing-tape**. **This is verifiable.  The copyright office was informed of this prior to registration and was provided with photos, which substantiate this.**

**Of note,** the bench in the original photo by Rogers "Puppies" serves a utilitarian purpose.  The Koons infringing replica in sculpture "String of Puppies" serves to hold the set pieces.  Yet, neither is excluded in either piece because its primary function is merely visual as artwork.  And the people and puppies are not in-and-of themselves copyrightable.  **See '... a work may be protected by copyright law when its otherwise unprotectable elements are arranged in a**

unique way. *See Rogers v. Koons*, **960 F.2d 301, 307 (2d Cir.1992) " *Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1341 (11th Cir. 2006)'**

## 2. MODICUM OF CREATIVITY

The modicum of creativity of "Banana & Orange" cannot be indicted by virtue of its elegance as such originality is not subject to the "sweat of the brow" doctrine. See '... with regard to compilations to ensure that courts would not repeat the mistake of the **"sweat of the brow"** courts by concluding that fact-based works are treated differently and measured by some other standard. As Congress explained it, the goal was **to "make plain that the criteria of copyrightable subject matter stated in section 102 apply with full force to works . . . containing preexisting material." H.R. Rep., at 57; S. Rep., at 55.** *Feist Publications, Inc. v. Rural Tel. Service Co.*, **499 U.S. 340, 357 (1991)'**

## 3. COPYING BY OTHER MEANS IS STILL COPYING

The Defendant's claimed use of a real banana ("Cattelan's piece, *Comedian*, on the other hand consists of an actual banana duct-taped to a wall.") and actual duct-tape does not exempt him from a legitimate charge of infringement as **copying by other means is still copying.** See: 'Defendant's alleged infringement of Plaintiff's Ghost Face Mask in a different medium—a depiction on a garment rather than a physical, three-dimensional sculpted mask—does not preclude a finding of copyright infringement. **"In copyright law the medium is not the message, and a change in medium does not preclude infringement."** *Rogers v. Koons*, 751 F.Supp. 474, 477 (S.D.N.Y. 1990).' *Easter Unlimited, Inc. v. Rozier*, 18-CV-06637 (KAM), 28 (E.D.N.Y. Sep. 27, 2021)

My work was originated as an artistic expression and the infringer simply replicated it using a real banana and actual duct-tape, which is nothing more than a crude and obvious attempt to hide the plagiarism.  "Such cases are consistent with the general principle stated in 1 M. and D. Nimmer, *Nimmer on Copyright,* (1989) **"The fact that a work in one medium has been copied from a work in another medium does not render it any less a "copy".**

Arranging natural objects (fruit) taken from nature can be copyrighted when they "are selected, coordinated, and arranged in a creative manner (312.1 Copyrightable Subject Matter)" and as such, these same creations do not possess standing exemption from infringement i.e. t**he Defendant holds no right to infringe by using alternate material to achieve the same visual expression.**

As well, the Defendant's use of duct-tape can also reasonably be interpreted as non-functional in that the fruit is affixed to the wall via unseen tacking at the rear.

## 4.  GENRE

Defense Counsel States: "Cattelan has been working with duct tape since at least 1999. Plaintiff seeks to own the idea of a banana duct-taped to a wall."

Point-of-fact, I have been making duct-tape wall sculptures since 1980 ... so what?  Working with particular materials does not, in any way, entitle anyone exclusive domain over the genre.

Additionally, I do not assert copyright claim to the idea of a banana duct-taped to a wall.  People are free to duct-tape all the bananas they want to a wall; they are just not allowed to infringe my expression--claiming it as their own original artwork.

## 5.  STRIKING SIMILARITY

Comparison of the two expressions side-by-side prove they are not only substantially similar, and strikingly similar, but they are virtually identical.

The identifying expression cannot reasonably claimed to be *scènes à* faire as there is nothing customary to a "duct-tape-fruit-genre" that could subsequently be considered coincidental replication using standard elements. The combination of objects used to accomplish this expression are not standard to one another. In either sculpture, these are two incongruous elements combined in exactly the same manner to accomplish the same visual expression. The odds of this occurring make it clear this was not coincidence.

In attempt to dismiss substantial similarity, Defense Counsel references the absence of the "orange" in Defendant's sculpture, stating "the orange in Plaintiff's work not even appearing in Cattelan's work." But this implied defense is rebutted by caselaw: **See "Moreover, no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated.** *See Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.) (L. Hand, J.), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). " *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir. 1992)

## 6. ACCESS

Access has been established prior (for more than a decade). My work can be verified to have been **constantly accessible and disseminated worldwide, for a considerable period significantly pre-dating the appearance of the Defendant's replication**. For example, Google Analytics alone, show an inexplicable and inordinate viewing of the post "Banana & Orange" originating from given, relevant market(s), prior to the Defendant's first rendition appearing. This same cluster of views then immediately stopped ... all before the appearance of the Defendant's initial plagiarism.

