UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-CV-20039-SCOLA/GOODMAN

JOE MORFORD,

    Plaintiff,

v.

MAURIZIO CATTELAN,

    Defendant.
_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT'S
MOTION TO SET ASIDE ENTRY OF CLERK'S DEFAULT**

Maurizio Cattelan ("Cattelan" or "Defendant") filed a motion to set aside the Clerk's default entered against him in this case. [ECF Nos. 19; 32]. United States District Judge Robert N. Scola, Jr. referred this motion to the Undersigned. [ECF No. 35]. As explained below, the Undersigned **respectfully recommends** that the Motion be **granted** and that the Court **set aside** the Clerk's default [ECF No. 19].

**I.**    **Background**

In this copyright infringement action, Joe Morford ("Morford" or "Plaintiff"), who is proceeding *pro se*, alleges that Cattelan's art piece, a sculpture entitled "Comedian," infringes on a copyrighted sculpture, "Banana & Orange," owned and registered by Morford. [ECF No. 1]. The Complaint alleges that Cattelan was a resident of New York

and a citizen of Italy. *Id.* Plaintiff seeks to recover all gross profits attributed to the allegedly infringing sculpture and an injunction prohibiting Defendant from selling, distributing, or displaying the allegedly infringing sculpture. *Id.*

On February 17, 2021, Morford filed a motion for alternative service of process, [ECF No. 11], indicating that on February 3, 2021, a building manager had denied Morford's process server access to Defendant's apartment in New York, New York. The motion further indicated that the building manager was willing to accept the documents on behalf of Defendant. Plaintiff therefore asked the Court to permit Plaintiff to serve Defendant by leaving the Complaint and summons with the building manager, concierge, or doorman at Defendant's apartment building.

The Court denied Plaintiff's motion because Federal Rule of Civil Procedure 4(e) does not provide for alternative means of service. [ECF No. 12]. The Order further noted Morford "failed to show that service cannot be completed under Federal Rule 4(e), or that service is impracticable under New York law" and "[e]ven if service were impracticable, . . . Plaintiff . . . failed to explain to the Court why . . . Plaintiff's proposed alternative method of service would be reasonably calculated to give notice to . . . Defendant." *Id.*

On March 22, 2021, Plaintiff filed a Sherriff's Affidavit of Attempted Service ("Sherriff's Affidavit") and an Affidavit of Service. [ECF No. 13]. Plaintiff filed a second copy of the Affidavit of Service on April 12, 2021. [ECF No. 17].

The Sherriff's Affidavit was signed by a Deputy Sheriff of the City and State of

New York who attested that he had attempted service at Defendant's apartment building on March 5, 2021. *Id.* He was "unable to serve . . . process" because he "was informed respondent does not reside at the address as per concierge/doorman" and that "the location is respondent's vacation house. As per doorman respondent has not been to the address [in] over a year." *Id.* (capitalization omitted).

The Affidavit of Service, however, stated that on March 17, 2021, an individual named Daniel Crespo, a private process server, served the summons and Complaint by delivering the documents to the building manager who he identified in the affidavit as "John Doe." *Id.* Mr. Crespo attested that the "residence [was] confirmed at address but access upstairs to . . . [Defendant's] apartment [was] denied by building personnel on each attempt." *Id.* (capitalization omitted). The affidavit listed three earlier service attempts on February 3, 2021, February 12, 2021, and February 20, 2021. *Id.* Mr. Crespo further attested that he mailed a copy of the summons and Complaint to the same address in a "postpaid envelope" addressed to Defendant. *Id.*

On April 9, 2021, Judge Scola entered an Order on Clerk's Default Procedure. [ECF No. 15]. Judge Scola noted that "it appear[ed] . . . Defendant was properly served by . . . Plaintiff in accordance with New York law." *Id.* at 1 (citing New York state cases discussing service upon the doorman of a defendant's apartment building pursuant to CPLR 308(2)). The Order directed Plaintiff to file a motion for entry of Clerk's default by April 16, 2021, and specifically stated that "[t]he motion *must* include a certificate of

3

service indicating that . . . Plaintiff sent it to the Defendant(s), including the address(es) it was mailed to." *Id.* at 1-2 (emphasis in original).

On April 12, 2021, Plaintiff filed a Request for Entry of Default by Clerk, which did not include a certificate of service. [ECF No. 18]. On the same day, the Clerk entered a Clerk's Default. [ECF No. 19].

