FILED BY ___*PG*___ D.C.

MAY 2 0 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## for the
## Southern District Of Florida
## Miami Division

| | | |
|---|---|---|
| _____Joe Morford_____ | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. _____1:21-cv-20039_____. |
| | ) | |
| _____Maurizio Cattelan_____ | ) | |
| Defendant | ) | |

## OPPOSITION TO MOTION TO DISMISS

Defendant's Motion to Dismiss is not supported.  Defendant's Motion to Dismiss should

be denied.

## INTRODUCTION

I cannot extend my copyright to cover elements that exist in nature and/or utilitarian

function(s).

My copyright does not extend to a real banana.  My copyright does not extend to duct

tape.  But this action is not about my owning the idea of a real banana or duct-tape.

My copyright does extend to an expression created, which includes a combination of a

banana and duct tape.

There is substantial similarity regarding my protectable expression.

The Defendant had reasonable access to my work.

In the "INTRODUCTION" of the motion Defense Counsel stated:

'This purports to be an action for copyright infringement. In previous filings with this Court,

Plaintiff asserted unequivocally that, **_I do not assert a copyright claim to the idea of a banana_**

*duct taped to a wall. People are free to duct-tape all the bananas they want to a wall."* (Doc 37, at 21) (emphasis added).

The quote above incorrectly contains a period at the end of the phrase, omitting a significant portion of my statement.

The quote in context is as follows:

"Additionally, I do not assert copyright claim to the idea of a banana duct-taped to a wall. People are free to duct-tape all the bananas they want to a wall; they are just not allowed to infringe my expression--claiming it as their own original artwork."

Nevertheless, my statement is accurate because no one can copyright an idea; and my copyright infringement claim is for the appropriation of the expression, not the idea: (See 17 U.S.C.A. § 102(b))

17 U.S. Code § 102 - Subject matter of copyright: In general

"(b)In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."

See: *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir. 1976) ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself. *Mazer v. Stein*, 347 U.S. 201, 217, 74

S.Ct. 460, 470, 98 L.Ed. 630, 642 (1954); *Baker v. Selden,* 101 U.S. 99, 102-103, 25 L.Ed. 841, 843 (1879).")

See: The Magistrate Judge discusses the second copyright, noting that the Eleventh Circuit states "there are almost no similarities between the two pacifier holders beyond the general ideas of including a teddy bear (with the requisite ears, eyes, nose, mouth, arms, legs), a ribbon bow and a pastel-based color scheme on a baby's pacifier holder."

*Baby Buddies, Inc. v. Toys "R" US, Inc.,* CASE NO. 8:03-CV-1377-T-17MAP, 6 (M.D. Fla. Sep. 20, 2011)

See: Plaintiff could still prevail on a claim for infringement if the way in which the works at issue here express the unoriginal ideas is substantially similar or the unoriginal elements "have been combined in an original way." *Hogan* , 48 F.Supp.2d at 311 (citing *Walker* , 784 F.2d at 50 ). *See Feist* , 499 U.S. at 362, 111 S.Ct. 1282 (Even a work that is entirely a compilation of unprotectible elements may be copyrightable under certain circumstances).

*Dubay v. King*, 366 F. Supp. 3d 1330, 1349 (M.D. Fla. 2019)

See: "Baby Buddies has the right to prevent others form copying its creative expression, but not from expressing similar ideas differently."" *Baby Buddies, Inc. v. Toys "R" US, Inc.,* CASE NO. 8:03-CV-1377-T-17MAP, 7 (M.D. Fla. Sep. 20, 2011)

See: Frybarger, 812 F.2d at 529 (to extent that similarities between works were confined to ideas and general concepts, they were noninfringing)." Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1446 (9th Cir. 1994)

But the idea and expression do not coincide in my work. This idea of a duct-tape banana is not an idea of a banana; nor is it an idea of duct-tape. It is an expression using a duct-tape and banana, that is copyright protected; then infringed by the Defendant.

"See, e.g., Tanksley, 902 F.3d at 174-75 (stating that neither ideas nor plot elements that flow predictably from such general idea are protectable);" *Nicassio v. Viacom Int'l, Inc.*, No. 18-2085, 7 (3d Cir. Jul. 2, 2019)

See: "But Mattel can't claim a monopoly over fashion dolls with a bratty look or attitude, or dolls sporting trendy clothing — these are all unprotectable ideas." *Mattel, Inc. v. Mga Entertainment, Inc.*, 616 F.3d 904, 916 (9th Cir. 2010)

See: Assuming that Mattel owns Bryant's preliminary drawings and sculpt, its copyrights in the works would cover only its particular expression of the bratty-doll idea, not the idea itself. *See Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971). Otherwise, the first person to express any idea would have a monopoly over it. Degas can't prohibit other artists from painting ballerinas, and Charlaine Harris can't stop Stephenie Meyer from publishing *Twilight* just because Sookie came first. Similarly, MGA was free to look at Bryant's sketches and say, "Good idea! We want to create bratty dolls too."
*Mattel, Inc. v. Mga Entertainment, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010)

See: When works of art share an idea, they'll often be "similar" in the layman's sense of the term. For example, the stuffed, cuddly dinosaurs at issue in *Aliotti v. R. Dakin Company*, 831 F.2d at 901, were similar in that they were all stuffed, cuddly dinosaurs — but that's not the sort of similarity we look for in copyright law. "Substantial similarity" for copyright infringement requires a similarity of expression, not ideas. *See id.* The key question always is: Are the works substantially similar beyond the fact that they depict the same idea?
*Mattel, Inc. v. Mga Entertainment, Inc.*, 616 F.3d 904, 916-17 (9th Cir. 2010)

See: The test for infringement of a copyright is of necessity vague. In the case of verbal "works" it is well settled that although the "proprietor's" monopoly extends beyond an exact

reproduction of the words, there can be no copyright in the "ideas" disclosed but only in their "expression." Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir. 1960)

And my idea and its expression are not inseparable.

""When the idea and its expression are thus inseparable, copying the expression will not be barred, since protecting the expression in such circumstances would confer a monopoly of the idea upon the copyright owner free of the conditions and limitations imposed by the patent law." Id. at 742." SID MARTY KROFFT TELE. v. McDONALD'S CORP, 562 F.2d 1157, 1168 (9th Cir. 1977)

See: *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1304 (11th Cir. 2020) ("Filtration can be tricky because copied material may be unprotectable for a wide variety of reasons. First, for instance, copyright protection extends only to a work's expressive elements, not to any underlying "idea, procedure, process, system, method of operation, concept, principle, or discovery" expressed therein. 17 U.S.C. § 102 ; *see also Baker v. Selden* , 101 U.S. 99, 102. 25 L.Ed. 841 (1879) ("[T]here is a clear distinction between the book, as such, and the art which it is intended to illustrate."). Courts call this the "idea-expression" dichotomy, with the term "idea" standing in "as a metonym for all eight categories" of unprotectable material. 1 Nimmer on Copyright § 2A.06; *see, e.g.* , *Oravec v. Sunny Isles Luxury Ventures, L.C.* , 527 F.3d 1218, 1224 (11th Cir. 2008). ")

Fruit can be taped to a wall in a many different ways. Bananas can be taped to a wall in many ways. Specifically, a single banana can be taped to a wall with a single piece of duct-tape in a many different ways. Yet, the Defendant copied my particular expression.

Defense Counsel points to my overall work containing more components than the Defendant's piece. Counsel also points to how much the Defendant did not infringe.

See: "To constitute an invasion of copyright it is not necessary that the whole of a work should be copied, nor even a large portion of it in form or substance, but that, if so much is taken that the value of the original is sensibly diminished, or the labors of the original author are substantially, to an injurious extent, appropriated by another, that is sufficient to constitute infringement." SID MARTY KROFFT TELE. v. McDONALD'S CORP, 562 F.2d 1157, 1169 n.13 (9th Cir. 1977)

My expression is protected and the individual elements cannot be removed from the expression in order to allow the Defendant to steal my work. During the extrinsic examination of the work the non-protected elements are separated from protected expression

See: "The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection." *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002).

Components used to create the protected expression cannot be extracted from the protected expression. They create the protected expression. To do so would destroy copyright protection for virtually every work of art.

See: *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("By analogy, the opening of Charles Dickens' *A Tale of Two Cities* is nothing but a string of short phrases. Yet no one could contend that this portion of Dickens' work is unworthy of copyright protection because it can be broken into those shorter constituent components. The question is not whether a short phrase or series of short phrases can be extracted from the work, but whether the manner in which they are used or strung together exhibits creativity.")

See: It is an axiom of copyright law that the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself. *Mazer v. Stein,* 347 U.S. 201, 217-18, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Baker v. Selden,* 101 U.S. 99. 102-03, 25 L.Ed. 841 (1879). *SID MARTY KROFFT TELE. v. McDONALD'S CORP,* 562 F.2d 1157, 1163 (9th Cir. 1977)

See: [A plaintiff] must prove both substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test." The "extrinsic test" is an objective comparison of specific expressive elements. The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

See: "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." Swirsky, 376 F.3d at 845 (quoting Smith, 84 F.3d at 1218).

The banana and duct-tape is part of a selection, coordination and arrangement of items that have secured copyright protection allowed under copyright law (See: Copyright Circular 14; Copyright Compendium 312.1, 312.2).  These items cannot now simply be disassembled from the expression they have created in order to remove them from comparison.

See: United States v. Hamilton, 583 F.2d 448, 451 (9th Cir. 1978) (Kennedy, J.) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement.").

I do not seek copyright protection for a lifelike jellyfish (*Satava v. Lowry* (9th Cir. 2003)), frog (*George v. Cadona* (9th Cir. 2008)) dolphin (*Folkens v. Wyland Worldwide* (9th Cir.

2018)), cardinals (*Franklin Mint Corp. v. Nat'l Wildlife Art Exch.,* (3d Cir. 1978)); or dominion over a bee (*Herbert Rosenthal Jewelry Corp. v. Kalpakian* (9th Cir. 1971)).

I do not seek to claim ownership over any natural creature(s) or object(s). However, I do have copyright protection against the infringement of the banana/duct-tape expression portion of my work.

I have never claimed copyright protection for a real/realistic banana. My copyright protection extends only to the selection, coordination and arrangement of the materials used--not the materials themselves (See: Copyright Circular 14). As well, it is stated copyright law that though "rocks" cannot be copyrighted by themselves--a sculpture created using them can be eligible provided it contains a minimum level of creativity.

See: Atari Games Corp. v. Oman, 979 F.2d 242, 243 (D.C. Cir. 1992) (" the Supreme Court's instruction that "the requisite level of creativity [for copyrightability] is extremely low." Feist Publications v. Rural Tel. Serv. Co., ___ U.S. ___, ___, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358, 369 (1991).")

In fact, a banana (real or otherwise) may be used to achieve a copyright protected expression (See: Copyright Circular 14, Copyright Compendium 312.1, 312.2).

It is only the expression we need concern ourselves with here.

See"("If the copied parts [of a work] are not, on their own, protectable expression, then there can be no claim for infringement....")." Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1105 (7th Cir. 2017)

Words cannot be copyrighted; yet they are used to create books. Notes cannot be copyrighted; yet they create music. Individual material may be removed from analysis only if they function outside of copyrightable expression.

