United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Joe Morford, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-20039-Civ-Scola |
| | ) | |
| Maurizio Cattelan, Defendant. | ) | |

**<u>Order</u>**

This matter is before the Court on the Defendant's motion to dismiss. (ECF No. 49.) The pro se Plaintiff filed a response[1] to the motion (ECF No. 50), and the Defendant filed a reply memorandum in support (ECF No. 53). After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **denies** the motion. (**ECF No. 49**.)

**1. Background**

Can a banana taped to a wall be art? Must art be beautiful? Creative? Emotive? A banana taped to a wall may not embody human creativity, but it may evoke *some* feelings, good or bad. In any event, a banana taped to a wall recalls Marshall McLuhan's definition of art—"anything you can get away with." To that end, bananas have come to represent a type of irreverence in pop culture—from vaudeville to Andy Warhol, artists have wielded bananas to expand the boundaries of art.

Add to that list Joe Morford, an artist from Glendale, California. In 2000, Morford registered his work "Banana & Orange" with the Copyright Office. (ECF No. 1 at 8.) While Morford does not allege how widely this work was disseminated, it appears that Banana & Orange was accessible on Morford's website, as well as through the social media platforms Facebook and YouTube. (ECF No. 50 at 26.)

In 2019, Maurizio Cattelan also tried his hand at banana-centric art—to much greater recognition. That year, Cattelan introduced his work "Comedian" at the art fair Art Basel in Miami Beach. (ECF No. 1 at 6.) The piece was a hit, garnering international press and heralding wide-ranging commentary.

---

[1] Morford filed a 69-page response, well exceeding the 20-page limit imposed by the Local Rules. Morford, as a pro se litigant, must comply with all Federal Rules of Civil Procedure and Local Rules for the Southern District of Florida. The Federal of Civil Procedure and Local Rules of the Southern District of Florida can be accessed from the Clerk of the Court's website, available at: http://www.flsd.uscourts.gov. Failure to comply with the federal and local rules in the future may result in sanctions.

Comedian was a financial success too, as Cattelan sold three copies of the work, as well as two proofs, for over $390,000. (*Id.* at 4.)

Morford now alleges that Cattelan plagiarized and copied Banana & Orange. The two works are provided below, with Morford's Banana & Orange on the left and Cattelan's Comedian on the right:




Thankfully for the Court, the question of whether a banana taped to a wall can be art is more a metaphysical question than a legal one. But the legal question before the Court may be just as difficult—did Morford sufficiently allege that Cattelan's banana infringes his banana?

**2. Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

In determining whether these standards are met, courts must "liberally construe pro se pleadings," and the Court will hold Morford to "'less stringent standards' than [those applied] to formal pleadings that lawyers draft." *See Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### 3. Analysis

To ultimately succeed on his claim of copyright infringement, Morford must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)).

Copying requires both "factual and legal copying"—in other words, a plaintiff must show both that (1) the defendant "actually used" the copyrighted work and that (2) the copied elements are "protected expression" such that the appropriation is legally actionable. *See Newman*, 959 F.3d at 1301 (citing *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1148 n.40 (11th Cir. 2007)

and *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996)). First, a plaintiff must show factual copying by either (1) direct evidence or (2) indirect evidence "demonstrating that the defendant had access to the copyrighted work and that there are probative similarities between the allegedly infringing work and the copyrighted work." *See Newman*, 959 F.3d at 1301 (quoting *MiTek*, 89 F.3d at 1554). Meanwhile, legal copying looks to whether the similarities between the two works extend to the work's original, protectable elements. *See Newman*, 959 F.3d at 1306; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 359 (1991).

      When are two works sufficiently similar? To establish the requisite similarity, courts apply different standards depending on the nature of the allegations. "In most cases," courts look to whether "substantial similarity" exists between the allegedly infringing work and the protectable elements of the copyrighted work. *See Newman*, 959 F.3d at 1302; *see also BUC Int'l*, 489 F.3d at 1147–48 (citing *Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1516 n.19 (11th Cir. 1997)). However, where a plaintiff cannot establish that the alleged infringer had access to the copyrighted work, the plaintiff must meet a higher standard and show that the works are "strikingly similar." *See Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 n.6 (11th Cir. 2002) (citing *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999)); *see also Olem Shoe Corp. v. Wash. Shoe Corp.*, 591 F. App'x 873, 885 (11th Cir. 2015) ("Striking similarity exists where the proof of similarity in appearance is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.") (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007)).[2]

      So how to determine whether works share a substantial similarity? Courts have developed several names for the elusive test to be applied. *See*