In addition to the wide availability, the specific distinction of keywords related to art would direct such related purveyors. Considering access can be arrived at significantly via limited release; especially if targeted. See "At the end of 1987 or in 1988 Koons purchased at least two Museum Graphics notecards displaying Rogers' "Puppies" photograph." *Rogers v. Koons*, 751 F. Supp. 474, 476 (S.D.N.Y. 1990)

This is evidence that even limited distribution can expose art to "art plagiarists" via targeted search criteria such as "art," "artists," "sculpture" etc.

And the Defendant need not be "connected" to me on social media, past or present, to have worldwide access to my work. The Defendant's claim of not being connected to me on social media is entirely irrelevant.

## 7. INDEPENDENT CREATION

Defendant's claim(s) of independent creation are neither plausible, nor consistent and are contradicted. These assertions are viewable online and readily dismissible.

Defendant's reference to his initial version of "*Comedian*" via the New York Magazine cover will be subject of another lawsuit. But suffice it to say, the version referenced is clear evidence of copyright infringement wherein the minimal variations equate to an intentional act of dissimilarity meant to conceal the ultimate exact replica rather than proof of independent creation. These minimal variations primarily include tape texture and color, neither of which are enough to establish a copyright independent of my work; conversely not enough to legitimately absolve the Defendant's earlier rendition from an obvious infringement claim. Nevertheless, the presence of this cover does not negate the virtually identical replication of my work sold in Florida, which is the point of this lawsuit.

## 8. SCÈNES À FAIRE

What elements in fruit and duct-tape are mandated by, or customary to, the genre of sculpture, or even fruit-and-tape-sculpture, or more specifically banana-and-duct-tape sculpture?

There is no such thing as standard elements (scènes à faire) with a non-existent genre called "duct-taped fruit" which would somehow prevent a legitimate infringement claim by me of the Defendant's exact replication of my expression. There are a large number of possibilities in combining fruit and duct tape (even with just one piece of fruit and duct-tape). Yet, the Defendant ended up with exactly the same expression as mine. This was not independent creation on the part of the Defendant.

Even if we were to assume a genre protecting elements of scènes à faire within, the Defendant could still not claim "standard element use" by **identically replicating my exact expression** out of a massive multitude of choices: Why not a vertical banana taped by the stem? Why not a dome positioned banana taped across its latitude? Why not an inverted banana taped with folded tape? Why not two bananas and three pieces of duct-tape? Etc. Instead the Defendant chose the exact same fruit and tape superfluous positioning using the exact same portions. This was not coincidence. This was not independent creation on the part of the Defendant.

## 9. FAIR USE

Defense Counsel indicated (FOOTNOTE 5): "Cattelan has additional meritorious defenses including fair use under section 107 of the Copyright Act that he will interpose at the appropriate motion to dismiss juncture."

"Fair Use" inextricably implies Defendant is in some way commenting on, or parodying, the original work. How can Defendant claim this if he simultaneously claims he has never seen my work? These two assertions are inherently contradictory and mutually exclusive. Fair Use is not a viable defense for this infringer, the Defendant's claim has no merit.

### CONCLUSION

There is no good cause to set aside default in this case. The default was culpable and willful by the Defendant and the defaulting party cannot present a meritorious defense.

Dated: _12/30/21_____

Respectfully Submitted,

_____

Joe Morford, Pro Se

Align top of FedEx Express® shipping label here.

ORIGIN ID:JGXA (818) 422-9263
JOSEPH MORFORD

1125 E BROADWAY APT 216

GLENDALE, CA 91205
UNITED STATES US

SHIP DATE: 30DEC21
ACTWGT: 0.35 LB
CAD: 6991398/SSF02220

BILL CREDIT CARD

TO US DIST. COURT , S. DIST FLA.
CLERKS OFFICE
400 N . MIAMI AVE 8TH FLOOR .

MIAMI FL 33128

(305) 523-5100          REF:
THU:
PO:                          DEPT:



FedEx
Express

E

REL#
3785346

FRI – 31 DEC 11:30A
PRIORITY OVERNIGHT

TRK#
0201    2882 3253 3700

XG MPBA                    33128
                    FL-US    MIA