On April 13, 2021, Judge Scola entered an Order on Default Judgment Procedure, directing Plaintiff to move for a default judgment by April 23, 2021. [ECF No. 20]. On the same day, Judge Scola also entered a Paperless Order requiring Plaintiff to "certify to the Court that . . . [he] complied with the Court's order" by serving Defendant with a copy of Plaintiff's motion for entry of Clerk's default or "[i]f the Plaintiff did not comply with the Court's order," requiring Plaintiff to "immediately do so and state on the record by April 16, 2021 that the Plaintiff has served . . . [his] motion for entry of Clerk's default on the Defendant and the address such motion was mailed to." [ECF No. 21].

On April 14, 2021, Plaintiff filed a second Request for Entry of Default by Clerk. [ECF No. 22].[1] This time, Plaintiff included a certificate of service with his motion. *Id.* The certificate of service was dated April 13, 2021, and indicated that Plaintiff had mailed a copy of the motion to Defendant's apartment in New York. *Id.*

On April 21, 2021, Plaintiff filed two affidavits and a document entitled "Claim." [ECF Nos. 23-25]. Judge Scola construed these filings as Plaintiff's motion for default

---

[1] This document was docketed as a notice of compliance, not as a motion.

4

judgment and referred the matter to the Undersigned for a report and recommendations. [ECF No. 26].

On November 5, 2021, counsel for Defendant filed notices of appearance in the case. [ECF Nos. 27-28]. The Undersigned issued an Order directing Defendant to respond to Plaintiff's motion for default judgment. [ECF No. 29]. Instead of filing a response, Defendant filed a motion to stay briefing on Plaintiff's motion for default judgment and the instant Motion seeking to set aside the Clerk's default. [ECF No. 30-31]. The Undersigned granted Defendant's motion to stay briefing on the motion for default judgment, pending a ruling on the motion to set aside the Clerk's default. [ECF No. 32].

Plaintiff filed a response in opposition to Defendant's motion to set aside the Clerk's default and Defendant filed an optional reply. [ECF Nos. 37-38]. This matter is ripe for adjudication.

## II. Applicable Legal Standard

Federal Rule of Civil Procedure 55(c) governs motions to set aside defaults. Under Rule 55(c), the Court may set aside a default for good cause. The burden is on the defaulting party to show good cause. *Sherrard v. Macy's Sys. & Tech. Inc.*, 724 F. App'x 736, 738 (11th Cir. 2018).

The Eleventh Circuit has stated that "[g]ood cause is a mutable standard, varying from situation to situation. It is also a liberal one – but not so elastic as to be devoid of substance." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de*

*Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (internal quotation marks and citations omitted). The good cause standard for setting aside the entry of a default is less rigorous than the excusable neglect standard applicable to setting aside a default judgment. *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

When determining whether the "good cause" standard has been met, Courts in this Circuit consider several factors, including: "(a) whether the default was culpable or willful; (b) whether setting it aside would prejudice the adversary[;] (c) whether the defaulting party presents a meritorious defense; (d) whether there was significant financial loss to the defaulting party; and (e) whether the defaulting party acted promptly to correct the default." *S.E.C. v. Johnson*, 436 F. App'x 939, 945 (11th Cir. 2011). The "good cause analysis, however, does not require that each factor be satisfied." *Sherrard*, 724 F. App'x at 739 (citing *Compania Interamericana*, 88 F.3d at 951).

"Regardless of the factors used, they are simply 'a means of identifying circumstances which warrant the finding of "good cause" to set aside a default.'" *Lourido v. 365 Credit Clinic LLC*, No. 21-CV-24397, 2022 WL 612626, at *2 (S.D. Fla. Mar. 2, 2022) (quoting *Compania Interamericana*, 88 F.3d at 951–52). On the other hand, "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." *Id.*

Generally, cases should be decided on the merits. *See Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) ("[D]efaults are seen with disfavor because of the

6

strong policy of determining cases on their merits."). Thus, "to obtain relief under Rule 55(c), the movant must only make a 'bare minimum showing' to support its claim for relief." *Daytona Tourist Charter Corp. v. Broward Servs. Ltd.*, No. 12-20221-CIV, 2012 WL 3042992, at *1 (S.D. Fla. July 25, 2012) (citing *Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir. 1988)).

### III. Analysis

The relevant factors favor setting aside the Clerk's default.