See: *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 879 (11th Cir. 2007) ("Furthermore, Finell failed to express any opinion as to the originality of Lil' Joe Wein's use of the contested phrase. Accordingly, because the "birthday" phrase was a common, unoriginal, and noncopyrightable element of the song, it is not entitled to copyright protection."). But that is not the case here as the selection, coordination and arrangement of fruit, background, tape, residue (in my work) contain a sufficient amount of original and creative sculptural authorship and is regarded as copyrightable.

Viewing any expression out-of-context will reduce it to single notes, words, tiles etc. and prevent creative expressions from received copyright protection.

See: *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) ("although chord progressions may not be individually protected, if in combination with rhythm and pitch sequence, they show the chorus of *Thank God* to be substantially similar to the chorus of *One*, infringement can be found. *See Three Boys*, 212 F.3d at 485; *Satava*, 323 F.3d at 811.").

See:

905 Copyrightable Authorship in Visual Art Work

"In the case of two-dimensional works, original authorship may be expressed in a variety of ways, such as the linear contours of a drawing, the design and brush strokes of a painting, the diverse fragments forming a collage, the pieces of colored stone arranged in a mosaic portrait, among other forms of pictorial or graphic expression."

The duct-tape in my work serves no utilitarian purpose. The duct-tape does not hold anything; including itself to the wall. The fruit is secured in place by tacking at the rear. The copyright office was informed of this prior to registration " ... in fact, no tape is holding any of the fruit--it is positioned across the fruit. As the fruit is tacked unseen (at the back)."

The duct-tape in my work serves no practical purpose, it serves no utilitarian function and is included "merely to portray the appearance of the article or convey information."

The "duct-tape" in my sculpture serves no utilitarian purpose--even within the non-useful sculpture itself. The "duct-tape" affixes nothing to the wall; including itself. The sculpted banana is secured by unseen tacking at the rear while the non-functional fabricated "duct-tape" is held in place by glue, rubber cement and most obviously, transparent packing-tape. This is verifiable. The copyright office was informed of this prior to registration and was provided with photos, which substantiate this.

Of note, the bench in the original photo by Rogers "Puppies" serves a utilitarian purpose. The Koons infringing replica in sculpture "String of Puppies" serves to hold the set pieces. Yet, neither is excluded in either piece because its primary function is merely visual as artwork. And the people and puppies are not in-and-of themselves copyrightable.

See '... a work may be protected by copyright law when its otherwise unprotectable elements are arranged in a unique way. *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992) " *Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1341 (11th Cir. 2006)'

The appearance of "duct-tape" is only there to depict "duct-tape" and is not useful. The article serves no utilitarian function and is used merely to portray the appearance of the article or to convey information. (924.1 What Is a Useful Article? The Copyright Act defines a useful

article as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101.).

Useful Articles
(SEE: Copyright Law:  https://www.copyright.gov/register/va-useful.html)

A "useful article" is an object having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. Examples are clothing, furniture, machinery, dinnerware, and lighting fixtures. An article that is normally part of a useful article may itself be a useful article, for example, an ornamental wheel cover on a vehicle.

Copyright does not protect the mechanical or utilitarian aspects of such works of craftsmanship. It may, however, protect any pictorial, graphic, or sculptural authorship that can be identified separately from the utilitarian aspects of an object. Thus, a useful article may have both copyrightable and uncopyrightable features. For example, a carving on the back of a chair or a floral relief design on silver flatware could be protected by copyright, but the design of the chair or flatware itself could not.

Copyright in a work that portrays a useful article extends only to the artistic expression of the author of the pictorial, graphic, or sculptural work. It does not extend to the design of the article that is portrayed. For example, a drawing or photograph of an automobile or a

dress design may be copyrighted, but that does not give the artist or photographer the
exclusive right to make automobiles or dresses of the same design.

My work Banana and Orange contain the requisite amount of creative expression which
is why is entitled to copyright protection.

See: *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 362 (1991) ("The
question that remains is whether Rural selected, coordinated, or arranged these uncopyrightable
facts in an original way. As mentioned, originality is not a stringent standard; it does not require
that facts be presented in an innovative or surprising way. It is equally true, however, that the
selection and arrangement of facts cannot be so mechanical or routine as to require no creativity
whatsoever. The standard of originality is low, but it does exist. See Patterson Joyce 760, n. 144
("While this requirement is sometimes characterized as modest, or a low threshold, it is not
without effect") (internal quotations omitted; citations omitted). As this Court has explained, the
Constitution mandates some minimal degree of creativity, see *The Trade-Mark Cases*, 100 U.S.,
at 94, and an author who claims infringement must prove "the existence of . . . intellectual
production, of thought, and conception." *Burrow-Giles, supra*, at 59-60.")

The protectable aspects of my work include the duct-taped banana expression and the
Defendant excerpted this meaningful portion.

See: *Steinberg v. Columbia Pictures Industries*, 663 F. Supp. 706, 713 (S.D.N.Y.
1987) ("this case involves the entire protected work and an iconographically, as well as
proportionately, significant portion of the allegedly infringing work. *Cf. Mattel, Inc. v. Azrak-
Hamway Intern., Inc.,* 724 F.2d 357, 360 (2d Cir. 1983); *Elsmere Music, Inc. v. National
Broadcasting Co.,* 482 F. Supp. 741, 744 (S.D.N.Y.), *aff'd.* 623 F.2d 252 (2d Cir. 1980) (taking

small part of protected work can violate copyright).") and attempted to claim it as his original creation.

There is more than substantial similarity between the protectable expression of my work and the Defendant's work.  And the expression does not approach merger.

See: *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1304 (11th Cir. 2020) ("Second, and separately, some expression may be so intrinsic to the communication of an idea—or procedure, process, etc.—that it is considered to have "merged" into the idea. According to the merger doctrine, where there are sufficiently "few ways of expressing an idea, not even the expression is protected by copyright." *BUC* , 489 F.3d at 1143. In one seminal example, the First Circuit determined that a written rule governing a sweepstakes—requiring, for instance, that "[e]ntrants should print name, address and social security number on a boxtop, or a plain paper"—wasn't protectable because the ideas it expressed were "so straightforward and simple" that "at best only a limited number" of possible modes of expression could exist to convey them. *Morrissey v. Procter & Gamble Co.* , 379 F.2d 675, 678–79 (1st Cir. 1967).")

See: *BUC International Corp. v. International Yacht Council Ltd.*, 489 F.3d 1129, 1142-43 (11th Cir. 2007) ("Second, MLS Solutions contends that BUC's selection of section headings does not survive application of the merger doctrine. The merger doctrine provides that "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *BellSouth*, 999 F.2d at 1442 (citing *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir.1991)). As noted above, copyright normally protects the expression of ideas, but not the ideas themselves. *See* 17 U.S.C. § 102(b). For example, the idea of hunting a formidable

whale at the lead of an eccentric captain is not protected by copyright law. The expression of this idea as it is encapsulated in the novel *Moby-Dick*, however, is protected by copyright.")

See: The related doctrine of merger "instructs that some ideas can only be expressed in a limited number of ways" such that "idea and expression 'merge,' " with the resulting amalgam receiving no copyright protection. Zalewski , 754 F.3d at 102–03 ; see also Bucklew , 329 F.3d at 928 (merger "refers to the situation in which there is only one feasible way of expressing an idea, so that if the expression were copyrightable it would mean that the idea was copyrightable, and ideas are not copyrightable"). Design Basics, LLC v. Lexington Homes, Inc., 858 F.3d 1093, 1102 (7th Cir. 2017)

This infringed section of my work and the Defendant's piece are virtually identical.  The manner the Defendant used to accomplish this replication is irrelevant.

See: "In copyright law the medium is not the message, and a change in medium does not preclude infringement." *Rogers v. Koons*, 751 F.Supp. 474, 477 (S.D.N.Y. 1990).' *Easter Unlimited, Inc. v. Rozier*, 18-CV-06637 (KAM), 28 (E.D.N.Y. Sep. 27, 2021).

An extrinsic examination maintains the central elements selected, coordinated and arranged in a virtually identical manner.  The intrinsic examination is obvious to the average lay observer wherein they would conclude striking similarity.  As well, the portions should be compared side-by-side in relative proportions.

There are no-less-than seven (7) specific similarities in a comparison of the works.  And none of these similarities were "inevitable."

See: "There is no greater similarity between the pins of plaintiff and defendants than is inevitable from the use of jewel-encrusted bee forms in both." SID MARTY KROFFT TELE. v. McDONALD'S CORP. 562 F.2d 1157. 1168 (9th Cir. 1977). *MATTEL. INC. v. MGA*

*ENTERTAINMENT, INC.*, CASE NO. CV 04-9049 DOC (RNBx), 15 n.7 (C.D. Cal. Dec. 27,

2010) ("At the extrinsic stage, the court determines the standard for infringement that will be

"applied at the `intrinsic' stage." Ninth Circuit Op. at 10541. "If there's a wide range of

expression . . . then copyright protection is `broad' and a work will infringe if it's `substantially

similar' to the copyrighted work. If there's only a narrow range of expression . . . then copyright

protection is `thin' and a work must be `virtually identical' to infringe." *Id.*")

      Artistic works are entitled to broad protection.

      See: *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 321 (9th Cir. 1987) ("As we

emphasized in an only slightly different context, *copyright law considers factual works to be*

*fundamentally different from more artistic works:* "similarity of expression may have to amount

to verbatim reproduction or very close paraphrasing before a factual work will be deemed

infringed."")

      See: *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446-47 (9th Cir.

1994) ("*See Feist.* 499 U.S. at 349. 111 S.Ct. at 1289-90. Rather. it submits that the broader

protection accorded artistic works is more appropriate. *See, e.g., McCulloch,* 823 F.2d at

321 (artistic work like a decorative plate receives broader protection because of endless

variations of expression available to artist).")

      My work has been accessible worldwide for over 10 years as well as widely

disseminated.

      The Defendant had access to the work (as anyone with internet access has) since July 18,

2008.

      As to a reasonable opportunity to view I submit the following:

(1) a particular chain of events that establish a link between the plaintiff's work and the Defendant's access.

There was an inordinate amount of views from the gallery home country (France) prior to the appearance of Defendants first version. These views from France originate from a place where I otherwise have no followers. Prior to Defendant's first version my work was also viewed in the Defendant's home country (Italy).

(2) that the plaintiff's work has been widely disseminated.

As "widely disseminated" indicates a "great variety" of views I can confirm that views came from all over the world (verified in over 25 countries) prior to the publication of the Defendant's version establishing my work was reasonable for him to have viewed.

## SUMMARY

The Defendant's claimed use of a real banana ("Cattelan's piece, *Comedian*, on the other hand consists of an actual banana duct-taped to a wall.") and actual duct-tape does not exempt Defendant from a legitimate charge of infringement as copying by other means is still copying.

See: 'Defendant's alleged infringement of Plaintiff's Ghost Face Mask in a different medium—a depiction on a garment rather than a physical, three-dimensional sculpted mask— does not preclude a finding of copyright infringement. "In copyright law the medium is not the message, and a change in medium does not preclude infringement." *Rogers v. Koons*, 751 F.Supp. 474, 477 (S.D.N.Y. 1990).' *Easter Unlimited, Inc. v. Rozier*, 18-CV-06637 (KAM), 28 (E.D.N.Y. Sep. 27, 2021).