---

[2] The Defendant argues that in cases involving a "thin copyright," a third standard applies— "virtual identity." (ECF No. 49 at 12.) However, the Eleventh Circuit has held that the "virtual identity" standard is limited to "claims of compilation copyright infringement of nonliteral elements of a computer program." *See BUC Int'l*, 489 F.3d at 1149 (quoting *MiTek*, 89 F.3d at 1558). In all other cases, whether a work has a "thin copyright" does not affect the standard applied; rather, it merely denotes that a work has few protectable elements and necessarily requires that the few protectable elements that exist must share a substantial similarity to the alleged infringing work. *See Feist*, 499 U.S. at 349 (noting that, given the abundant non-protectable elements in a factual compilation, such compilations "inevitably" enjoy a "thin" copyright); *see also Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1330 (11th Cir. 2016) (Rosenbaum, J., concurring) (noting that "thin" copyright "is just another way of saying that the factfinder must consider whether 'substantial similarity' exists at the level of protectable expression—original content—only, and the amount of protectable expression relative to total content in a compilation is less than in a more original type of work").

*Sieger Suarez Arch. P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1350 (S.D. Fla. 2014) (King, J.) (noting that "[t]he term 'substantial similarity' has lived a shadowy life in the courts"). The Eleventh Circuit previously nodded to what was called the "extrinsic" and "intrinsic" test. *See Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 877 (11th Cir. 2007) (explaining that under the extrinsic and intrinsic test, courts first look to the similarities in the protected expressions in a work and then compare these components and determine whether a jury could find that the works are substantially similar) (citing *Herzog*, 193 F.3d at 1257). However, the Eleventh Circuit later opined that this formulation was "something of an anomaly." *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 n.5 (11th Cir. 2008); *see also Off Lease Only, Inc. v. Lakeland Motors, LLC*, 825 F. App'x 722, 727 (11th Cir. 2020). In *Oravec*, the Eleventh Circuit appeared to return to the "lay observer" test, which looks to whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *See id.* at 1224 (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982)). More recently, the Eleventh Circuit in *Newman* invoked neither the extrinsic/intrinsic test nor the lay observer test; instead, it applied the "abstraction-filtration-comparison" test. *See Newman*, 959 F.3d at 1303 (citing *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)).

Ultimately, any disagreement on the appropriate test is "more of a matter of semantics than substance." *See Bateman*, 79 F.3d at 1545. In all cases—no matter the title given to the controlling test—courts must determine "whether a reasonable jury could find the [works at issue] substantially similar at the level of protected expression" *See Oravec*, 527 F.3d at 1224 n.5. Following *Newman*, this Court will apply the "abstraction-filtration-comparison" test. While this test was initially formulated for computer-software copyright cases, it comports with *Feist*'s directive to view a copyrighted work in its component pieces and strip away unprotectable elements, ultimately comparing only the work's protected elements to the alleged infringing work. *See Feist*, 499 U.S. at 348; *see also Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 n.5 (10th Cir. 1996) (noting that there is "no reason" to limit the abstraction-filtration-comparison test to computer software cases) (citing 3 Nimmer on Copyright, § 13.03[E], at 13-96 to 13-97 (providing that the test "should be considered not only for factual compilations and computer programs, but across the gamut of copyright law")).

Under this formulation, the substantial similarity test has three steps: "(1) abstraction, (2) filtration, and (3) comparison." *See Newman*, 959 F.3d at 1303 (discussing *Bateman*, 79 F.3d at 1544). **First**, abstraction: the court

must "break down the allegedly infringed [work] into its constituent structural parts." *See id.*; *see also Herzog*, 193 F.3d at 1257 (noting the need for an "analytic dissection" of the allegedly infringed work). **Second**, the court must "filter" out the unprotectable elements, a notoriously tricky step that depends on the level of abstraction practiced in the first step. *See Newman*, 959 F.3d at 1303–04; *see also Oravec*, 527 F.3d at 1224 (holding that the "substantial similarity analysis must focus on similarity of expression, *i.e.*, material susceptible of copyright protection"). Filtration is built on the "fundamental axiom" of copyright law: ideas are not protectable. *See Oravec*, 527 F.3d at 1224 (citing 17 U.S.C. § 102(b)); *see also Herzog*, 193 F.3d at 1248 ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself.") (quoting *Reyher v. Children's Tel. Workshop*, 533 F.2d 87, 91 (2d Cir. 1976)). Therefore, factfinders must filter out the underlying idea itself, as well as other unprotectable elements, such as "processes, facts, public domain information, merger material, [and] scenes a faire material [standard features of a scene]." *See Bateman*, 79 F.3d at 1545. **Last**, the court compares the "remaining kernels of creative expression" in the alleged infringed work to the alleged infringing work. *See Newman*, 959 F.3d at 1303–04.