Defendant's Motion is supported by a declaration in which he acknowledges that he owns an apartment in New York, New York. [ECF No. 31-1, ¶ 2]. The same apartment is listed in the Affidavit of Service.[2] However, he states that his primary residence is in Milan, Italy. *Id.* at ¶ 1. He further attests that at the end of February or early March 2020, he left New York due to the COVID-19 pandemic and did not return to the United States until October 28, 2021. *Id.* at ¶ 3. During this time, no one had access to Defendant's New York apartment or reviewed Defendant's mail. *Id.*

Defendant attests that he learned of this lawsuit on October 29, 2021, the day after he returned to the United States, and "immediately" began efforts to retain a lawyer in

---

[2] Defendant's declaration omits the apartment number for his New York apartment. However, this appears to be in error because Defendant's Motion lists the apartment number as "9C" and cites to the declaration. *Compare* [ECF No. 31-1, ¶ 2] *with* [ECF No. 31, p. 3, ¶ 5]. The address (including the apartment number) listed in the instant Motion (for Defendant's New York apartment) is the same address listed in the Affidavit of Service. [ECF Nos. 17; 31-1, ¶ 2].

New York, and, later, Florida. *Id.* at ¶¶ 4-5.

Defendant acknowledges receiving one copy of the summons and Complaint which was not enclosed in an envelope and copies of other filings from this lawsuit enclosed in envelopes. *Id.* at ¶ 4. He attests that he did not receive the copy of the summons and Complaint which was purportedly mailed to him in a stamped envelope. *Id.*

### a. Culpability or Willfulness

"[A] party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings." *Pure Fresh, LLC v. Liaison Can./U.S. Logistics (USA) Corp.*, No. 19-CV-60079, 2019 WL 1921991, at *2 (S.D. Fla. Apr. 30, 2019) (alteration in original) (citation and internal quotation marks omitted). For instance,

> when a defendant makes a strategic choice to forego the filing of a timely response in an attempt to avoid litigation expense—and even if that choice is made in conjunction with an attempt to effect a settlement—it is well within the discretion of a district court to deem the default willful and refuse to set it aside.

*Martie v. M&M Bedding, LLC*, 528 F. Supp. 3d 1252, 1254 (M.D. Fla. 2021).

Plaintiff argues that Defendant's failure to check his mail in the twenty-plus months he was away from his New York apartment was "intentional and reckless." [ECF No. 37, p. 1]. Plaintiff contends that "Defendant's actions were willful and deliberate and motivated by bad faith" because he was not hospitalized, incapacitated, his address did not change, he did not become homeless, and was not denied access to his New York

apartment. *Id.* at 2.

Defendant points out in his Reply that "Plaintiff knew [from the information contained in the Sherriff's Affidavit] . . . that Defendant had not been to his New York apartment in over a year" and, knowing this information, still "proceeded to serve [Defendant] in New York instead of trying to serve him in Italy." [ECF No. 38, p. 1]. Defendant further argues that "[a] foreign national should not suffer the consequences of the entry of default for failing to check his mail at a secondary residence during a pandemic that prevents him from even entering the country." *Id.* at 2.[3]

In the instant case, Cattelan's default does not appear to be willful or culpable. The case cited by Plaintiff addressing intentional or reckless disregard, *Turner v. Smith, Dean & Assocs.*, is readily distinguishable from the instant case. No. 8:10-CV-1665-JDW-AEP, 2011 WL 589473 (M.D. Fla. Feb. 10, 2011).

In *Turner*, the court struck a corporate defendant's answer because it had been improperly filed *pro se* and therefore violated the "well established [rule] that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*,

---

[3] A secondary residence or vacation home may be considered a dwelling for service of process purposes under New York law. *See, e.g., Krechmer v. Boulakh*, 277 A.D. 2d 288, 289 (2d Dep't 2000) ("This defendant, a resident of Moscow, only sporadically stayed in his New York vacation house that he owned and shared with, among others, his infant daughter and her mother, the defendant Janna Boulakh. Nevertheless, this house was properly found to be his 'dwelling place or usual place of abode within the state.'" (quoting CPLR § 308(4))).

and must be represented by counsel." *Id.* at *1 (quoting *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985)). The court directed the corporate defendant to respond to the complaint, through counsel, within 21 days. *Id.* The defendant did not respond to the complaint as directed and the plaintiff moved for a default. *Id.* The defendant did not comply with the court's order even after being served with plaintiff's motion. The court granted plaintiff's motion for default approximately six weeks after the motion was filed. The corporate defendant finally retained counsel and counsel entered an appearance more than three months after the court had struck defendant's answer. *Id.* A week later, the defendant moved to set aside the default and filed an answer, without leave of court. *Id.*