My work was originated as an artistic expression and the infringer simply replicated it using a real banana and actual duct-tape, which is nothing more than a crude and obvious attempt

to hide the plagiarism. "Such cases are consistent with the general principle stated in 1 M. and D. Nimmer, *Nimmer on Copyright,* (1989) "The fact that a work in one medium has been copied from a work in another medium does not render it any less a "copy".

Arranging natural objects (fruit) taken from nature can be copyrighted when they "are selected, coordinated, and arranged in a creative manner (312.1 Copyrightable Subject Matter)" and as such, these same creations do not possess standing exemption from infringement i.e. the Defendant holds no right to infringe by using alternate material to achieve the same visual expression.

As well, the Defendant's use of duct-tape can also reasonably be interpreted as non-functional in that the fruit is affixed to the wall via unseen tacking at the rear.

Defense Counsel references a difference in media used with no substantiating case law or relevant copyright law. These are statements made in a vacuum and appear to attempt to absolve their client but are based on nothing. Infringement cannot be avoided by the infringer realizing the replication in alternate means.

Copyright in my work is not extended to a preexisting realistic banana or the non-utilitarian functioning duct-tape. Nevertheless, the materials used to create the work are not of issue as copyright protection extends only to the selection, coordination or arrangement of preexisting materials not to the materials themselves:

Circular 14: Copyright in Derivative Works and Compilations

Copyright in Derivative Works and Compilations
Copyright Protection in Compilations and Collective Works

The copyright in a compilation of data extends only to the selection, coordination or arrangement of the materials or data, but not to the data itself. In the case of a collective work containing "preexisting works"—works that were previously published, previously registered, or in the public domain—the registration will only extend to the selection, coordination or arrangement of those works, not to the preexisting works themselves. If the works included in a collective work were not preexisting—not previously published, registered, or in the public domain or owned by a third party—the registration may extend to those works in which the author of the collective work owns or has obtained all rights.

The allegations in my work are not "razor thin" as asserted by Defense Counsel because my work being a creative endeavor it is entitled to broad protection. In particular, this work falls outside of merger:

See: "Educ. Testing Servs. v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986); ECF No. 53 at 9:21-10:7 (contending that the expression of emotions may approach a finding of merger). For the reasons discussed herein, a robot's face conveying emotions and information is subject to varying expressions of the idea." Dig. Dream Labs v. Living Tech. (Shenzhen) Co., 2:20-CV-01500-CCW, (W.D. Pa. Feb. 28, 2022)

And regarding scènes à faire, in wall sculpture. what elements flow from a common theme?

See: *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1248 (11th Cir. 1999) ("Similarly, *scenes a faire*, "sequences of events which necessarily follow from a common

theme," are not protectible. *Reyher*, 533 F.2d at 91. Incidents, characters, or settings that are indispensable or standard in the treatment of a given topic are not copyrightable.")

Therefore the unauthorized replication of my work by the Defendant is not excused by scènes à faire.

The "total feel and concept" is not different.

Any comparison of the two works is never the "differences."

See: *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 131 (2d Cir. 2003) ("To illustrate the lack of substantial similarity, the district court recited a number of differences between the rugs, including the fact that "[d]efendants' design is symmetrical, while plaintiff's is asymmetrical, a difference which creates substantial changes in the total concept and feel of the two works, given that both are substantial copies of the public domain Battilossi." *Id.* While the district court "appreciate[d] that defendants did copy, in modified form, a few elements original to plaintiff," the court concluded that "those elements (especially in their modified form) do not change the different total concept and feel of the two works." *Id.*")

The two works at issue here need be compared in the correct proportions; not in the wildly disproportionate display previously included by Defense Counsel.

Defense Counsel has claimed the "angles" of the two works are different. In fact, the angle of banana-to-tape are identical. A geometric analysis whereby and x/y axis is drawn through the middle of the meeting of the tape and banana reveals either self-contained expression to be laid out with four congruent angles. If the infringing piece is rotated 35° to the left (-35°), these same angles are an exact match, while the constituent parts of the expression overlay virtually identically. This is one more example of where my choices were replicated where other many other options are plainly available.

Simple rotation does not equal original expression; it is more likely intentional dissimilarity.

See: *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 146 (2d Cir. 1956) ("This crude effort to give the appearance of dissimilarity is itself evidence of copying.")

It is still Mona Lisa even if one of the paintings is rotated slightly farther to the left. The actual expression contains the same self-contained manifestation.

## LEGAL STANDARD

I have adequately stated a claim and provided a showing of a set of facts consistent with the allegations in the complaint. This motion to dismiss should be denied.

See: "When considering a motion to dismiss brought under RCFC 12(b)(6), the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court must inquire, however, whether the complaint meets the "plausibility" standard described by the United States Supreme Court, i.e., whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560, 563 (2007) (hereinafter "Twombly") (citations omitted).

I am entitled to seek remedy for copyright infringement afforded me under 17 U.S. Code Chapter 5 - COPYRIGHT INFRINGEMENT AND REMEDIES.

III. Statement of Claim.

The plaintiff is seeking damages in the form of gross profit generated by the Defendant totaling over $390K. This is the amount of money made from three (3) direct

sales of the piece and two (2) "artist proofs" via Art Basel in Miami Beach
[ATTACHMENT 1]. The Defendant's piece "Comedian" is plagiarized from the
plaintiff's original art "Banana & Orange" [Registration Number: VA0002223672].  As
well the plaintiff seeks court costs and travel expenses regarding the prosecution of this
case.  The plaintiff maintains proof of origin, access and substantial/striking similarity.

* This amount was calculated to be $690,000.00 (US) in submitted Affidavit dated as of
April 20, 2021.

IV.  Relief

        The plaintiff asks the court to order relief in the form of gross profit generated
from the plagiarized work to be paid to the plaintiff.  The Defendant has sold, a
minimum, of five (5) pieces totaling over $390K.  The plagiarism continues presently in
the form or merchandising and promotion.  The plaintiff is suing for the profits generated
that are attributable to the infringement.  This is the amount of money made from three
(3) direct sales of the piece via Art Basel in Miami Beach; plus two (2) "artist proofs" of
the work for an undisclosed amount.  As well the plaintiff seeks court costs, travel
expenses and requests all infringing material be removed. [ATTACHMENT 2].

        * "ATTACHMENT 2" indicated "Relief" in the form of:
        1. All gross profits attributable to the infringement be disclosed and awarded to
        me

2. The cessation of sale, distribution and display of any infringing material.

All remedies are allowed under the statute and itemized as follows:

1.     17 U.S. Code § 504 - Remedies for infringement: Damages and profits: (a) (1)

AFFIDAVIT OF SUM CERTAIN

     According to published articles the Defendant sold a total of five (5) pieces [3 sculptures/2 proofs] of the infringing work for a total of $690,000.00 (US).  The sources used for computation are New York Times, Wall Street Journal and Public Broadcasting Service.  The relevant information is attached to this affidavit as list with referenced publication, author, date, time, relevant statement(s) and associated links.

(Submitted via Affidavit dated April 20, 2021.)

2.     17 U.S. Code § 502 - Remedies for infringement: Injunctions: (a), (b)

17 U.S.C. § 503. Remedies for infringement: Impounding and disposition of infringing articles

     The complaint requested relief via profits, expenses and injunctive relief in "the cessation of sale, distribution and display of any infringing material."

     See: "The Court has found that Jury infringed Plaintiff's copyrights. Moreover, there is substantial likelihood of future infringement." ... "For these reasons, the Court find that a permanent injunction is appropriate in this case." Jenkins v. Jury, Case No. 5:07-cv-133-Oc-GRJ. 12 (M.D. Fla. Apr. 16, 2009)

See: Pacific and Southern Co., Inc. v. Duncan, 744 F.2d 1490, 1493 (11th Cir. 1984) ("We also conclude that the television station is entitled to a permanent injunction preventing the appellant from continuing to infringe its copyright.")

See: Rogers v. Koons, 960 F.2d 301, 306 (2d Cir. 1992) ("the district court concluded on February 22, 1991 that the record showed Sonnabend's as well as Koons' liability for infringing profits. On March 27, 1991 it entered a permanent injunction enjoining Koons and Sonnabend Gallery from making, selling, lending or displaying any copies of, or derivative works based on, "Puppies," and, pursuant to 17 U.S.C. § 503, requiring defendants to deliver all infringing articles to plaintiff within 20 days, including the fourth or artist's copy of "String of Puppies."")


3.      17 U.S. Code § 505 - Remedies for infringement: Costs and attorney's fees

As well the plaintiff seeks court costs and travel expenses regarding the prosecution of this case.


I have submitted requisite facts and substantial allegations, none of which are legally refuted in this motion to dismiss.

I have submitted well-pleaded factual allegation which entitle me to relief; including material facts regarding dates, times, etc.

I have met the plausibility standard and plead factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.

There is no other plausible way in which the Defendant could have arrived at the exact same expression in the exact same genre. This is not coincidence, not excused under scènes à faire, nor can be explained via merger.

My work has been determined to be creative enough to merit copyright protection. My work is not merely an arrangement void of creative expression.

My work is not simply an arrangement of geometric shapes. It is a selection, coordination and arrangement of material that constitute a creative expression with more than a modicum of creativity.

See: *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, (1991) ("The constitutional requirement necessitates independent creation plus a modicum of creativity. ")

And the Defendant cannot point to how much he did not steal in order to escape the charge of copyright infringement. As well, pointing to the things that are different in the work rather than the similarities is not the intention of comparison.

My work contains substantial protectable expression,

See: *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 7 (M.D. Fla. Apr. 16, 2009) ("Jenkins registered the copyrights more than five years after publication of his sculptures, the Court has no difficulty according great weight to the certificates of registration. As noted above, Jury did not seriously challenge the validity of these copyrights at trial. Moreover, even if he had, the Court finds that Jenkins' sculptures are exactly the sort of work that may be copyrighted. Indeed, the evidence is undisputed that Plaintiff independently created the imaginary "Purple Tail," fanciful "Short Big Eye" and fanciful "Quillback Rockfish" and that they possess more than a "minimal degree of creativity."")

The accused work is virtually identical as to the protected expression and supported by substantial facts.  As well, my work is not "historical architecture" it is in fact "protectable expression" (*See, e.g.*, *Seven Oaks Millwork, Inc. v. Royal Foam US,* LLC, 483 F.Supp. 3d 1192 (M.D. Fla. 2020).

I have adequately alleged both access and more-than substantial similarity.

I own a valid copyright and shown copying constituent elements of the work that are original:

See e.g., Doc. 53 at 10 (Plaintiff's Trial Brief) ("the evidence will unequivocally illustrate that certain similarities between [Plaintiff's fish sculptures] and the accused metal fish sculptures are so "striking" that the similarities cannot satisfactorily be accounted for by a theory of coincidence, independent creation, prior common source, or any theory other than copying.") *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 8 n.20 (M.D. Fla. Apr. 16, 2009)

My copyright protection extends to the selection, coordination and arrangement of, among other things, the banana and duct-tape in my work "Banana and Orange."  And it is this expression that the Defendant has infringed

## ARGUMENT

## I. DEFENDANT'S MOTION FOR DISMISSAL SHOULD BE DENIED

Per the primary objective of copyright law, I am entitled to relief.  I am not requesting my labor be rewarded.  "Congress shall have Power ... to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries ...." U.S. CONST. art. I, § 8, cl. 8. "The primary objective of

copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991).