To recap: Morford must plausibly allege that Cattelan had access to Banana & Orange and that—after dissecting Banana & Orange and stripping (or filtering) away the non-protected elements of it—there is a substantial similarity between the two works.

Before digging in, the Court notes that questions of substantial similarity are typically best left to the trier of fact. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1213 (11th Cir. 2000) ("Copyright infringement is generally a question of fact for the jury to decide[.]"). Deciding questions of infringement at the motion-to-dismiss stage, let alone at the summary-judgment stage, should be approached cautiously. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) (noting that "[s]ome courts have observed that summary judgment is peculiarly inappropriate in copyright infringement cases due to their inherent subjectivity"); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1127 (9th Cir. 2018) (Owens, J., concurring in part and dissenting in part) (noting that substantial similarity is "an inherently factual question which is often reserved for the jury, and rarely for a court to decide at the motion to dismiss stage"). However, where courts only face a "visual comparison" of the works and where "no discovery or fact-finding is typically necessary," courts will determine whether substantial similarity exists as a matter of law. *See Tanksley v. Daniels*, 902 F.3d 165, 171–72 (3d Cir. 2018) (noting that while "[s]uch dismissals [] were formerly rare," they are "now more common"); *Seven*

*Oaks Millwork, Inc. v. Royal Foam US, LLC*, 483 F. Supp. 3d 1192, 1196 n.3 (M.D. Fla. 2020); *see also Sieger Suarez*, 998 F. Supp. 2d at 1350 (holding that "it is appropriate for this Court to determine whether the works are substantially similar and therefore, whether [p]laintiff can plausibly demonstrate entitlement to relief") (collecting cases); *cf. Home Design*, 825 F.3d at 1326 (holding that judges "can, in certain cases, remove the question of substantial similarity from jury consideration"). Therefore, the Court will proceed, although the Court is mindful that judge-observed similarities and differences between two works are "inherently subjective and unreliable" and that unless such similarities and differences render a plaintiff's case bunk as a matter of law, such questions should go to the trier of fact. *See Leigh*, 212 F.3d at 1215.

### A. Valid Copyright

As an initial matter, Cattelan argues that Morford has no valid copyright in Banana & Orange. First, Cattelan contends that Morford must be estopped from arguing that he has any copyright, as Morford has stated, in various filings, that he "does not assert copyright claim to the idea of a banana duct-taped to a wall." (ECF No. 37 at 21.) Cattelan avers that this amounts to an admission that Morford cannot claim a copyright in his work and that he must be estopped from doing so now. (ECF No. 49 at 9.) Putting aside the propriety of estopping a pro se plaintiff because of inartful legal argument, Morford's statement is largely correct: Morford cannot claim copyright in the *idea* of a banana taped to a wall. However, as discussed below, Morford may be able to claim copyright in the expression of that idea.

Second, Cattelan argues that the coordination and arrangement in Banana & Orange is "not sufficiently original" to warrant protection. (ECF No. 49 at 9.) Copyright protection only extends to arrangements that are unique and original. *See Corwin*, 475 F.3d at 1251 ("[A] work may be protected by copyright law when its otherwise unprotectable elements are arranged in a unique way."). Heralded as the "*sine qua non* of copyright," originality requires consideration of the creativity involved in the arrangement of unprotectable elements, as well as whether the arrangement is "firmly rooted in tradition" or too "commonplace." *See BellSouth*, 999 F.2d at 1440 (discussing *Feist*, 499 U.S. at 348, 363). But judges are not deputized art critics, and the originality bar is appropriately low. *See Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 251 (1903) ("It would be a dangerous undertaking for persons trained only to the law to constitute themselves the final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits."); *see also Original Appalachian*, 684 F.2d at 824 ("No matter how poor artistically the

author's addition, it is enough if it be his own.") (quoting *Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 103 (2d Cir. 1951)). Therefore, the "requisite level of creativity is extremely low; even a slight amount will suffice." *See Feist*, 499 U.S. at 345.