The court in *Turner* found that the corporate defendant's default was "willful" and that the defendant "ha[d] shown a disregard for . . . [the] proceedings which was, at the very least, reckless." *Id.* at *2. The court noted that "[t]here [was] no suggestion that [the] [d]efendant did not receive a copy of the order. In fact, the order expressly provided that copies were sent to the same address given in the answer." *Id.* Moreover, the defendant did not ask the court for an extension of time to retain counsel and "[n]early three months passed before [the] [d]efendant finally attempted to file an answer through counsel. During that time, [the] [d]efendant was served with [the] [p]laintiff's motion for the entry of default. That motion remained pending for well over a month. But [the] [d]efendant still failed to file an answer through counsel." *Id.*

Here, there is no record evidence that Cattelan knew of this lawsuit before October 29, 2021, and purposefully refused to respond to the Complaint. Cattelan attests that he left his New York apartment for Milan, Italy at the start of the COVID-19 pandemic and did not return to the United States until October 28, 2021. No one was staying in Defendant's apartment or checking his mail during this time. Thus, Defendant did not learn of this lawsuit until October 29, 2021, the day after he returned to the United States. Although Plaintiff argues that Defendant's failure to check his mail during the time he was away from his New York apartment is itself "intentional and reckless" conduct, [ECF No. 37, p. 1], he cites no cases to support this contention.

Unlike the defendant in *Turner*, who knowingly delayed retaining counsel for almost three months, according to his declaration, Cattelan "immediately commenced efforts to hire a lawyer in New York and then Florida" upon learning of this lawsuit. [ECF No. 31-1, ¶ 5]. Cattelan's counsel filed the instant Motion to set aside the Clerk's default approximately 19 days after Cattelan learned of this lawsuit. Under these circumstances, it cannot be said that Cattelan's failure to respond to the Complaint was culpable or willful.

The Undersigned finds that this factor weighs in favor of setting aside the Clerk's default.

### b. No Prejudice to Plaintiff

The next factor is prejudice to the non-moving party. In considering the prejudice

factor, the relevant inquiry is not whether setting aside the default will "deprive a plaintiff from a quick resolution of the case." *Tyco Fire & Sec. v. Alcocer*, No. 04-23127-CIV, 2009 WL 789657, at *3 (S.D. Fla. Mar. 23, 2009); *see also Sherrard*, 724 F. App'x at 738 ("[T]here is no prejudice in requiring a plaintiff to prove his or her case."). Instead, the Court must consider what effect, if any, will "setting aside the default . . . [have] on [the] [p]laintiff's ability to prosecute the case on the merits." *Tyco Fire & Sec.*, 724 F. App'x at 738 (quoting *Sobkowski v. Wyeth, Inc.*, No. 5:04 CV 96-OC-10GRJ, 2004 WL 3569703, at *2 (M.D. Fla. June 4, 2004), report and recommendation adopted, No. 5:04-CV-96-OC-10GRJ, 2004 WL 3569702 (M.D. Fla. July 12, 2004)).

"Delay in adjudicating a plaintiff's claim does not qualify as sufficient prejudice under Rule 55. Instead, [a plaintiff] would have to show that the delay would result in a loss of evidence, increased opportunities for fraud, or discovery difficulties." *Suntrust Bank v. Armsey*, No. 09-80606-CIV, 2010 WL 731802, at *2 (S.D. Fla. Feb. 26, 2010) (alteration in original) (quoting *Burrell v. Henderson*, 434 F.3d 826, 835 (6th Cir. 2006)).

Plaintiff asserts that the delay in this case "facilitates the chance to conceal or destroy evidence and retroactively coordinate or fabricate [the] appearance of independent creation should the Defendant be so inclined" and that "an individual who has exhibited a 'habit or routine practice (Rule 406)' in support of art appropriation and disdain for copyright law would seem likely to bear little resistance toward engaging in fraud or collusion in defense of same." [ECF No. 37, p. 2].

12

Plaintiff relies on Federal Rule of Evidence 406 and cites excerpts from several magazine articles from 2018 and 2019 in which Defendant discusses his opinions on appropriating ideas, the "non-existence of originality," copying/imitating other artists, and a 2005 article in which a former love-interest accuses Defendant of stealing her entire exhibition. [ECF No. 37, pp. 4-5]. Defendant insists that these excerpts are taken out of context. [ECF No. 38, p. 2 ("Plaintiff quotes incomplete excerpts from published articles about Defendant's work that misrepresent the statements due to their incompleteness.")].