My protectable expression is copyright protected and this copyright was infringed upon by the Defendant.

See: To establish copyright infringement, a plaintiff must show at least two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Singleton v. Dean*, 611 F. App'x 671, 672 (11th Cir. 2015) (citing *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994)).

I have shown that I possess a valid copyright and that the Defendant copied constituent element of my work that are original.

The Defendant infringed my original expression.

The average lay observed would recognize the alleged copy as having been appropriated from the original work.

See: *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 (11th Cir. 2002) (""an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Original Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 829 (11th Cir. 1982)

The Defendant had reasonable access to my work (Artist Website, Facebook, YouTube/Google) for a significant period of time (July 18, 2008), this was prior to the appearance of his claimed initial version and the two pieces are so similar that a lay observer would recognize the alleged copy as having been appropriated from the original.

See: "While some courts have required expert testimony to establish striking similarity, such testimony is unnecessary in this case because this is not a "technical" field in which the trier

of fact is not able to make this determination. See Kent v. Revere, 1985 WL 6453, *7 (M.D. Fla. 1985.)" *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 10 n.24 (M.D. Fla. Apr. 16, 2009).

I do not attempt to claim ownership of a natural element (fruit). However, non-protectable materials can be used to create an original expression, which then is entitled to copyright protection (See: Circular 14, Copyright Compendium 312.1, 312.2).

See: *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement."). *See also Metcalf,* 294 F.3d at 1074 ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.").") See, ... a work may be protected by copyright law when its otherwise unprotectable elements are arranged in a unique way. *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992) " *Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1341 (11th Cir. 2006)'.

Nor do I attempt to claim ownership of a utilitarian, functional component (duct-tape) as the duct-tape provides no functional purpose in my work.

## A. I Cannot Extend My Copyright To Cover Elements That Exist In Nature And/Or Utilitarian Components.

My copyright claim is not based on the false notion that my copyright grants me ownership of any banana combined with duct tape.

I do not claim that my copyright grants me ownership of "any banana combined with duct tape." Rather my copyright protection is for the specific selection, coordination and

arrangement in my expression.  I have obtained copyright protection for a specific expression; this expression has been infringed on by the Defendant.

I do not seek copyright protection for a lifelike jellyfish (Satava v. Lowry,(9th Cir. 2003)), frog (George v. Cadona, (9th Cir. 2008)), dolphin (Folkens v. Wyland Worldwide (9th Cir. 2018)), cardinals (*Franklin Mint Corp. v. Nat'l Wildlife Art Exch.,* (3d Cir. 1978)); or the interpretation of a bee (Herbert Rosenthal Jewelry Corp. v. Kalpakian (9th Cir. 1971)).

I do not seek copyright protection for elements in the public domain--only my expression created.

*See: Compulife Software Inc. v. Newman,* 959 F.3d 1288, 1304 (11th Cir. 2020) ("Third—and this is easier to understand—material taken from the public domain is unprotected, even if incorporated into a copyrighted work. *See Stewart v. Abend* , 495 U.S. 207, 234, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990) (holding that an author "may receive protection only for his original additions," not "elements ... already in the public domain"). ")

As well, my work is not a stock arrangement.

See: *Compulife Software Inc. v. Newman,* 959 F.3d 1288, 1304 (11th Cir. 2020) ("Fourth, material may be unprotected if it constitutes *scènes à faire* —that is "[i]ncidents, characters, or settings that are indispensable or standard in the treatment of a given topic." *Corwin v. Walt Disney Co.* , 475 F.3d 1239, 1251 (11th Cir. 2007) (alteration in original) (quoting *Herzog v. Castle Rock Entm't* , 193 F.3d 1241, 1248 (11th Cir. 1999) ); *see also Beal v. Paramount Pictures Corp.* , 20 F.3d 454, 459 (11th Cir. 1994) (describing *scènes à faire* as "stock scenes that naturally flow from a common theme"). For example, we have noted that there is "no protection for common elements in police fiction, such as 'drunks, prostitutes, vermin and derelict cars' and 'foot chases and the morale problems of policemen, not to mention the familiar

figure of the Irish cop.' " *Corwin* , 475 F.3d at 1251 (quoting *Walker v. Time Life Films, Inc.* , 784 F.2d 44, 50 (2d Cir. 1986) ). ")

What elements in fruit and duct-tape are mandated by, or customary to, the genre of sculpture, or even fruit-and-tape-sculpture, or more specifically banana-and-duct-tape sculpture?

There is no such thing as standard elements (scènes à faire) with a non-existent genre called "duct-taped fruit" which would somehow prevent a legitimate infringement claim by me of the Defendant's exact replication of my expression. There are a large number of possibilities in combining fruit and duct tape (even with just one piece of fruit and duct-tape). Yet, the Defendant ended up with exactly the same expression as mine. This was not independent creation on the part of the Defendant.

Even if we were to assume a genre protecting elements of scènes à faire within, the Defendant could still not claim "standard element use" by identically replicating my exact expression out of a massive multitude of choices: Why not a vertical banana taped by the stem? Why not a dome positioned banana taped across its latitude? Why not an inverted banana taped with folded tape? Why not two bananas and three pieces of duct-tape? Etc. Instead the Defendant chose the exact same fruit and tape superfluous positioning using the exact same portions. This was not coincidence. This was not independent creation on the part of the Defendant.

I cannot receive copyright protection for either a banana or duct-tape. The copyright protection afforded my work is for an original expression created using non-copyrightable materials. The copyrighted expression infringed on by the Defendant does not fall under scènes à faire as it is not an expression standard, stock or common to a particular subject.

See: *Batiste v. Najm*, 28 F. Supp. 3d 595, 601 (E.D. La. 2014) ("Likewise, copyright protection does not extend to *scènes à faire* material contained within a work. Such material includes "expressions that are standard, stock or common to a particular subject matter or are dictated by external factors." *Eng'g Dynamics,* 26 F.3d at 1344. ")

See: *Stewart v. Abend*, 495 U.S. 207, 224 (1990) (""The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the pre-existing material." 17 U.S.C. § 103(b).")

Nowhere in the copyright granted my work "Banana & Orange" does the copyright office grant me ownership over bananas, oranges, duct-tape, residue, etc.  I was extended copyright protection for my expression--not the individual non-copyrightable materials therein (See: Copyright Circular 14, Compendium 312.1, 312.2).  I can understand this.  The copyright office understands this.  I do not know why Defense Counsel seems to find it incomprehensible.

See: *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003) ("Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters. These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them.")

My expression is not simply a "lifelike representation of a natural creature".

Rather, I maintain copyright protection for the expression; not to the preexisting works used--natural or otherwise. The copyright protection extends only to the selection, coordination or arrangement of these items. And it is this expression that was stolen by the Defendant.

### 1. I Cannot Extend My Copyright To A Real Banana

My work has not "merely combined several unprotectable ideas and standard elements" it is an original expression.

*See: Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1304 (11th Cir. 2020) ("Finally, certain ways of arranging information—say, alphabetically—are entirely unoriginal, and therefore unprotectable. *See Feist* , 499 U.S. at 363, 111 S.Ct. 1282 (explaining that presenting data in alphabetical order is "so commonplace that it has come to be expected as a matter of course").")

The modicum of creativity of "Banana & Orange" cannot be indicted by virtue of its elegance as such originality is not subject to the "sweat of the brow" doctrine.

See '... with regard to compilations to ensure that courts would not repeat the mistake of the "sweat of the brow" courts by concluding that fact-based works are treated differently and measured by some other standard. As Congress explained it, the goal was to "make plain that the criteria of copyrightable subject matter stated in section 102 apply with full force to works . . . containing preexisting material." H.R. Rep., at 57; S. Rep., at 55. *Feist Publications, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 357 (1991)'

See: "... a work may be protected by copyright law when its otherwise unprotectable elements are arranged in a unique way. *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992) " *Corwin v. Walt Disney Co.*, 468 F.3d 1329, 1341 (11th Cir. 2006)'

Fruit by itself is not entitled to copyright protection--nor is an exact replica. Duct-tape (nor a fabricated replica) in-and-of itself is also not entitled to copyright protection. However, in my work, the fruit and duct-tape are selected, coordinated and arranged in a creative manner making the sculptural expression eligible for copyright protection.

(a): FRUIT

Fruit alone is not entitled to copyright protection any more than a rock. As well, a stereotypical representation of fruit sitting as it would in nature cannot receive copyright protection. See *George v. Cadona*, 266 F. App'x 523, 524 (9th Cir. 2008). However, fruit is not found wearing duct-tape in nature as a standard feature. And the appearance of the fruit represented in my sculpture does not follow from the idea of a banana in its natural habitat. And as a matter of copyright law a sculptural work including fruit (or realistic representations of same) that are selected, coordinated, and arranged in a creative manner are eligible for copyright protection (312.1 Copyrightable Subject Matter).

(b): DUCT-TAPE

Duct-tape alone is not entitled to copyright protection any more than a hand-tool. However, the duct-tape in my sculpture is not simply a self-contained replica acting independent of original expression--it is expressed in an original manner involving selection, coordination and arrangement in a creative manner. And as a matter of copyright law a sculptural work including functional items e.g. hand-tools (or representation of same) that are selected, coordinated, and arranged in a creative manner are eligible for copyright protection (312.1 Copyrightable Subject Matter).

I do not, and cannot, own a copyright in an actual banana, a realistic replication of a banana or real or other replicated duct-tape.

I do not seek to prevent others from copying aspects of my sculpture resulting from either [the banana's] physiology or from [the banana's] depiction in the [sculpture] medium."

See: *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("Satava may prevent others from copying the original features he contributed, but he may not prevent others from copying elements of expression that nature displays for all observers").

I am suing for the infringement of my expression that uses such preexisting materials.

The expression that was infringed was not a realistic/real banana. It was a specific expression containing a duct-taped banana. The expression relates to the selection, coordination or arrangement of the material. Not to the materials itself. This is copyright law (See: Circular 14, Compendium 312.1, 312.2).

The Ninth Circuit held that a purported copyright holder "may not prevent others from copying aspects of his sculptures resulting from either [the animal's] physiology or from [the animal's] depiction in the [particular artistic] medium." *Id.* at 810.

So, by all means, use a real banana, or buy a fake one at a craft store, or make your own-- you are free to use it to create your own expression; you just cannot use it to infringe mine, *which is what the Defendant did here.*

Any reasonable fact finder would be able would be able to find something distinctive about my work. In particular, but not limited to, an incongruous diagonal belt of duct-tape across a single banana. This is not how and banana is "sitting as it would in nature" (*George S. Chen Corp. v. Cadona International, Inc.*, No. 04-365, 2006 WL 8450995 (C.D. Cal. Feb. 14,

2006). Instead, my expression brings together two items that do not traditionally have any connection to each other.

My work is not simply a depiction of a banana. And as the expression containing the fruit, tape, residue, etc. constitute a creative expression that is entitled to copyright protection.