While using silver duct tape to affix a banana to a wall may not espouse the highest degree of creativity, its absurd and farcical nature meets the "minimal degree of creativity" needed to qualify as original. *See Feist*, 499 U.S. at 345; *see also Kevin Harrington Enters., Inc. v. Bear Wolf, Inc.*, No. 98-CV-1039, 1998 WL 35154990, at *6 (S.D. Fla. Oct. 8, 1998) (Ungaro, J.) (noting that originality involves "the author's subjective judgment in giving visual form to his own mental conception") (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884)). While the Court cannot—and need not—give meaning to Banana & Orange, at this stage the Court holds that Morford's choices in giving form to Banana & Orange are sufficiently original.[3]

### B. Copying

Holding that Morford has a valid copyright in Banana & Orange, or at least in some elements of Banana & Orange, the Court continues to the next step: whether Morford sufficiently alleged that Cattelan copied the protected elements of Banana & Orange. But first, the Court must decide which standard (substantial similarity or striking similarity) to apply, which depends on whether Morford alleges that Cattelan had access to Banana & Orange.

#### *1. Access*

In his complaint, Morford generally alleged that Cattelan had access to Banana & Orange. (ECF No. 1 at 4.) In his opposition to Cattelan's motion to dismiss, Morford expands. (ECF No. 50 at 64.) Morford argues that Banana & Orange has been available on YouTube since July 18, 2008, on Facebook since July 29, 2015, and on his personal website since July 2, 2016.[4] (*Id.*) Morford

---

[3] Moreover, Morford registered Banana & Orange with the Copyright Office, which provides additional support in favor of the validity of Morford's copyright. *See Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983).

[4] It is settled that plaintiffs may not amend their pleadings through opposition briefs. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a[n] [opposition] brief[.]"). However, courts—cognizant of their duty to liberally construe pro se plaintiff's pleadings—will consider factual allegations made for the first time in a pro se plaintiff's opposition brief, to the extent that such allegations are not inconsistent with the complaint. *See Hosey-Bey v. Gordy*, No. 2:13-CV-838, 2017 WL 1130883, at *2 n.1 (M.D. Ala. Feb. 22, 2017); *see also Guity v. Uniondale Union Free Sch. Dist.*, CV 15-5693, 2017 WL 9485647, at *1 n.1 (E.D.N.Y. Feb. 23, 2017) (collecting cases).

also points to some undisclosed analytics that purport to show that Banana & Orange has been digitally accessed in twenty-five countries. (*Id.*)

Cattelan cites a multitude of cases for the proposition that access cannot be established by mere Internet publication. (ECF No. 49 at 15.) However, all but one of the cases cited were decided at summary judgment. At the motion-to-dismiss stage, Morford need not establish that Cattelan had access, but only plausibly allege that he had access. And courts in this District have held that plaintiffs must have the opportunity to establish evidence showing the extent of internet presence in support of access. *See Kelly Tracht, LLC v. Dazzle Up, LLC*, No. 17-80434-CIV, 2017 WL 4681329, at *3 (S.D. Fla. Oct. 18, 2017) (Marra, J.) (holding that the plaintiff "should be afforded [an] opportunity to provide evidence about its internet presence"); *cf. Green Bullion Fin. Servs., LLC v. Money4Gold Holdings, Inc.*, 639 F. Supp. 2d 1356, 1361 (S.D. Fla. 2009) (Zloch, J.) (holding that, in a motion for a preliminary injunction, access was sufficiently alleged as "anyone with access to the internet had access to Plaintiff's website"). Therefore, liberally construing Morford's allegations, the Court holds that Morford's allegations that his Banana & Orange were available on multiple websites and accessed in multiple countries is sufficient to plead access at this time.

### *2. Substantial Similarity*

Finding that Morford has sufficiently alleged access, the Court moves on to the substantial similarity analysis. The Court starts at the abstraction step, breaking apart Banana & Orange into its component parts. Morford's Banana & Orange features two green rectangular panels, each seemingly attached to a vertical wall by masking tape. The panels are stacked on top of each other, with a gap between each. Roughly centered on each green panel is a fruit: an orange on the top panel and a banana on the lower panel. The orange is surrounded by masking tape, and a piece of silver duct tape crosses the orange horizontally. The banana is at a slight angle, with the banana stalk on the left side pointing up. The banana appears to be fixed to the panel with a piece of silver duct tape running vertically at a slight angle, left to right.

Next, filtering. As stated above, no one can claim a copyright in ideas, so Morford cannot claim a copyright in the idea of affixing a banana to a vertical plane using duct tape. Nor can Morford claim a copyright in bananas or duct tape. *See Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018) (holding that plaintiffs cannot claim copyrights in "idea[s] first expressed in

---

Therefore, the Court will consider the expanded factual allegations concerning access made in Morford's opposition.

nature," which are "within the common heritage of humankind"); *Norris Indus.*, 696 F.2d at 924 (holding that "functional components of useful articles" cannot claim copyright protection).