The fabrication of evidence is among the most egregious acts of litigation misconduct.[4] Yet, despite Plaintiff's bold assertions concerning Defendant's character and willingness to engage in fraud and other bad faith conduct *in this litigation*, Plaintiff does not explain how an approximately 8-month delay will likely facilitate fraud here. For instance, Plaintiff does not identify *what* specific documents or physical evidence is likely to be fabricated by Defendant (there are photographs of Defendant's allegedly infringing work and Defendant used a real banana in his art piece, thus the "evidence" has already decomposed), *who* Defendant is likely to collude with, or *how* Defendant is likely to fabricate this evidence.

Here, there is no record evidence that the approximately 8-month delay between

---

[4] "The American judicial system depends on the integrity of the participants, who seek the truth through the adversarial but good-faith presentation of arguments and evidence. A party who knowingly distorts or conceals the truth undermines the integrity of the process and maligns justice itself." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-CV-01479-KOB, 2020 WL 2308319, at *1 (N.D. Ala. May 8, 2020).

the date on the Affidavit of Service (March 17, 2021) and the date of the instant Motion (November 17, 2021) resulted in the loss of evidence, the unavailability of witnesses, or that the delay will likely make discovery more difficult going forward. There is no reason to believe Morford will be prejudiced if the Clerk's default is set aside and Morford must litigate his case. Plaintiff's speculation about Defendant's alleged proclivity to engage in fraud, fabricate evidence, or commit other bad acts does not establish prejudice.

This factor weighs in favor of setting aside the Clerk's default.

### c. Meritorious Defense

"A defendant's burden to show the existence of a meritorious defense is extremely light on a motion to set aside an entry of default." *Regal Nails, Salon & Spa, LLC v. Ha*, No. 20-14388-CIV, 2021 WL 4976529, at *5 (S.D. Fla. Sept. 9, 2021), report and recommendation adopted, No. 20-14388-CIV, 2021 WL 4348243 (S.D. Fla. Sept. 24, 2021). For purposes of setting aside a Clerk's default, "the movant need only provide 'a hint of a suggestion' that . . . [the] case has merit." *Griffin IT Media, Inc. v. Intelligentz Corp.*, No. 07-80535-CIV, 2008 WL 162754, at *3 (S.D. Fla. Jan. 16, 2008) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).

Moreover, there is no requirement that the defaulting party show the defense is likely to succeed. *See Go Relax Travel, LLC v. Process Am., Inc.*, No. 12-CV-20867-MGC, 2012 WL 13014700, at *2 (S.D. Fla. July 13, 2012) ("Likelihood of success is not the measure with respect to the sufficiency of a meritorious defense when weighing a vacatur of the Clerk's

14

entry of default." (citations and internal quotation marks omitted)); *Boursiquot v. JCK Legacy Shared Servs., Inc.*, No. 21-21346-CIV, 2022 WL 607141, at *2 (S.D. Fla. Jan. 26, 2022) ("Courts engage in a limited inquiry when determining whether a defaulting party has raised a meritorious defense. Courts only consider whether the defense is 'entirely devoid of merit,' not whether the defense will ultimately succeed."), report and recommendation adopted, No. 21-21346-CIV, 2022 WL 604135 (S.D. Fla. Mar. 1, 2022).

Cattelan contends that the Court lacks personal jurisdiction over him because service of process was improper and the requirements of Florida's long-arm statute, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and the minimum contacts test are not satisfied. [ECF No. 31, pp. 2, 10]. Cattelan also contends that Morford's copyright infringement claim fails as a matter of law because: (1) "copyright laws do not extend protection over ideas or to functional objects (duct tape), or natural objects (fruit)"; (2) Plaintiff cannot establish that Cattelan copied Plaintiff's work; (3) "Plaintiff cannot establish that Cattelan had access to [Plaintiff's sculpture], Banana & Orange" and (4) "there is no substantial similarity between the protectible aspects of either party's work." *Id.* at 2.

Although the parties devote significant portions of their briefs to the *merits* of Cattelan's meritorious defenses, "the Court's review at this juncture is limited to an inquiry of whether Defendant's allegations are entirely devoid of merit", *Suntrust Bank*, 2010 WL 731802, at *2, and not whether Defendant will ultimately succeed in this case.

15

*See Tindal v. Def. Tax Grp. Inc.*, No. 8:19-CV-2907-T-60JSS, 2021 WL 4133749, at *3 (M.D. Fla. Sept. 10, 2021) (noting that "[the] [p]laintiff's arguments [contesting the merits of the defendant's asserted defenses] . . . [were] better left to be addressed on . . . [a] motion to dismiss, or at a later stage, if necessary").