See: *Folkens v. Wyland (Nfn)*, No. 2:14-cv-02197-JAM-CKD, 7 (E.D. Cal. Apr. 6, 2016) ("Defendants' reply that "the only original element [Plaintiff] can claim that also appears in Wyland's work is that the two bottlenose dolphins cross. This generic addition to the depiction of actual dolphins does not amount to the 'quantum of originality' required to protect this element of Plaintiff's work." (Reply 8:3-6.)")

A copyright-protected expression cannot be removed from analysis or comparison as it is not an unprotected element even if it contains preexisting works (See: Circular 14, Compendium 312.1, 312.2).

See: "[P]rotectable expression includes the specific details of an author's rendering of ideas." Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir.2002).

See: *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1295-96 (S.D. Fla. 2020) ("The Eleventh Circuit has explained that the second element breaks down into "two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's [work]; and 2) whether, as a mixed issue of fact and law, those elements of the [work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *Id.* (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.* , 9 F.3d 823, 832 (10th Cir. 1993) ); *see also Compulife Software Inc. v. Newman* , 959 F.3d 1288, 1301 (11th Cir. 2020) ("Copying comprises two subparts, 'factual and legal copying,' both of

which Compulife, as the plaintiff, has the burden to prove.") (citing *BUC Int'l Corp. v. Int'l Yacht Council Ltd.* , 489 F.3d 1129, 1148 n.40 (11th Cir. 2007) ).")

Either piece in question here is not simply a recreation or realistic fruit; nor is it duct-tape used for its utilitarian purpose.

Unprotected elements of copyright works do not include the copyrightable expressions.

See: The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.
*Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002)

If what Defense Counsel claims were true, no books would be eligible for copyright protection as words must be stricken from consideration because they may be relegated to their out-of-context examination--apart from the expression they create--under extrinsic analysis.

See: *Lamps Plus v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1146 (9th Cir. 2003) ("""When a work displays a significant element of compilation, that element is [protectable] even though the individual components of the work may not be, for originality may be found in taking the commonplace and making it into a new combination or arrangement." *United States v. Hamilton,* 583 F.2d 448, 451 (9th Cir. 1978) (citations omitted).")

No music could exist because individual notes cannot be copyrighted.  Mosaic titles could not be used to create sculpture because they are preexisting elements not individually eligible for protection (See: Copyright 905 Copyrightable Authorship in Visual Art Works).

My sculpture is not a single object or word out of context.

See: *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 880 (11th Cir. 2007) ("Outside of that limited "birthday phrase," there are virtually no similarities between the

contested works. Indeed, Lil' Joe Wein does not allege that any aspect of "In Da Club" infringes upon "Its Your Birthday" other than the initial "birthday" section.")

My work is a selection, coordination and arrangement of material that has accomplished copyright protection. And it is this expression that has been infringed. Consider Dali's "Lobster Telephone" ("Salvador Dalí, *Lobster Telephone*, 1938. © 2021 Salvador Dalí, Fundació Gala-Salvador Dalí, Artists Rights Society"). It is a realistic recreation of a lobster and actual phone; Dickens' "A Tale of Two Cities" is just individual words undeserving of copyright protection; and Michelangelo's David is just a naked dude.

The Defendant's work is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.'
The "morphing" aspect of a rotting banana is mitigated by the fruit being replaced at consistent intervals in order to maintain the initial visual. This replacement equates to a simple restoration of the expression, not lack of human authorship (See: 17 U.S. Code § 101).

305 The Fixation Requirement

To be copyrightable, a work of authorship must be "fixed in any tangible medium of expression, now known or later developed, from which [it] can be perceived, reproduced, or otherwise communicated, either directly or indirectly with the aid of a machine or device." 17 U.S.C. § 102(a). Specifically, the work must be fixed in a copy or phonorecord "by or under the authority of the author" and the work must be "sufficiently permanent or stable to permit it to be perceived, reproduced,

or otherwise communicated for a period of more than transitory duration." 17

U.S.C. § 101 (definition of "fixed").

The authorship was human for which any forces of nature play no significant impact as to the visual identity.

See: *Kelley v. Chicago Park Dist*, 635 F.3d 290, 304 (7th Cir. 2011) ("Finally, "authorship is an entirely human endeavor." *Id.* § 3:19 (2010). Authors of copyrightable works must be human; works owing their form to the forces of nature cannot be copyrighted. *Id.* § 3:19 n. 1; *see also* U.S. COPYRIGHT OFFICE, COMPENDIUM II: COPYRIGHT OFFICE PRACTICES § 503.03(a) ("[A] work must be the product of human authorship" and not the forces of nature.) (1984); *Id.* § 202.02(b).")

The fixation of the Defendant's piece commenced at the moment the banana and duct-tape were arranged on the wall.

See: *Kelley v. Chicago Park Dist*, 635 F.3d 290, 304-5 (7th Cir. 2011) ("Of course, a human "author" — whether an artist, a professional landscape designer, or an amateur backyard gardener — determines the initial arrangement of the plants in a garden. This is not the kind of authorship required for copyright. To the extent that seeds or seedlings can be considered a "medium of expression," they originate in nature, and natural forces — not the intellect of the gardener — determine their form, growth, and appearance. Moreover, a garden is simply too changeable to satisfy the primary purpose of fixation; its appearance is too inherently variable to supply a baseline for determining questions of copyright creation and infringement. If a garden can qualify as a "work of authorship" sufficiently "embodied in a copy," at what point has fixation occurred? When the garden is newly planted? When its first blossoms appear? When it

is in full bloom? How — and at what point in time — is a court to determine whether infringing copying has occurred?").

Copyright Compendium

306 The Human Authorship Requirement

The U.S. Copyright Office will register an original work of authorship, provided that the work was created by a human being.

The copyright law only protects "the fruits of intellectual labor" that "are founded in the creative powers of the mind." Trade-Mark Cases, 100 U.S. 82, 94 (1879). Because copyright law is limited to "original intellectual conceptions of the author," the Office will refuse to register a claim if it determines that a human being did not create the work. Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 58 (1884). For representative examples of works that do not satisfy this requirement, see Section 313.2 below.

313.2 Works That Lack Human Authorship

As discussed in Section 306, the Copyright Act protects "original works of authorship." 17 U.S.C. § 102(a) (emphasis added). To qualify as a work of "authorship" a work must be created by a human being. See Burrow-Giles Lithographic Co., 111 U.S. at 58. Works that do not satisfy this requirement are not copyrightable.

The U.S. Copyright Office will not register works produced by nature, animals, or plants. Likewise, the Office cannot register a work purportedly created by divine or supernatural beings, although the Office may register a work where the application or the deposit copy(ies) state that the work was inspired by a divine spirit.

Similarly, the Office will not register works produced by a machine or mere mechanical process that operates randomly or automatically without any creative input or intervention from a human author. The crucial question is "whether the 'work' is basically one of human authorship, with the computer [or other device] merely being an assisting instrument, or whether the traditional elements of authorship in the work (literary, artistic, or musical expression or elements of selection, arrangement, etc.) were actually conceived and executed not by man but by a machine." U.S. COPYRIGHT OFFICE, REPORT TO THE LIBRARIAN OF CONGRESS BY THE REGISTER OF COPYRIGHTS 5 (1966).

The Defendants inability to copyright his work is not the issue here.  Whether the infringing piece is eligible for copyright or not is irrelevant as it is copying by other means, which is not legal.

See, "In copyright law the medium is not the message, and a change in medium does not preclude infringement." *Rogers v. Koons*, 751 F.Supp. 474, 477 (S.D.N.Y. 1990).' *Easter Unlimited, Inc. v. Rozier*, 18-CV-06637 (KAM), 28 (E.D.N.Y. Sep. 27, 2021).

The Defendant cannot avoid a legitimate charge of copyright infringement simply because he employed alternate materials to achieve the same visual expression.

See "Moreover, no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated. *See Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.) (L. Hand, J.), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). " *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir. 1992)

There is no viable "transitory duration" argument that can be claimed by the Defendant because he is using a "real banana" to steal my work. "Comedian" is not so brief as to prevent the viewer from identifying it.

See: *Cartoon Network v. CSC Holdings,* 536 F.3d 121, 127 (2d Cir. 2008) (""Copies," as defined in the Copyright Act, "are material objects . . . in which a work is fixed by any method . . . and from which the work can be . . . reproduced." *Id.* § 101. The Act also provides that a work is "`fixed' in a tangible medium of expression when its embodiment . . . is sufficiently permanent or stable to permit it to be . . . reproduced . . . *for a period of more than transitory duration."* *Id.* (emphasis added). We believe that this language plainly imposes two distinct but related requirements: the work must be embodied in a medium, i.e., placed in a medium such that it can be perceived, reproduced, etc., from that medium (the "embodiment requirement"), and it must remain thus embodied "for a period of more than transitory duration" (the "duration requirement"). *See* 2 Melville B. Nimmer David Nimmer, *Nimmer on Copyright* § 8.02[B][3], at 8-32 (2007). Unless both requirements are met, the work is not "fixed" in the buffer, and, as a result, the buffer data is not a "copy" of the original work whose data is buffered. ")

Counsel's own previously included photo proves the infringing work lasts more than a transitory duration.

See: 'Under the Copyright Act, a work is fixed in a tangible medium of expression "when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently

permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.'

## 2. I Cannot Extend My Copyright To Duct Tape

My work is not a useful article.  It is a work of art and entitled to copyright protection

My work is not a useful article.  It is an artistic creation containing only non-functional elements.

My work is not a functional or useful element: 11 *Nimmer on Copyright* § 906.8 ("Functional and Useful Elements").

The works at issue here are not useful articles i.g. they are not cheerleading uniforms (Star Athletica, L. L. C. v. Varsity Brands, Inc., 137 S. Ct. 1002, 1012 (2017)), they are not lamps (Mazer v. Stein - 347 U.S. 201, 74 S. Ct. 460 (1954)), they are not wire wheel covers that ask the court to separate the design from their primary utilitarian function *(Norris Indus.. Inc. v. Int'l Tel. & Tel. Corp.*, (11th Cir. 1983)).  Nor does my copyrighted work incorporate a useful article for its utilitarian purpose in the visual expression.

Either piece at issue here is fine art--they have no practical purpose.  They are not functional works.  The case law referenced applies to functional components of useful articles, and here, either piece in question, have no practical purpose.

And even if it were, consider:

See: "We agree with Oracle that, under Ninth Circuit law, an original work—even one that serves a function—is entitled to copyright protection as long as the author had multiple ways to express the underlying idea." *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1367 (Fed. Cir. 2014)

Nevertheless, the duct-tape in my work does not "affix the banana against the background surface" as incorrectly stated by Defense Counsel. The duct-tape in my work does not affix anything to the background; including itself. And it is irrelevant if the duct-tape in the infringing work does, because copying by other means is still copying. It does not matter the material used--only the fixed tangible expression.

Additionally, it is not established that the duct-tape in the Defendant's works serves a utilitarian purpose. Specifically, online video clearly shows an individual removing the banana from the, otherwise unseen, tacking at the rear. This video can be viewed at: (https://www.youtube.com/watch?v=9ZqdfUHtkk8&ab_channel=GuardianNews) and (https://www.theguardian.com/artanddesign/video/2019/dec/08/performance-artist-eats-banana-installation-video). I also maintain screenshots of same.