While Morford is afforded no protection for the idea of a duct-taped banana or the individual components of his work, Morford may be able to claim some degree of copyright protection in the "selection, coordination, [and] arrangement" of these otherwise unprotectable elements. *See Off Lease*, 825 F. App'x at 726 (discussing copyrighted works "formed by the collection and assembling of preexisting materials . . . that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship") (quoting 17 U.S.C. § 101)). In particular, Morford can claim some copyright protection in the combination of his choices in color, positioning, and angling. *See Off Lease*, 825 F. App'x at 727 (holding that copyright protection extended to "the outline, the [component's] shape, and the elaborate color scheme"); *see also Corwin v. Walt Disney Co.*, No. 6:02-cv-1377, 2004 WL 5486639, at *16 (M.D. Fla. Nov. 12, 2004) (holding that an "artist's selection as to how the [model pieces] were arranged in the painting, the colors associated with the elements, and the overall structure and arrangement of the underlying ideas" are protectable) (citing *Leigh*, 212 F.3d at 1216).

Of course, there are only so many choices an artist can make in colors, positioning, and angling when expressing the idea of a banana taped to a wall. In general, this is called the merger doctrine—where the idea and the expression of that idea merge. *See BUC Int'l*, 489 F.3d at 1142 (holding that the merger doctrine "provides that 'expression is not protected . . . where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself'") (quoting *BellSouth*, 999 F.2d at 1442)). However, Cattelan did not argue that the merger doctrine applies (ECF No. 53 at 14 n.8), so the Court will not consider whether the merger doctrine precludes any finding of infringement here.

Last, the comparison step. The Court finds, at the motion-to-dismiss stage, that Morford sufficiently alleges that there is similarity in the (few) protected elements of Banana & Orange. In both works, a single piece of silver duct tape runs upward from left to right at an angle, affixing a centered yellow banana, angled downward left to right, against a wall. In both works, the banana and the duct tape intersect at roughly the midpoints of each, although the duct tape is less centered on the banana in Morford's work than in Comedian.

Cattelan argues that the presence of additional elements in Banana & Orange—namely, an orange, the green background, and the use of masking tape borders—weigh against a finding of substantial similarity. (ECF No. 49

at 13.) However, when determining copyright infringement, courts look to "the relative portion of the copyrighted work—not the relative portion of the infringing work[.]" *See Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1307 (11th Cir. 2008) (noting that otherwise defendants would be permitted to copy verbatim as long as they did not copy an entire work). In other words, "[t]he extent of copying must be assessed with respect to both the quantitative and the qualitative significance of the amount copied to the copyrighted work as a whole." *Id.* (citing *MiTek*, 89 F.3d at 1560 & n.26); *see also Newman,* 959 F.3d at 1302 ("Quantitatively insubstantial copying may still be actionable if it is qualitatively substantial."). Here, while Banana & Orange contains additional elements that Morford does not allege were copied, Morford's duct-taped banana constitutes half of his work, meaning that it is quantitatively significant to Banana & Orange. Moreover, given its prominent positioning in Banana & Orange, Morford's banana is qualitatively significant as well. *See Newman*, 959 F.3d at 1310 (holding that "[q]ualitative significance is often apparent on the face of the copied portion of a copyrighted work") (citing *Peter Letterese*, 533 F.3d at 1315). Therefore, the alleged infringement of Morford's banana is sufficient, quantitatively and qualitatively, to state a claim.

### 4. Conclusion

As courts and commentators have recognized, the question of substantial similarity is largely a "problem of 'line drawing.'" *See generally Latele Tel., C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-CIV, 2015 WL 427817, at *10 (S.D. Fla. Feb. 2, 2015) (Goodman, M.J.) (citing 4 Nimmer § 13.03[A] and *Nichols v. Universal Pictures Co.,* 45 F.2d 119, 122 (2d Cir. 1930) (Hand, J.)). At the motion-to-dismiss stage, the Court need not decide exactly where to draw the line, but only that some plausible line exists. Therefore, after application of the abstraction-filtration-comparison test, the Court holds—at this stage in the litigation—that Morford has adequately alleged that Cattelan's Comedian has a substantial similarity to the protected elements of Banana & Orange. For the reasons set out above, the Court **denies** the Defendant's motion to dismiss. (**ECF No. 49**.)

**Done and ordered** at Miami, Florida on July 6, 2022.

_____
Robert N. Scola, Jr.
United States District Judge