The Undersigned considers Cattelan's arguments concerning insufficient service of process, lack of personal jurisdiction, and failure to state a claim of copyright infringement in the context in which they were raised: whether they support a meritorious defense. Cattelan has not moved to quash service of process and has not filed a motion to dismiss for lack of personal jurisdiction[5] or for failure to state a claim. Here, Cattelan has met his "extremely light" burden and set forth several "meritorious defenses", as that phrase is construed in the context of a Rule 55(c) motion to set aside a default.

---

[5]     Insufficient service of process and lack of personal jurisdiction are waivable defenses. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("[O]bjections to personal jurisdiction (unlike subject matter jurisdiction) are generally waivable."); *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990) ("[I]nsufficiency of process defense is waiveable.").

It may be that Cattelan ultimately decides not to raise one or both of these defenses in favor of focusing on merits-based defenses to Plaintiff's copyright infringement claim. At this juncture, however, Cattelan has not asked the Court to quash service of process or to dismiss the Complaint for lack of personal jurisdiction. The relief sought by Cattelan is the setting aside or vacatur of the Clerk's default. [ECF Nos. 31, p. 16; 38, p. 10]. In his Reply, Cattelan also asks for 30 days to respond to the Complaint. [ECF No. 38, p. 10]. This Report and Recommendations addresses the only relief sought by Cattelan: the setting aside or vacatur of the Clerk's default.

The Undersigned finds that Cattelan has met his burden of proof on this factor. Whether Cattelan will ultimately prevail on these (or other) defenses remains to be determined. However, for purposes of the instant Motion, it is sufficient that Cattelan has shown "a hint of a suggestion" that his defenses have merit. *Go Relax Travel, LLC*, 2012 WL 13014700, at *2.

This factor also favors setting aside the Clerk's default.

### d. Significant Financial Loss to Defendant

This factor was not addressed by either party. Nonetheless, there is support in the record permitting a finding that if the Clerk's default is not set aside and Plaintiff is allowed to pursue a default judgment, then it would likely result in significant financial loss to Defendant. Morford filed two affidavits with the Court seeking to recover $690,000.00 in monetary damages, plus injunctive relief. [ECF Nos. 23-24]. If Morford were to obtain a default judgment of $690,000.00, then it would constitute a significant financial loss to Cattelan. *See Antonini v. Letarte Retail LLC*, No. 18-81727-CV, 2019 WL 7881628, at *3 (S.D. Fla. July 3, 2019) (vacating Clerk's default and finding that the "case should be tried on its merits, particularly because of the substantial amount of damages requested by [the] [p]laintiff in his Motion for Final Default Judgment" where "[the] [p]laintiff request[ed] $21,822.79 in damages for his breach of contract claim and $320,000.00 in statutory damages for his copyright infringement claim.").

The Undersigned finds this factor also favors the setting aside of the Clerk's

default.

### e. Prompt Action

Cattelan acted promptly in retaining counsel and moving to set aside the Clerk's default. Defendant attests that he learned of the lawsuit on October 29, 2021. Upon learning of the lawsuit, Cattelan "immediately commenced efforts to hire a lawyer in New York and then Florida." [ECF No. 31-1, ¶ 5]. Cattelan's attorneys filed their notices of appearance in the instant case approximately seven days later, on November 5, 2021. [ECF Nos. 27-28]. Cattelan filed the instant Motion seeking to set aside the Clerk's default on November 17, 2021, approximately 19 days after learning of this lawsuit. Based on this timeline, the Undersigned finds that Cattelan acted in a reasonably prompt manner and did not unduly delay in seeking relief from the Court.

Given the circumstances set forth above and the strong policy of deciding cases on their merits, the Undersigned finds that good cause exists to set aside the Clerk's default. Accordingly, the Undersigned **respectfully recommends** that the Court **grant** the instant Motion, **set aside** the Clerk's default [ECF No. 19], and provide Defendant with a deadline to respond to the Complaint. If the Court adopts this Report and Recommendations, then Plaintiff's Claim [ECF Nos. 23-25] (construed as a motion for default judgment [ECF No. 26]) should be **DENIED as moot**.

## IV. Objections

The parties will have fourteen (14) days from the date of being served with a copy

of this Report and Recommendations within which to file written objections, if any, with United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 22, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
Joe Morford, *pro se*
All Counsel of Record