As well, it is my understanding that the "certificate" sold along with "Comedian" expressly indicates that the banana is to be impaled on tacking placed in the wall prior to applying the duct-tape. References to such instructions can be found online; including in a PBS video at 2:36/11:50 on: (https://www.pbs.org/video/the-150000-banana-1di9km/).


THE ART ASSIGNMENT

The $150,000 Banana

Season 6 Episode 19 | 11m 51s


INSTRUCTIONS:

1. Buy a banana and duct tape.

2. Embed outward facing tack into wall, 60 inches from the floor.

3. Impale banana on tack, with the stem pointing up and non stem tip pointing right.

4. Affix an 8 inch length of duct tape to banana at 45 degree angle.

5. Stand back and admire handiwork.


If these instructions are not correct I should expect the Defendant to clarify, so we may at least resolve this question.  However, every reference I have seen indicates the Defendant uses rear tacking to affix the banana to the wall.

If in fact the tape is holding the banana why is tacking required?  And if the single piece of tape is not enough to affix the banana, then why only use the one piece?

The use of a real banana and its repeated prominence figures more practically to be an act of intentional dissimilarity rather than original creation.  See: *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 146 (2d Cir. 1956) ("This crude effort to give the appearance of dissimilarity is itself evidence of copying. ")

Copyright cannot extend to a banana or duct-tape in-and-of itself; the copyright extends to the selection, coordination or arrangement of preexisting materials--not to the materials themselves. See, Copyright, Circular 14 "... the registration will only extend to the selection, coordination or arrangement of the works, but not to the preexisting works themselves." Copyright protection cannot extend to a realistic/real banana or duct-tape; but then that is not what this infringement suit is about.  It is about the original expression created using such material and the infringement of same.

As in (Kelley v. Chi. Park Dist. - 635 F.3d 290 (7th Cir. 2011)) the copyright protection would only extend to the portion of the expression created by human authorship.  This selection,

coordination and arrangement of the banana and duct-tape is the subject--not the organic condition of the banana or the ability of nature to degrade it.

Nevertheless, even if the Defendant's replication is not entitled to copyright protection this does not mean it does not infringe on my work.

The Defendant's work is in a fixed in a tangible medium of expression.  It is an infringing expression.  And it is certainly maintained long enough to be identified and therefore not "transitory."

As well, Defendant has not indicated his work is a derivation, for which the Defendant never received permission for such from the copyright holder.

### 3. *I Can Extend My Copyright To The Combination Of A Banana And Duct Tape*

As already established, the combination of a banana and duct-tape in my work is capable of protection under copyright law even if the individual components are not because registration extends to the selection, coordination or arrangement, but not to those preexisting works themselves.

Defense Counsel stated:

'Plaintiff disclaimed this argument when he said that he was not trying to "assert a copyright claim to the idea of a banana duct taped to a wall" and is therefore judicially estopped from making it now.'

I am not asserting a claim to the idea of a banana duct-taped to a wall as the "idea" of a banana duct-taped to a wall is obviously not the same thing as an "expression" of a banana duct-taped to a wall.  Ideas are not eligible for copyright protection.  To repeat, I am not asserting a

claim to an "idea" as "ideas" are not copyright protected.  (SEE: COPYRIGHT LAW: 17 U.S.C.A. § 102(b))

17 U.S. Code § 102 - Subject matter of copyright: In gen...

17 U.S.C.A. § 102(b)  In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

My work contains more than the sufficient amount of creativity required to obtain copyright protection.  And the continued attempt to break it into small constituent components for purposes of destroying the expression is not permitted by "well-established" law.

See: *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("By analogy, the opening of Charles Dickens' *A Tale of Two Cities* is nothing but a string of short phrases. Yet no one could contend that this portion of Dickens' work is unworthy of copyright protection because it can be broken into those shorter constituent components. The question is not whether a short phrase or series of short phrases can be extracted from the work, but whether the manner in which they are used or strung together exhibits creativity.")

See:  *Feist Publications Inc., v. Rural Telephone Service Company*, Petitioner, 499 U.S. 340 ) 10. The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. See *Harper & Row, supra,* at 547-549, 105 S.Ct., at 2223-2224. Original, as the term is used in copyright, means only that the work was independently created

by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. 1 M. Nimmer & D. Nimmer, Copyright §§ 2.01[A], [B] (1990) (hereinafter Nimmer). To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be. *Id.,* § 1.08[C][1]. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying. To illustrate, assume that two poets, each ignorant of the other, compose identical poems. Neither work is novel, yet both are original and, hence, copyrightable. See *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 54 (CA2 1936).

My work is comprised of materials selected, coordinated, arranged and fixed in such a way as to result in a sculptural work.  It is not merely a "compilation of ideas," a "selection and arrangement of hand-tools," or a mere "compilation of rocks," because ideas, handtools and rocks do not constitute copyrightable subject matter under Section 102(a) of the Copyright Act.

312.1  Copyrightable Subject Matter:

Examples: The Office may register a work comprised of rocks that are selected, coordinated, arranged, and fixed in such a way as to result in a sculptural work. Likewise, the Office may register a photograph of a rock, a drawing of a hand-tool, or a written expression of an idea. However, the Office cannot register a mere "compilation of ideas," a mere "selection and arrangement of hand-tools," or a mere "compilation of rocks."

because ideas, handtools, and rocks do not constitute copyrightable subject matter under Section 102(a) of the Copyright Act.'

The copyright protected portions of my work are expressions, they are not a picture of a bare "baluster image itself" (See: *Seven Oaks Millwork, Inc. v. Royal Foam US, LLC*, *supra*, 483 F. Supp. 3d 1192).

I did not receive copyright protection for a banana.

I did not receive copyright protection for duct-tape.

I did however receive, and maintain, copyright protection for the expression I created using such materials.

See: *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement."). See also Metcalf, 294 F.3d at 1074 ("The particular sequence in which an author strings a significant number of unprotectable elements can itself be a protectable element. Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection.").")

See: "the requisite level of creativity [for copyrightability] is extremely low; even a slight amount will suffice," *Feist Publications, Inc.* v. *Rural Telephone Service Co.*, 499 U. S. 340, 345 (1991); see *Atari Games Corp.* v. *Oman*, 979 F. 2d 242 (CADC 1992).

The combination of unprotectable elements in my work are numerous enough and the selection and arrangement original enough that their combination secures copyright protection. Point of fact, my copyright protection extends to my work "Banana and Orange" and not only the banana/duct-tape portion of my work. My piece Banana and Orange contains a multitude of creative choices that constitute the protection extended. The Defendant cannot then simply

excerpt a meaningful portion and claim he did not steal enough to constitute infringement. As well, that which may be necessary to accomplish copyright protection, is not necessarily the same standard required to meet the burden of copyright infringement. The Defendant cannot simply get away with pirating my work by pointing to how much he didn't steal.

See: "Moreover, no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated. *See Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.) (L. Hand, J.), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). " *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir. 1992).

My work is a protected expression containing a banana and duct-tape. This expression was excerpted from my work and illegally used by the Defendant who claims it as his own original creation.

See: *Cory Van Rijn, Inc. v. California Raisin Advisory* Bd., 697 F. Supp. 1136, 1140 (E.D. Cal. 1987) ("The complexity and artistry of the expression of an idea will separate it from even the most banal idea. Michaelangelo's David is, as an idea, no more than a statute [sic] of a nude male. But no one would question the proposition that if a copyrighted work it would deserve protection even against the poorest of imitations. ")

See: *SID MARTY KROFFT TELE. v. McDONALD'S CORP*, 562 F.2d 1157, 1171 (9th Cir. 1977) ("The district court in *Disney* recognized that the expression inherent in plaintiff's works differs from the mere idea of those works. The "idea" of Mickey Mouse is, after all, no more than a mouse. Yet the particular expression of that mouse has phenomenal commercial value and is recognized worldwide. Defendants there could have chosen any number of ways to express their idea of a mouse, but chose to copy Disney's. So too the defendants in this case had

many ways to express the idea of a fantasyland with characters, but chose to copy the expression of plaintiffs'. The first amendment will not protect such imitation. ")

## B. I Can Plead Substantial Similarity Regarding Protectable Elements of My Work.

The striking similarity is not a "bare conclusion" simply based on the fact that "both works include a banana" as Defense Counsel baselessly claims. The striking similarity is in the direct replication of the expression. An expression is not individual components out-of-context. I understand such an approach may attempt to absolve infringement; however it is not the law. The striking similarity here is in the expression.

There is at least, striking similarity, as to the protectable expression of my work and the infringement by the Defendant's work. This is not because either piece contains a banana and duct-tape it is because the banana and duct-tape in either pieced is selected, coordinated and arranged in a virtually identical manner. The expressions between the two works possess striking similarity.

My original contributions as the author have been misappropriated by the Defendant.

The similarity between the two works "may extend only to those components of a work that are original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Which is the case here, "not every element is protectible *per se.*" *Lil' Joe Wein Music v. Jackson,* 245 F. App'x 873, 877 (11th Cir. 2007) (citing *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir.1992)).

The similarity here is not only between the noncopyrightable elements, it is between my copyright-protected expression and the Defendant's copying of same.

See: "similarity concerns only noncopyrightable elements of a plaintiff's work..." *Lassin v. Island Def Jam Music*, No. 04-22320-CIV, 2005 WL 5632056, at *4 (S.D. Fla. Aug. 8, 2005) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986)).

So, let us extract the unprotectable elements--we are still left with my banana duct-tape expression as the registration extends to the "selection, coordination or arrangement" of those preexisting materials--not the preexisting works themselves.  Defense Counsel continues to attempt to remove my expression by removal of the pieces used to create it, this assumes a copyright claim for fruit or duct-tape, which exhibits an ignorance of stated copyright law.

My expression is what is copyright protected.

See: "[W]here we compare [works] that contain both protectible and unprotectible elements, our inspection must be 'more discerning'; we must attempt to extract the unprotectible elements from our consideration and ask whether the *protectible elements, standing alone, are substantially similar.*" *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir.1995) (emphasis in original, citations omitted).

The expression cannot be extracted--only the unprotectable elements.  The protectible expression in my work is virtually identical to that of the Defendant's infringing work.

See: In a copyright action, however, the similarity between two works must concern the expression of ideas, not the ideas themselves. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90-91 (2d Cir. 1976); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930). *See* 17 U.S.C. § 102(b).

*See: Feist*, 499 U.S. at 348.  "the fundamental axiom of copyright law that no one may copyright facts or ideas. Pp. 351-361." Feist Publications, Inc. v. Rural Tel. Service Co., 499 U.S. 340, 341 (1991)

And be advised finding a similarity in ideas does not equate to copyrighting an idea.

Under the extrinsic test, a court; will inquire into whether, as an objective matter, the works are substantially similar in protected expression.  The key word being "expression."

See: *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1257 (11th Cir. 1999) ("Under the extrinsic test, a court; will inquire into whether, as an objective matter, the works are substantially similar in protected expression. *Beal*, 20 F.3d at 461-64. ")

Specifically, if the two works are analyzed in a technical dissection there are no-less than seven (7) similarities:

These similarities are arrived at outside of merger.  There are many ways to tape a banana to a wall.

See: *BUC International Corp. v. International Yacht Council Ltd.*, 489 F.3d 1129, 1143 (11th Cir. 2007) ("The merger doctrine operates as an exception to the normal idea-expression dichotomy. The doctrine holds that, when there are so few ways of expressing an idea, not even the expression is protected by copyright. To illustrate this point, imagine the symbol often used on public signs displaying a circle with a diagonal line crossed through it. When, for example, an image of a cigarette is centered in the middle of the circle with the line through it, this visual sign expresses the idea that smoking is not allowed. This same symbol is used in a wide variety of contexts to express that something is prohibited, e.g., no swimming, no food or drink, no cell phone. Since there are effectively only a few ways of visually presenting the idea that an activity is not permitted, copyright law would not protect the expression in this case, i.e., the circle with the line through it.")

Nor is the referenced expression wall sculpture scènes à faire.

The Defendant's piece is virtually identical to mine and this is not coincidence nor independent creation.

See: *MATTEL, INC. v. MGA ENTERTAINMENT, INC.*, CASE NO. CV 04-9049 DOC (RNBx), 15 n.7 (C.D. Cal. Dec. 27, 2010) ("At the extrinsic stage, the court determines the standard for infringement that will be "applied at the `intrinsic' stage." Ninth Circuit Op. at 10541. "If there's a wide range of expression . . . then copyright protection is `broad' and a work will infringe if it's `substantially similar' to the copyrighted work. If there's only a narrow range of expression . . . then copyright protection is `thin' and a work must be `virtually identical' to infringe." *Id.*")

The average lay observer can easily see the two woks, when compared in correct proportions to be, at least, strikingly similar.

As well, the total concept and feel test can also be applied wherein the "total concept and overall feel" of the expressions are indeed the same.

My work satisfies the extrinsic test and proceeding to the intrinsic test the average lay observer would find the two works strikingly similar.

"Banana and Orange" as a creative work is entitled to broad protection. Even as a creative enterprise the genre of wall sculpture is comparatively wide-open. For example creative works such as music may be entitled to broad protection to the extent music is creative; however in context of a pop song limits begin to appear such an average length of 3.5 minutes, verse-chorus-bridge structure, and western music contains only 12 notes.

See: *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 (11th Cir. 2002) ("While McGee/Assigns assert that the two simple melodies are not substantially similar, much less strikingly similar, even a casual comparison of the two compositions compels the conclusion that

the two compositions are practically identical. Given the limited number of musical notes (as opposed to words in a language), the combination of those notes and their phrasing, it is not surprising that a simple composition of a short length might well be susceptible to original creation by more than one composer.")

So, in some cases the issue may approach merger.  However in this case merger does not apply--the choices of wall sculpture are nearly endless: wherein the only limitations may be a wall.  Consequently, the likelihood that two such sculptures would end up with the exact same combination of incongruous elements combined in the exact same matter is not coincidence.

See: If there are many ways to express an idea, the court wrote, then the various expressions should get broad protection (https://guides.lib.umich.edu/substantial-similarity/mattel#:~:text=If%20there%20are%20many%20ways,Quoting%20Satava%20v.).

See: *Mattel, Inc. v. Mga Entertainment, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010) ("Given that others may freely copy a work's ideas (and other unprotectable elements), we start by determining the breadth of the possible expression of those ideas. If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. *See id.* at 1439, 1446-47. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is "thin" and a work must be "virtually identical" to infringe. *See id.; Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (glass-in-glass jellyfish sculpture only entitled to thin protection against virtually identical copying due to the narrow range of expression).")

See: *Satava v. Lowry*, 323 F.3d 805, 812 n.5 (9th Cir. 2003) ("In light of our holding that Satava cannot prevent other artists from using the standard and stereotyped elements in his

sculptures, or the combination of those elements, we find it unnecessary to consider the application of the merger doctrine.")

See: "The merger doctrine is typically applied only to factual information or scientific theories, not to imaginative works such as plays or novels where the author has a much broader choice of expression." Fishman, Stephen (September 7, 2011). The Copyright Handbook: What Every Writer Needs to Know. Nolo. p. 288. ISBN 978-1-4133-1617-9. Retrieved June 19, 2012.

After disregarding the non-protectable elements of my work, the banana and duct-tape expression remain.  It is an expression and the registration in my work extends to the selection, coordination or arrangement of the works--not the preexsiting works themselves.  The original expression cannot be separated and removed regardless of the materials used because the copyright protection extends to the expression, not the materials used.

See: *Williams v. Crichton*, 860 F. Supp. 158, 165 (S.D.N.Y. 1994) (""The similarity to be assessed must concern the expression of ideas, not the ideas themselves," *id.* (citing *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976)), and *Nichols v. Universal Picture Corp.,* 45 F.2d 119, 121 (2d. Cir.) (L. Hand, J.), *cert. denied*, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931), "a distinction easier to assert than to apply," *Warner Bros. II,* 720 F.2d at 239, and necessarily an *ad hoc* enterprise. *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 912 (2d Cir. 1980) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir. 1960)).")

In description of my work, Defense Counsel has proven my point and contradicts themselves by illustrating that my copyright protected work contains more than simply a banana and duct-tape out of context.

Defense Counsel stated: "By sharp contrast, the sole elements in Defendant's work are a real banana and duct tape. The banana is oriented vertically, and the duct tape runs at approximately a 45-degree angle. Thus, there is no similarity in protectible elements."

This comparison does more to illustrate intentional dissimilarity than to separate the Defendant's work as independent creation.

See: *Peter Pan Fabrics, Inc. v. Candy Frocks, Inc.*, 187 F. Supp. 334, 335 (S.D.N.Y. 1960) ("However, to this court, the dissimilarities appear quite obviously to be the result of a studied effort to make minor distinctions, as evidenced by the use of virtually identical color schemes giving their overall appearance striking similarity.")

As well, it appears that Defense Counsel contradicts their earlier statement, wherein they now claim that the Defendant's selection, coordination and of the banana and duct-tape is a protectable expression.

Nevertheless, the Defendant's work uses the exact same visual elements placed at the exact same angles, that is specifically, the banana and duct-tape have four congruent angles, when there were a multitude of alternate choices.

No copyright is sought for the banana--it is a preexisting material. The duct-tape does not affix anything to the wall--Defense Counsel is misrepresenting the work.

"Banana and Orange" is an artistic creation. In the event the "bodily appropriation" standard should be applied to the expression--the Defendant's work still constitutes infringement.

See: *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989) ("Even if an organizer is copyrightable as a compilation, however, it warrants only extremely limited copyright protection. A *factual* compilation receives only limited copyright protection. *See Worth v. Selchow Righter Co.*, 827 F.2d 569, 573 (9th Cir. 1987); *Cooling*

*Systems Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 492 (9th Cir. 1985). Similarly, compilations that consist largely of uncopyrightable elements receive only limited protection. As with factual compilations, copyright infringement of compilations consisting largely of uncopyrightable elements should not be found in the absence of "bodily appropriation of expression." 827 F.2d at 573. Such a standard would be in keeping with cases relied on by the district court involving similar items. *Baldwin Cooke, Edwin K. Williams Co.,* and *Cash Dividend Check Corp.,* each involved "bodily appropriation" — copying or unauthorized use of substantially the entire item. In *Baldwin Cooke,* the defendant included exactly the same forms as found in plaintiff's planner, and advertised its planner as meeting demands for a product such as plaintiff's planner. Both planners were 140 pages long, and the layout, organization, artwork and lists were identical. 383 F. Supp. at 656. In *Edwin K. Williams Co.,* the defendant was a corporation related to plaintiff which used plaintiff's entire work in an unauthorized manner. 542 F.2d at 1055-59.")

I seek to copyright no aspects of a bananas physiology.  My expression is for the selection, coordination and arrangement of the materials used--not the materials themselves.

See: *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) ("he may not prevent others from copying elements of expression that nature displays for all observers, ").

See: *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003) ("Nature gives us ideas of animals in their natural surroundings: an eagle with talons extended to snatch a mouse; a grizzly bear clutching a salmon between its teeth; a butterfly emerging from its cocoon; a wolf howling at the full moon; a jellyfish swimming through tropical waters. These ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them. An artist may, however, protect the original expression he or she

contributes to these ideas. An artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal. An artist may vary the background, lighting, or perspective. Such variations, if original, may earn copyright protection. ")

The Defendant may copy "elements of expression that nature displays for all observers" as previously stated the Defendant may tape all the bananas he wants to a wall, he is just not allowed to copy my expression and claim it as his original creation.

And nothing in the representation of natural objects in this necessarily flow from nature as nature don't put duct-tape on bananas.

Neither the banana nor duct-tape can be filtered out of my expression--because they are used to create the expression.  It is the expression that is copyright-protected.  Not the banana nor the duct-tape (See: Copyright Circular 14).  These materials/preexisting works are not extended protection under my registration.  The expression made with them is.  My copyright is not for individual items, it is for the expression created with them.  Pretending that everything used to create an artistic expression can be relegated to its individual parts apart from its resulting expression is contrary to copyright law.

See: *Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1363 (Fed. Cir. 2014) ("By analogy, the opening of Charles Dickens' *A Tale of Two Cities* is nothing but a string of short phrases. Yet no one could contend that this portion of Dickens' work is unworthy of copyright protection because it can be broken into those shorter constituent components. The question is not whether a short phrase or series of short phrases can be extracted from the work, but whether the manner in which they are used or strung together exhibits creativity.")

Such preexisting items may be removed only if they are not part of a selection, coordination or arrangement that creates and original expression.

See: *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 879 (11th Cir. 2007) ("Accordingly, because the "birthday" phrase was a common, unoriginal, and noncopyrightable element of the song, it is not entitled to copyright protection.")

Continuing to assert that my art is only an unoriginal collection of non-copyrightable elements free of expression exhibits a clear ignorance of copyright law. Geometric shapes are not copyrightable but they can be used to create an original copyrightable expression. See:

906.1 Common Geometric Shapes

Generally, the U.S. Copyright Office will not register a work that merely consists of common geometric shapes unless the author's use of those shapes results in a work that, as a whole, is sufficiently creative.

Rocks can be used to create a copyright-protected sculpture. See:

312.1 Copyrightable Subject Matter:

Examples: The Office may register a work comprised of rocks that are selected, coordinated, arranged, and fixed in such a way as to result in a sculptural work. Likewise, the Office may register a photograph of a rock, a drawing of a hand-tool, or a written expression of an idea. However, the Office cannot register a mere "compilation of ideas." a mere "selection and arrangement of hand-tools."

or a mere "compilation of rocks," because ideas, handtools, and rocks do not

constitute copyrightable subject matter under Section 102(a) of the Copyright Act.


Shapes and rocks cannot then be removed so that analysis might serve to destroy the

expression under an extrinsic test in order to facilitate a plagiarist's act of infringement.

The manner in which Defense Counsel articulates variations in the Defendant's piece

serve only to indicate an intentional act of dissimilarity rather than independent creation.

See: *Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984) ("some dissimilarities may be

particularly suspicious. *See, e.g., Meier Co. v. Albany Novelty Manufacturing Co.,* 236 F.2d 144,

146 (2d Cir. 1956) (inversion and substitution of certain words in a catalogue in a "crude effort

to give the appearance of dissimilarity" are themselves evidence of copying; *Blume v. Spear,* 30

F. 629, 631 (S.D.N.Y. 1887) (variations in infringing song were placed so as to indicate

deliberate copying; Sherman, *Musical Copyright Infringement,* at 84-88. ")

Defense Counsel cannot point to how much the Defendant did not steal in order to defend

his infringement.

See: "Moreover, no copier may defend the act of plagiarism by pointing out how much of

the copy he has not pirated. *See Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d

Cir.) (L. Hand, J.), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). " *Rogers v.

Koons*, 960 F.2d 301, 308 (2d Cir. 1992)

Comparison of the two expressions side-by-side prove they are not only substantially

similar, and strikingly similar, but they are virtually identical.

In attempt to dismiss substantial similarity, Defense Counsel references the absence of the "orange" in Defendant's sculpture, stating "the orange in Plaintiff's work not even appearing in Cattelan's work." This implied defense is rebutted by caselaw.

As well, the analysis of any work are to be the similarities, not the differences (Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127 (2d Cir. 2003)).

See: "Substantial similarity" is to be determined by the "ordinary observer" test. Judge Learned Hand in defining this test stated there is substantial similarity where "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,274 F.2d 487, 489 (2d Cir. 1960). More recently this court formulated the test as "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Ideal Toy Corp. v. Fab-Lu Ltd.,360 F.2d 1021, 1022 (2d Cir. 1966). And, of course, by definition "[t]he copying need not be of every detail so long as the copy is substantially similar to the copyrighted work." Comptone Co. v. Rayex Corp.,251 F.2d 487, 488 (2d Cir. 1958); United Merchants Manufacturers, Inc. v. K. Gimbel Accessories, Inc.,294 F.Supp. 151, 154 (S.D.N.Y. 1968). Novelty Textile Mills v. Joan Fabrics Corp., 558 F.2d 1090, 1093 (2d Cir. 1977)

My work is not natural objects are they appear in nature. It is not a representation of dolphins crossing underwater (Folkens v. Wayland Worldwide, 882 F.3d 768 (9th Cir. 2018). It is not simply bananas represented in nature hanging at different angles. The infringement is of the expression. And the infringement by the Defendant is virtually identical.

As my work are not elements as they appear in nature the artistic expression is entitled to broad protection. Specifically there are no less than seven (7) significant similarities in a wall sculpture which is outside of merger, scènes à faire.

Comparing these works sided-by-side in accurate proportions reveals striking similarity regarding the protectable expression.

See, e.g., *Cortes v. Universal Music Latino*, 477 F. Supp. 3d 1290, 1297 (S.D. Fla. 2020) ("For the substantial similarity analysis, courts must compare the competing works side-by-side ... Having done so here, the Court finds that Defendants are entitled to summary judgment because the works are only similar as to unprotectable elements and share no commonality at the level of protectable expression.").

My work is not simply a cemetery stature free-of-expression.  In fact my work contains a specific angles replicated by the Defendant, who co-opted the selection, coordination and arrangement of my expression.


## C. I Can Adequately Plead Access

My proof of origin irrefutably predates the Defendant's copy, unlike, *Cain v. Hallmark Cards, Inc.*  There is no absence of my key evidence.

See: *Cain v. Hallmark Cards, Inc.*, CIVIL ACTION No. 3:15-00351-JWD-EWD, 7 (M.D. La. Jun. 6, 2016) ("Hallmark claims ownership of the only relevant copyright and dismisses the significance of Plaintiff's belated registration of her poem, and Plaintiff cannot prove copying when its version predates her formulation—Plaintiff now suffers from an absence of key evidence as to essential elements of her asserted cause of action. In such circumstances, Rule 56 militates in favor of the MSJ's granting.").

My statement regarding access is not a "conclusory statement devoid of any allegation of facts".  The supporting evidence has been offered and is irrefutable:

    1.    My work was verifiably created a significant period of time prior to Defendant's.

2.      Access to my work has been established, worldwide, for no-less than ten (10)

years (July 18, 2008).

3.      Substantial/striking similarity is inherent via visual comparison.

My allegations are true on their face--hardly a "conclusory statement".

The Defendant has a reasonable possibility of viewing my work (for over a decade) as did anyone else, worldwide, who had access to the internet and/or an interest in art.  Obviously the Defendant is online as evidenced by his multiple social media accounts and websites.

Additionally, the markets served by the Defendant's stated citizenship (Italy) and gallery's headquarters (France) viewed the work, in particular, there was an inordinate amount of views originating in France prior to the Defendant's initial version appearing.

Regarding access-versus-similarity and the increased burden proof on the plaintiff in the event reasonable access cannot be shown, I do not believe that the Eleventh Circuit uses this, "Inverse Ratio Principle," nevertheless, even if this were the case, my burden, at most, would be to show striking similarity.  To that point, the similarity between the two segments in question are beyond "striking" (to the point of being "virtually identical") regarding protected expression and the infringing work.

See: Since there is seldom direct evidence of copying, this element is usually established circumstantially, by showing that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works. If the plaintiff cannot show access, he may still prevail by demonstrating that the works are "strikingly similar." *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 8 (M.D. Fla. Apr. 16, 2009)

See: *Original Appalachian Artworks, v. Toy Loft*, 684 F.2d 821, 829 (11th Cir. 1982) ("These arguments are misdirected. Because it is rarely possible for an author to prove

copying directly, courts have developed a two-part test that infringement plaintiffs can use to prove copying indirectly. This test requires the plaintiff to show that (1) the defendant had access to the work and (2) that the defendant's work is substantially similar to the plaintiff's. *Miller v. Universal City Studios,* 650 F.2d 1365, 1375 (5th Cir. 1981); *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 113 (5th Cir. 1978); *Accord Kamar International v. Russ Berrie Co.,* 657 F.2d 1059, 1062 (9th Cir. 1981); *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 911 (2d Cir. 1980). "Substantial similarity" exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Durham Industries, supra* (quoting *Novelty Textile Mills, Inc. v. John Fabrics Corp.,* 558 F.2d 1090, 1092-93 (2d Cir. 1977). *Accord Kamar International, supra,* 657 F.2d at 1063; *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 907 (3d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). *Miller, supra,* 650 F.2d at 1375; *Novelty Textile Mills, supra,* 558 F.2d at 1092 n. 2."

Nevertheless, I can still "plead to the higher standard of "striking similarity" instead of "substantial similarity"

See: *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 n.6 (11th Cir.2002) ("Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar.").

My copyright protection is broad considering it is a creative work with many options outside of merger and I can plead more than substantial similarity and striking similarity to the point of virtual identity.

I maintain substantial proof of access.

The Defendant had a reasonable opportunity to view my work for a considerable period of time prior to the appearance of his version appearing.

1. YOUTUBE - July 18, 2008

The work has been constantly on YouTube (and accessed worldwide) since July 18, 2008.

2. FACEBOOK - July 29, 2015

The work has been constantly on Facebook (and accessed worldwide) since July 29, 2015.

3. ARTIST WEBSITE - July 2, 2016

My work has been constantly on the artist website (and accessed worldwide) since July 02, 2016.

Access worldwide cannot be disputed.  As well, analytics/statistics from these sites prove the work was accessed in no-less-than twenty-five (25) countries.  As widely disseminated is defined as a "great variety" it cannot be disputed as to the work being accessible and "widely disseminated."

I can establish access in that the Defendant had a "reasonable" opportunity to view or copy my work during this period.  1) Views worldwide; including an inordinate amount of incongruous views originating from the Gallery's main office (France) as well as access from the Defendant's home country (Italy).  2) Viewed worldwide on multiple platforms constituting wide dissemination.

In addition to the wide availability, the specific distinction of keywords related to art would direct such related purveyors. Considering access can be arrived at significantly via limited release; especially if targeted.

See: "At the end of 1987 or in 1988 Koons purchased at least two Museum Graphics notecards displaying Rogers' "Puppies" photograph." *Rogers v. Koons*, 751 F. Supp. 474, 476 (S.D.N.Y. 1990)

This is evidence that even limited distribution can expose art to "art plagiarists" via targeted search criteria such as "art," "artists," "sculpture" etc.

And the Defendant need not be "connected" to me on social media, past or present, to have worldwide access to my work. The Defendant's claim of not being connected to me on social media is entirely irrelevant.

I maintain proof of substantial/striking similarity:

See: *Three Boys Music*, 212 F.3d at 485 ("in the absence of any proof of access, a copyright plaintiff can still make out a case of infringement by showing that the [works] were 'strikingly similar' ") (internal citation omitted). "Proof of striking similarity is an alternative means of proving 'copying' where proof of access is absent." Baxter v. MCA, Inc., 812 F.2d 421, 424 (9th Cir.1987).

See: Although Jenkins did not demonstrate access he still, nonetheless, can establish copying by showing that his sculptures and the accused fish are "strikingly similar." Striking similarity exists where the proof of similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 9 (M.D. Fla. Apr. 16, 2009)

Under the "Extrinsic Analysis" there can be identified no-less-than seven (7) distinct points of similarity.

Under the "Intrinsic Analysis" it is obvious that ordinary reasonable person would conclude the two expressions are more than strikingly similar--they are virtually identical.

Even in the standard of "Total Feel and Concept" the two works are obviously the same.

See: "In summary, Jenkins has proved the two elements — ownership of a valid copyright and copying — necessary to establish his right to recover from Jury for copyright infringement." *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 11 (M.D. Fla. Apr. 16, 2009)

See: Although Jenkins did not demonstrate access he still, nonetheless, can establish copying by showing that his sculptures and the accused fish are "strikingly similar." Striking similarity exists where the proof of similarity in appearance is "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 9 (M.D. Fla. Apr. 16, 2009)

This burden has been met; particularly considering that merger does not apply to the genre of wall sculpture.

Requesting profits, expenses and injunction.

"The Court has found that Jury infringed Plaintiff's copyrights. Moreover, there is substantial likelihood of future infringement." ... "For these reasons, the Court find that a permanent injunction is appropriate in this case." *Jenkins v. Jury*, Case No. 5:07-cv-133-Oc-GRJ, 12 (M.D. Fla. Apr. 16, 2009).

## CONCLUSION

For these reasons, the Court should deny Defendant's Motion To Dismiss.


Respectfully submitted.



By:_____

Joe Morford, Pro Se
1125 E. Broadway #216
Glendale, CA 91205
(818) 422-9263
joemorford@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, I mailed (via overnight delivery) the foregoing to the

clerk of the court.

By: _____

Joe Morford, Pro Se
1125 E. Broadway #216
Glendale, CA 91205
(818) 422-9263
joemorford@gmail.com

Align top of FedEx Express® shipping label here.

ORIGIN ID:JGXA  (818) 422-9263
JOE MORFORD

1125 E BROADWAY APT 216

GLENDALE, CA 91205
UNITED STATES US

SHIP DATE: 19MAY22
ACTWGT: 0.80 LB
CAD: 6996041/SSFD2300

BILL CREDIT CARD

TO  **US DIST. CT., S. DIST. OF FL.**
**CLERKS OFFICE**
**400 N MIAMI AVE., 8TH FLOOR.,**

**MIAMI FL 33128**

(305) 523-5100          REF:
INV:
PO:                              DEPT:



**FedEx**
Express

**E**

REL#
3765346

TRK#
0201  **2733 4290 5860**

**FRI – 20 MAY 10:30A**
**PRIORITY OVERNIGHT**

**XG MPBA**          **33128**
FL-US   **MIA**

