United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Joe Morford, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-20039-Civ-Scola |
| | ) | |
| Maurizio Cattelan, Defendant. | ) | |

### Order on Cross-Motions for Summary Judgment

This matter is before the Court on the parties' cross motions for summary judgment. The Defendant, Maurizio Cattelan, moves for summary judgment on pro se Plaintiff Joe Morford's claim for copyright infringement. (Def.'s Mot. Summ. J., ECF No. 79.) The Plaintiff also moves for summary judgment on his copyright infringement claim. (Pl.'s Mot. Summ. J., ECF No. 81; Pl.'s Memo. Supp. Mot. Summ. J. ("Memo."), ECF No. 82.) Both parties have responded to each other's motions. (Pl.'s Resp., ECF No. 90; Def.'s Resp., ECF No. 88.) And both parties have replied in support of their own motions. (Def.'s Reply, ECF No. 95; Pl.'s Reply, ECF No. 96.) After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **grants** the Defendant's motion for summary judgment (**ECF No. 79**) and **denies** the Plaintiff's motion (**ECF No. 81**).

### 1. Background

"Life imitates art far more than art imitates life." Oscar Wilde, *The Decay of Lying* (1891). Few people, least of all Maurizio Cattelan, probably expected that his now-infamous, absurdist display of a banana duct-taped to a wall at Art Basel Miami in 2019 would end in litigation. In 2020, however, fellow visual and conceptual artist Joe Morford sued Cattelan, bringing this action for copyright infringement. Morford alleges that Cattelan's banana-on-the-wall from Art Basel—named *Comedian*—unfairly copies his own banana-on-a-wall work, named *Banana and Orange*. (Compl., ECF No. 1.)

Previously, the Court denied Cattelan's motion to dismiss Morford's complaint. In doing so, the Court found that it could not resolve the alleged similarities or dissimilarities between the two works as a purely legal matter based only on the pictures and descriptions provided in Morford's complaint. (Order Denying Mot. Dismiss, ECF No. 56.) Now, after the close of discovery, both Morford and Cattelan move for summary judgment, asserting that Morford's sole claim for copyright infringement can be resolved on the present record. The undisputed materials facts are these.

Maurizio Cattelan, a self-described "visual and conceptual artist" and Italian citizen, designed *Comedian* for the Art Basel Miami art fair in December of 2019. (Def.'s Statement of Material Facts ("SOMF") ¶¶ 2-3, 18, 20, ECF No. 78; M. Cattelan Decl. dated Mar. 2, 2023 ("Cattelan Decl.") ¶¶ 3, 14-15, ECF No. 74-1.) *Comedian*—a banana duct-taped to a wall—was meant to be "simple," "banal," and to reflect "absurdity." (Def.'s SOMF ¶¶ 19-13; Cattelan Decl. ¶¶ 14-16.) Joe Morford, a California citizen who is also a conceptual artist, designed his own banana-duct-taped-to-a-wall work (*Banana and Orange*) in 2001. (Pl.'s SOMF ¶¶ 1-5, ECF No. 83; J. Morford Decl. dated Mar. 3, 2023 ("First Morford Decl.") Ex. 1 at 3-5, ECF No. 84-1; Dep. Tr. of J. Morford dated Dec. 9, 2022 ("Morford Dep.") at 8:16-22, ECF No. 76-1.)

The two works are provided below, with Morford's *Banana & Orange* (Figure 1)[1] on the left and Cattelan's *Comedian* (Figure 2)[2] on the right:



*Figure 2: Banana and Orange*



*Figure 1: Comedian*

---

[1] (Morford Dep. Ex. 2, ECF No. 76-2.)

[2] (Def.'s SOMF ¶ 29; Cattelan Decl. ¶ 21.)

The Court now reviews the undisputed facts as they stand with regards to the composition of each work.[3]

First, the basic similarities. Both works are three-dimensional wall sculptures depicting bananas that are duct-taped to a vertical surface. (Pl.'s SOMF ¶¶ 14-15, Def.'s SOMF ¶¶ 19-27.) In each sculpture, a single piece of plain gray duct tape crosses a yellow banana at an angle and affixes the banana to a vertical surface. (Pl.'s SOMF ¶ 12, Def.'s SOMF ¶ 29.) In both sculptures, the banana is oriented with the stalk on the top, left-hand side of the work from the viewer's perspective. (Pl.'s SOMF ¶ 12, Def.'s SOMF ¶ 29.)

Second, the more specific characteristics of each work. *Banana and Orange* depicts both a banana and an orange, with the orange taped above the banana. (Morford Dep. at 101-112, ECF No. 76-1; Morford Dep. Ex. 2.) Both the banana and the orange are centered on solid green rectangular panels. (Morford Dep. Ex. 2.) Each of those panels is bounded by plain masking tape. (*Id.*; Morford Dep. at 107:6-15.) Both pieces of fruit are plastic sculptures. (Morford Dep. at 88:2 – 90:25.) The orange is duct-taped with the tape running nearly horizontal, while the banana is at a slight angle (less than 45° from horizontal), with the stalk of the banana rising and pointing slightly towards the left, and the duct tape crossing the banana in a nearly perpendicular manner. (Morford Dep. Ex. 2.)

*Comedian*, meanwhile, depicts only a banana duct-taped directly to a wall. (Def.'s SOMF ¶¶ 19-21; Cattelan Decl. ¶¶ 14-15.) The banana in *Comedian* is a real banana; any regular banana from any store may be used in the work. (Def.'s SOMF ¶ 20; Cattelan Decl. ¶ 15.) The work does not specific a specific color for its background; any wall will do. (Def.'s SOMF ¶ 47; Cattelan Decl. ¶¶ 31-33.) There is no border around the banana. (Def.'s SOMF ¶ 49; Cattelan Decl. ¶ 34.) Because the banana is taped directly to the wall, *Comedian* sets out a very specific height at which it is to be placed above the floor. (Def.'s Sealed SOMF ¶ 28.)[4] The banana is placed with the stalk to the

---

[3] The Court observes at this juncture that the parties do not necessarily agree with each other's phrasing of specific observations about the two works, or about other presented facts. The Court will cite to underlying source documents for each fact that it finds to be undisputed where applicable. Frequently, the parties dispute a particular fact offered by the other side without providing any evidentiary support establishing that fact to be in dispute. A party may not simply object to the other's facts and survive summary judgment; he must instead point to evidence that raises a dispute with regards to the veracity of that fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[4] The exact specifications of *Comedian's* installation were filed under seal, and the Court need not recount them precisely here. (Def.'s Sealed SOMF ¶ 28, ECF No. 86-2, sealed.) Instead, the Court observes that *Comedian* has such specifications and will address them only in reference to their similarity, or lack thereto, with *Banana and Orange*.

left, and it is at a strong angle (greater than 45° from horizontal), with the stalk rising and pointing back towards the right. (Def.'s SOMF ¶ 49; Cattelan Decl. ¶ 34.)

Morford originally developed *Banana and Orange* in California in 2001, and the work has been available on the internet through several websites for a number of years. (Pl.'s SOMF ¶¶ 6-9; First Morford Decl. Ex. 1 at 3-7.)[5] *Banana and Orange* was first made available on YouTube on July 18, 2008, and has been viewable in a brief portion of a video there since. (Pl.'s SOMF ¶ 6; First Morford Decl. Ex. 1 at 5.) The work has also been shared on Facebook through a single post and on Blogspot via a blog post since July 23, 2015, and July 2, 2016, respectively. (Pl.'s SOMF ¶¶ 7-8; First Morford Decl. Ex. 1 at 6-7.) Additionally, Morford puts forward some screenshots of website analytics purportedly demonstrating that, between these three sites, *Banana and Orange* has been viewed by internet users in twenty-five different countries. (Pl.'s SOMF ¶ 9; First Morford Decl. Ex. 1 at 18-20.) Finally, Morford registered a copyright for *Banana and Orange* in 2020: he originally submitted his application on January 25, 2020, and after an initial denial and resubmission, the United States Copyright Office approved his application on November 19, 2020. (Def.'s SOMF ¶¶ 38-42; Pl.'s Resp. Def.'s SOMF ¶¶ 38-42.)

Cattelan, on the other hand, submits his own declaration and the declaration of one of his employees in Italy describing the process by which he created *Comedian*. Cattelan relates that he conceived of the idea for *Comedian* in response to a request in September of 2019 to present a work at the Art Basel art fair in Miami, scheduled for December of 2019. (Def.'s SOMF ¶¶ 18-19; Cattelan Decl. ¶¶ 13-15.)[6] Cattelan drew his inspiration from an idea he had previously used in a work for *New York Magazine* in 2018, where he had depicted a banana hanging from a billboard with red duct-tape. (Def.'s SOMF ¶¶ 11-16; Cattelan Decl. ¶¶ 8-11.) Based on this inspiration, Cattelan made some changes to the *New York Magazine* banana piece and asked his employees in Italy to test out bananas taped to the wall of his studio at

---

[5] Cattelan objects to the admissibility of Morford's evidence under Federal Rules of Evidence 402, 403, 802, 901, and 901. (Def.'s Resp. Pl.'s SOMF ¶¶ 6-9, ECF No. 89.) The Court assumes the admissibility of the documents Morford offers to support those facts without deciding that they are actually admissible. As the Court addresses below in Section 3(A), even taken fully at face value, Morford's proof of internet presence is not sufficient to support a finding that Cattelan had access to *Banana and Orange*.

[6] Morford disputes much of what Cattelan asserts in the declaration, claiming that Morford "has no idea if this is true," asserting that Cattelan's statements are "baseless," or arguing that Cattelan's statements are invalid. (*See, e.g.,* Pl.'s Resp. Def.'s SOMF ¶¶ 1-31, ECF No. 91.) But Morford presents no evidence—testamentary or otherwise—to refute Cattelan's statements. (*See id.*)

different heights and angles. (Def.'s SOMF ¶¶ 21-24; Cattelan Decl. ¶¶ 15-18.) Cattelan chose the final specifications for *Comedian* following that experimentation. (Def.'s SOMF ¶ 25; Cattelan Decl. ¶ 19.) One of Cattelan's employees, Jacopo Zotti, corroborates Cattelan's account of *Comedian's* development process. (J. Zotti Decl. dated Mar. 3, 2023 ("Zotti Decl.") ¶¶ 5-7, ECF No. 75-1.) Finally, Cattelan expressly states that he has never heard of Joe Morford prior to this lawsuit and was similarly unaware of *Banana and Orange*. (Def.'s SOMF ¶¶ 32-33; Cattelan Decl. ¶¶ 24-27.)

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. The moving party bears the burden of proof to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

Finally, where the moving party has asserted affirmative defenses, it bears the burden of proof to show that no genuine issue of material fact exists with respect to the affirmative defenses. *Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008); *see also Mulhall v. Advance Sec., Inc.*, 19 F.3d 586,

591 (11th Cir. 1994) ("Thus, by moving for summary judgment . . ., defendants thrust before the court for scrutiny not only the merits of plaintiff's evidence, but the strength of their own defense and must establish that there is an absence of any issue for jury resolution.").

### 3. Analysis

Previously, in its order denying Cattelan's motion to dismiss, the Court observed that it thankfully did not have to determine "what art is" to resolve the thorny issues then before it. Now, presented with a fulsome factual record and cross-motions for summary judgment, "what art is" looms closer in mind. Fortunately, the Court still need not attempt to answer that age-old (and frankly unanswerable) question. But the Court must resolve here whether it can find that one artist's banana duct-taped to a wall is, in fact, an infringement upon another's, or whether such an issue must be decided by a jury. Art may not be easily definable, but life does imitate it—even in its absurdities.

To succeed on a claim of copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)). Copying requires both "factual and legal copying"—in other words, a plaintiff must show both that (1) the defendant "actually used" the copyrighted work and that (2) the copied elements are "protected expression" such that the appropriation is legally actionable. *See Newman*, 959 F.3d at 1301 (citing *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1148 n.40 (11th Cir. 2007) and *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996)).

First, a plaintiff must show factual copying by either (1) direct evidence or (2) indirect evidence "demonstrating that the defendant had access to the copyrighted work and that there are probative similarities between the allegedly infringing work and the copyrighted work." *See Newman*, 959 F.3d at 1301 (quoting *MiTek*, 89 F.3d at 1554). "Access requires proof of 'a reasonable opportunity to view' the work in question." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (quoting *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999)).

Second, legal copying looks to whether the similarities between the two works extend to the work's original, protectible elements. *See Newman*, 959 F.3d at 1306; *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 359 (1991). "In most cases, 'a substantial similarity' between the allegedly offending program and the protectable, original elements of the copyrighted

works establishes actionable copying." *Newman*, 959 F.3d at 1302 (cleaned up). Not all aspects of a work are protectible. *Herzog*, 193 F.3d at 1248 ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself."). Therefore, courts must assess "both the quantitative and the qualitative significance" of the protectible elements that the infringing work purportedly copies from "the copyrighted work as a whole." *Newman*, 959 F.3d at 1302 (cleaned up).

Morford argues that he is entitled to summary judgment because there is no dispute of material fact that Cattelan had access to *Banana and Orange*, that *Comedian* has substantial similarities to *Banana and Orange's* protectible elements. (Pl.'s Memo. at 6-19.) Cattelan, of course, argues the opposite—that Morford has failed to put forth sufficient evidence of access and *Comedian* is sufficiently dissimilar to *Banana and Orange's* protected elements. (Def.'s Mot. Summ. J. at 9-17.) Cattelan also argues that he has put forth evidence that he independently created *Comedian*, which Morford has failed to rebut, and that Morford's claims are precluded by the doctrine of merger. (*Id.* at 17-20.) While applying the standards established by the Eleventh Circuit and considering only the undisputed material facts the parties put forth, the Court addresses each of the parties' arguments in turn.[7]

### A. Morford Fails to Put Forth Sufficient Evidence Demonstrating that Cattelan Had a Reasonable Opportunity to View *Banana and Orange*

Access may not be proven by showing that a defendant simply had some possible opportunity to review a plaintiff's copyrighted work. Rather, the Eleventh Circuit requires a plaintiff to demonstrate that a defendant had a "reasonable opportunity to view" the copyrighted work. *Herzog*, 193 F.3d at 1249. Importantly, "[r]easonable opportunity does not encompass any bare possibility," and "[a]ccess may not be inferred through mere speculation or conjecture." *Id.* (citations omitted).

Morford argues that Cattelan had a reasonable opportunity to view *Banana and Orange* because it has been posted on the internet for several years. He asserts that his work "has been available on YouTube since July 18, 2008, on Facebook since July 29, 2015, and on Blogpost since July 2, 2016."

---

[7] Morford also argues that he has a valid copyright in *Banana and Orange*, which Cattelan disputes. The Court assumes for the sake of argument (but does not find) that Morford has demonstrated that he has a valid copyright. As the Court will address below, because Morford has not put forth sufficient evidence to meet his burden of proving copying, the Court need not address whether his copyright is valid.

(Pl.'s Mot. Summ. J. at 6; Pl.'s SOMF ¶¶ 6-9; First Morford Decl. Ex. 1 at 3-7.) Based on the fact that *Banana and Orange* has been "verifiably viewed worldwide over a span of approximately 10 years prior to the appearance of [the] [D]efendant's piece," Morford argues by implication that access can, at this point, be presumed. ((Pl.'s Mot. Summ. J. at 6-7; Pl.'s SOMF ¶¶ 6-9; First Morford Decl. Ex. 1 at 3-7.) [8]

But mere availability, and therefore possibility of access, is not sufficient to prove access. *Herzog*, 193 F.3d at 1249. "[M]ere speculation and conjecture" are insufficient to sustain a finding of access. *Id.* A plaintiff cannot prove access only by demonstrating that a work has been disseminated in places or settings where the defendant may have come across it. *Id.* at 1249-52 (holding that some "nexus" between the plaintiff and the defendant is required to establish an inference of access where the plaintiff's work was disseminated in a setting where the defendant may have come across the work). And, despite the Plaintiff's arguments to the contrary, whether a work has caught on in popularity is a viable consideration in determining access. *Watt v. Butler*, 457 F. App'x 856, 859-60 (11th Cir. 2012) (holding that the plaintiff could not prove a finding of access where there was "no evidence that 'Come Up' [the plaintiff's allegedly infringed song] ever caught on in popularity" or that the song or the performing group ever "became a commercial success."). A work's mere presence on the internet alone, then, is insufficient to demonstrate access without some additional proof that the defendant had some relevant nexus to the plaintiff's work or that the plaintiff's work enjoyed some meaningful level of popularity. *See Herzog*, 193 F.3d at 1249; *Watt*, 457 F. App'x at 859-60.[9]

The Plaintiff puts forward no evidence here supporting a reasonable opportunity for Cattelan to have viewed *Banana and Orange*. His evidence amounts to no more than proof that his work was available on one Facebook post, one YouTube video, and one blog post. (Pl.'s SOMF ¶¶ 6-9; First Morford Decl. Ex. 1 at 3-7.) Nowhere is Morford able to demonstrate that *Banana and*

---

[8] The parties do not dispute whether *Banana and Orange* and *Comedian* have "probative similarities" sufficient to support indirect evidence of copying. Given that both works are bananas duct-taped to walls, the Court sees no need to belabor this point. (*See* Order Denying Mot. Dismiss at 4-6.)

[9] While the issue has not been addressed directly in the Eleventh Circuit, other Circuit Courts of Appeals have held that mere publication on the internet is not sufficient to demonstrate access. *See, e.g., Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1108 (7th Cir. 2017) (holding that "the existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials."). This holding comports with the relevant Eleventh Circuit case law, as the Court observes above, and the Court finds it to be persuasive here.

*Orange* enjoyed any particular or meaningful level of popularity; in fact, the evidence cited supports the opposite finding, that it remained a relatively obscure work with very limited publication or popularity. (*Id.*) Nor is Morford able to demonstrate any particular nexus between Cattelan and himself. Instead, the only record evidence relating to any connections between the two is Cattelan's clear statement that he had never heard of Morford until this lawsuit. (Def.'s SOMF ¶¶ 32-33; Cattelan Decl. ¶¶ 24-27.) The Court cannot find that Morford has demonstrated that Cattelan had access to *Banana and Orange* based on these facts. *See Herzog,* 193 F.3d at 1249; *Watt,* 457 F. App'x at 859-60. While this finding alone would be dispositive of Morford's claims, the Court will further address the works' similarities and Cattelan's asserted defenses below.

### B. The Undisputed Evidence Demonstrates that Any Similarities Between *Comedian* and *Banana and Orange* Are Unprotected

The Court's determination of legal copying is based on the century-old understanding that "unprotected material should be disregarded when comparing two works." *Newman*, 959 F.3d at 1303. To understand whether material is protected and therefore determine whether two works are substantially similar in a legally protectible manner, the Eleventh Circuit has prescribed the use of the "abstraction-filtration-comparison" test. *Id.* "In order to ascertain substantial similarity under this approach, a court first breaks down the allegedly infringed program into its constituent structural parts—that's abstraction." *Id.* (cleaned up.) "Next, the court sifts out all non-protectible material—filtration." *Id.* (cleaned up.) Finally, the "last step is to compare any remaining kernels of creative expression with the allegedly infringing [work] to determine if there is in fact a substantial similarity—comparison." *Id.* (cleaned up.)

Applying the abstraction-filtration-comparison test, the Court finds that Cattelan has established that *Comedian* is not substantially similar to *Banana and Orange*. Primarily, this is determined at the filtration and comparison stages: once the Court sorts out what parts of *Banana and Orange* are protectible and compares those parts to *Comedian*, it becomes clear that there is no dispute of material fact that *Comedian* is too dissimilar to *Banana and Orange* to be a legal copy.

### (1) Abstraction: The Pieces of *Banana and Orange*

The abstraction test, initially developed to review claims of copyright infringement relating to novels and plays but also applied in contexts such as

software programming, requires the Court to "reverse engineer" the work at issue. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 707 (2d Cir. 1992); *see also Bateman*, 79 F.3d at 1543-45 (adopting the Second Circuit's abstraction-filtration-comparison test in the context of computer programming). To do so, the Court must "dissect the allegedly copied [work's] structure and isolate each level of abstraction contained within it." *Altai*, 982 F.2d at 707. In undertaking this test, the Court is guided by the principle so well-articulated by Judge Learned Hand when addressing abstraction:

> Upon any work, and especially upon a play, a great number of patterns of increasing generality will fit equally well, as more and more of the incident is left out. The last may perhaps be no more than the general statement of what the play is about, and at times consist of only its title; but there is a point in this series of abstractions where they are no longer protected, since otherwise the playwright could prevent the use of his "ideas," to which apart from their expression, his property is never extended.

*Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930). In separating *Banana and Orange* into its abstract parts, then, the Court seeks to separate Morford's expressions from his ideas.

The Court has previously reviewed *Banana and Orange* to apply the abstraction test in deciding Cattelan's motion to dismiss. That same analysis still applies here, as the undisputed evidence that the parties have put forward demonstrates. The Count there found these to be the abstracted elements of *Banana and Orange*:

> Morford's Banana & Orange features two green rectangular panels, each seemingly attached to a vertical wall by masking tape. The panels are stacked on top of each other, with a gap between each. Roughly centered on each green panel is a fruit: an orange on the top panel and a banana on the lower panel. The orange is surrounded by masking tape, and a piece of silver duct tape crosses the orange horizontally. The banana is at a slight angle, with the banana stalk on the left side pointing up. The banana appears to be fixed to the panel with a piece of silver duct tape running vertically at a slight angle, left to right.

(Order Denying Mot. Dismiss at 9.) The Court will again review the filtration test, applying these abstracted elements, but this time with the benefit of the parties' undisputed facts following discovery.

### (2) Filtration: *Banana and Orange* Contains Few Protectible Elements

The filtration step is based on the idea that "copyright protection extends only to a work's expressive elements, not to any underlying 'idea, procedure, process, system, method of operation, concept, principle, or discovery' expressed therein." *Newman*, 959 F.3d at 1304 (quoting 17 U.S.C. § 102). The filtration step also incorporates the merger doctrine. This doctrine captures the understanding that "some expression may be so intrinsic to the communication of an idea—or procedure, process, etc.—that it is considered to have 'merged' into the idea." *Id.* Filtration also takes into consideration that "material taken from the public domain is unprotected, even if incorporated into a copyrighted work." *Id.* Additionally, "material may be unprotected if it constitutes *scènes à faire*—that is incidents, characters, or settings that are indispensable or standard in the treatment of a given topic." *Id.* (cleaned up.) And "[f]inally, certain ways of arranging information—say, alphabetically—are entirely unoriginal, and therefore unprotectable." *Id.*

Generally, the burden of demonstrating that a particular element of a work should be filtered out during this stage falls on the defendant. *Id.* at 1305 ("we now clarify that after an infringement plaintiff has demonstrated that he holds a valid copyright and that the defendant engaged in factual copying, the *defendant* bears the burden of proving—as part of the filtration analysis—that the elements he copied from a copyrighted work are *unprotectable*.") (emphasis in original). Therefore, the Court will approach the filtration analysis by assessing whether Cattelan can meet this burden.

Before the Court begins its filtration analysis, it must review the items it previously decided on Cattelan's motion to dismiss that have not changed here. First, "Morford cannot claim a copyright in the idea of affixing a banana to a vertical plane using duct tape." (Order Denying Mot. Dismiss at 9.) Second, Morford cannot "claim a copyright in bananas or duct tape." (*Id.*) The Court did find that Morford may be able to present some more specific aspect of *Banana and Orange* that is protectible. (*Id.* at 10.) But, because the argument was not developed at the time, the Court did not determine how the merger doctrine might apply to these two works. (*Id.*) Accordingly, it will do so now.

As noted above, "copyright normally protects the expression of ideas, but not the ideas themselves." *BUC Int'l*, 489 F.3d at 1142. By way of example (and as the Eleventh Circuit observed in *BUC International*) the expressions in the novel *Moby-Dick* are protected by copyright, but "the idea of hunting a formidable whale at the lead of an eccentric captain is not." *Id.* This "idea-expression dichotomy" is the normal standard in copyright law. *Id.* at 1143.

But "[u]nder the merger doctrine, expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *BellSouth Advert. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1442 (11th Cir. 1993) (cleaned up). The Eleventh Circuit has offered a few examples of ideas that have "so few ways" of being expressed that the expression of the idea necessarily "merges" with the idea itself, making the expression therefore unprotectible. *Id.*; *BUC Int'l*, 489 F.3d at 1142.

For example, the everyday "Prohibited" sign merges with the idea that something is prohibited, making the classic "circle with a diagonal line crossed through it" unprotectible even as an expression. *BUC Int'l*, 489 F.3d at 1143. Similarly, an alphabetical arrangement of a business directory cannot be protected because it "is the one way to construct a useful business directory." *BellSouth*, 999 F.3d at 1442. In other words, when the way to express an idea is so limited in practice that separate expressions of that idea will necessarily be the same, the expression is not protectible. *BUC Int'l*, 489 F.3d at 1143; *BellSouth*, 999 F.3d at 1442.

The parties argue vigorously over whether the merger doctrine is at all applicable to the concept of a banana taped to a wall with duct tape. Cattelan, unsurprisingly, advocates that "the idea of duct-taping a banana to a vertical surface and the expression are essentially one and the same." (Def.'s Mot. Summ. J. at 20.) Morford, in turn, argues that the doctrine is wholly inapplicable. He asserts that the method both artists chose—the banana and the duct tape placed at an essentially perpendicular angle, with a single piece of tape crossing the banana, and the two objects forming an "X"—is a "creative choice" that can be copied. (Pl.'s Resp. at 18.)

Guided by the Eleventh Circuit's decision in *BUC International*, the Court finds that the merger doctrine is applicable, although not as broadly as Cattelan argues. 489 F.3d at 1143. While addressing the merger doctrine in the context of software programs, the Eleventh Circuit offered an analogy that is spot on to the present situation—like the "Prohibited" sign, there are only so many ways to express the concept of a banana taped to a wall. *Id.* ("Since there are effectively only a few ways of visually presenting the idea that an activity is not permitted, copyright law would not protect the expression in this case, i.e., the circle with the line through it.").

The method chosen by both Morford and Cattelan—the "X" shape of the duct tape crossing the banana in a perpendicular manner—essentially merges with the concept of taping a banana to a wall. *Id.* It is, to put it bluntly, the obvious choice. Placing the tape parallel with the banana would cover it. Placing more than one piece of tape over the banana, at any angle, would

necessarily obscure it. An artist seeking to tape a banana (or really, any oblong fruit or other household object) to a wall is therefore left with "only a few ways of visually presenting the idea"—all of which involve a piece of tape crossing the banana at some non-parallel angle. *Id.*

Where does this leave the Court's filtration analysis? Effectively, it removes from consideration the largest and most obvious abstracted element of *Banana and Orange*: the "banana [that] appears to be fixed to the panel with a piece of silver duct tape running vertically at a slight angle, left to right." (Order Denying Mot. Dismiss at 10.) This expression is not protectible under the merger doctrine. But that is not to say that Morford's work is wholly unprotectible under the doctrine, and this is where the Court diverges from Cattelan's position. There are still protectible elements of Morford's work: (1) the green rectangular panel on which the fruit is placed; (2) the use of masking tape to border the panels; (3) the orange on the top panel and banana on the bottom panel, both of which are centered; (4) the banana's placement "at a slight angle, with the banana stalk on the left side pointing up." (*Id.*)

Having reduced the protectible elements of Morford's work to these four elements, the Court proceeds to the final step: comparison.

### (3) Comparison: *Comedian* Does Not Copy *Banana and Orange's* Protectible Elements

The comparison step is perhaps the most direct, although it still has its nuances: once the Court has broken down the original work into its relevant parts and "filtered" out the unprotectible portions, the Court must compare the allegedly infringing work with the protectible parts that remain. This is not a simple comparison of any and all similarities. *Herzog*, 193 F.3d at 1257 ("Lists of similarities between the two works are 'inherently subjective and unreliable,' particularly where the list contains random similarities, and many such similarities could be found in very dissimilar works.").

Rather, "the court's substantial similarity inquiry focuses on whether the defendant copied any aspect of this protected expression, as well as an assessment of the copied portion's relative importance with respect to the plaintiff's overall [work]." *Altai*, 982 F.2d at 710. This inquiry must focus on whether any similarities are significant to the copyrighted work—not whether those similarities are significant to the allegedly infringing work. *Newman*, 959 F.3d at 1308 ("The law is clear that both the quantity of the appropriation and the qualitative importance of the appropriated portion are properly judged by their significance to the copyrighted work, not their significance to the allegedly infringing work.").

Considering the filtered, protectible aspects of *Banana and Orange*, and comparing the associated aspects of *Comedian*, the Court arrives at the following list of comparable elements of each work.

| Element | *Banana and Orange* | *Comedian* |
|---|---|---|
| Background: | Solid green, rectangular panel | No specified background, any wall space may be used; white wall used in example |
| Border: | Plain masking tape | No border |
| Placement: | Banana roughly centered in bottom panel, below orange, with the stalk placed to the left-hand side | Banana placed at specified height above the floor,[10] with the stalk placed to the left-hand side |
| Angle: | A slight angle (less than 45° from horizontal), with the stalk of the banana rising and pointing slightly towards the left | A strong angle (greater than 45° from horizontal), with the stalk of the banana rising and pointing back towards the right |

Reviewing these elements as a whole, it is clear that *Banana and Orange* and *Comedian* share only one common feature that the Court has not already set aside as unprotectible: both bananas are situated with the banana's stalk on the left-hand side of sculpture. This solitary common feature is, on its own, insignificant and insufficient to support a finding of legal copying. *See Altai*, 982 F.2d at 710. And the placement of the banana's stalk (on the right-hand side of the sculpture versus the left, or vice-versa) would be another element subject to the merger doctrine anyway: there are only two ways the stalk may be placed, to the right or to the left. *BUC Int'l*, 489 F.3d at 1143.

The remaining features are simply too disparate to support a finding of substantial similarity. *Banana and Orange's* background is green and is not a part of the wall itself. (Morford Dep. Ex. 2.) *Comedian's* background is always the wall itself; it just so happens that in the (in)famous Art Basel display, the wall was white. (Def.'s SOMF ¶ 47; Cattelan Decl. ¶¶ 31-33.) *Banana and Orange* has a border of masking tape around the piece; *Comedian* has no

---

[10] As the Court observed in Section 1, *supra*, the exact height at which the banana in *Comedian* is placed above the floor was filed under seal, and the Court need not identify the exact specifications here to demonstrate this element's difference from *Banana and Orange*.

border—it is simply a banana on a wall. (Morford Dep. Ex. A; Morford Dep. at 107:6-15; Def.'s SOMF ¶ 49; Cattelan Decl. ¶ 34.) The banana in *Banana and Orange* is roughly centered on the green backing and placed below a similarly centered orange. (Morford Dep. at 101-112, ECF No. 76-1; Morford Dep. Ex. 2.) The banana in *Comedian* is placed relative to the floor, rather than relative to a piece of backing or another object taped to the wall. (Def.'s Sealed SOMF ¶ 28.). Finally, *Banana and Orange's* banana is placed at a different angle than *Comedian's*, and the bananas' stalks ultimately point in different directions due to the different angles. (Morford Dep. Ex. A; Def.'s SOMF ¶¶ 29, 49; Cattelan Decl. ¶¶ 21, 34.)

Morford makes much of the fact that the bananas' angles are relatively similar, but this point actually works against him. There are only so many angles at which a banana can be placed on a wall (360, to be precise, unless one breaks the measurements down beyond degrees—but making such a minute distinction would be reaching a point of absurdity best left out of the courts and in the hands of artists). Finding that Morford's and Cattelan's selections of different angles were "close enough" to reach substantial similarity would necessarily place a significant legal limit on the number of ways that a banana can be taped to a wall without copying another artist's work. *See BUC Int'l*, 489 F.3d at 1143. In other words, the Court would need do that which it has already said it cannot do—find that Morford could copyright the idea of duct-taping a banana to a wall.

Finally, these differences are not "intentional dissimilarities," as Morford argues, that would allow the Court to find legal copying despite the differences. (Pl.'s Memo. at 13-14.) Intentional dissimilarity—a doctrine that, to the best of the Court's determination, has not been applied in the Eleventh Circuit—allows a court to support a finding of substantial similarity if certain dissimilarities in two works are "particularly suspicious." *See, e.g., Selle v. Gibb*, 741 F.2d 896, 904 (7th Cir. 1984) (discussing and applying the doctrine in the context of "striking similarity" analysis). Regardless, this concept does not help Morford's claim. To find that the genuine differences between Morford' and Cattelan's works could be disregarded as "intentionally dissimilar" would be to find that Morford could essentially copyright the idea of a banana taped to a wall. This the Court will not do.

Instead, these differences demonstrate that *Comedian* and *Banana and Orange* are different expressions of the underlying idea. While the Court was previously unwilling to find that *Comedian* was not substantially similar to *Banana and Orange*, it was there working under the standards imposed by Federal Rule of Civil Procedure 12(b)(6) and without the benefit of discovery. (Order Denying Mot. Dismiss at 9-10.) Having reviewed the parties' extensive

factual submissions in support of their motions, and having fully addressed the applicability of the merger doctrine, the lack of similarity between the two works is now clear and inescapable. *Comedian* simply contains two many differences from *Banana and Orange*: the banana used, the angle at which it is placed, the method by which it is taped to the background, the background itself, and the exacting standards that Cattelan developed for *Comedian's* display. To find otherwise would further limit the already finite number of ways in which a banana may be legally taped to a wall without infringing on Morford's work. *See, e.g., BUC Int'l*, 489 F.3d at 1143. Accordingly, the Court finds that *Comedian* and *Banana and Orange* are not substantially similar and, therefore, Cattelan cannot have legally copied Morford's work.[11]

### C. Morford Fails to Rebut Cattelan's Evidence of Independent Creation

Even if Morford could establish that Cattelan had access to *Banana and Orange* and that *Comedian* bore a substantial similarity to the earlier work, he cannot point to any evidence in the record contradicting Cattelan's evidence that *Comedian* was independently created. "Proof of access and substantial similarity raises only a presumption of copying which may be rebutted by [the defendant] with evidence of independent creation." *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002). Once the defendant offers competent evidence of independent creation, the burden shifts to the plaintiff to prove that the defendant in fact copied the original work. *Id.* at 1233. Additionally, evidence of independent creation may be accepted even if it is not from or "corroborated by documentary evidence or by a disinterested third-party." *Watt*, 457 F. App'x at 861; *see also Calhoun*, 298 F.3d at 1233-34 (accepting the defendant's statement in his affidavit that he independently created a song at issue in a copyright dispute and observing that the plaintiff failed to rebut this competent evidence).

Cattelan provides sufficient competent evidence supporting his defense of independent creation, and Morford fails to rebut any of it. Cattelan has provided, in his own declaration, a detailed description of the circumstances under which he created *Comedian*. (Cattelan Decl. ¶¶ 8-25.) Cattelan first thought of the idea of displaying a banana taped to a wall in 2018, in response

---

[11] Morford also argues that *Comedian* is strikingly similar to *Banana and Orange* and, therefore, he does not even need to prove the access prong of factual copying. (Pl. Memo. at 8-9.) Because the Court finds the two works not to be substantially similar, it also finds that they are not strikingly similar. *Corwin*, 475 F.3d at 1253 ("Striking similarity exists where the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'").

to an invitation from *New York Magazine*. (*Id.* ¶¶ 8-10.) He eventually adapted this idea for Art Basel in Miami. (*Id.* ¶ 14-15.) In doing so, he decided that a real banana and ordinary gray duct tape best suited his vision for the work. (*Id.*) Cattelan decided to charge $120,000 for the piece to further demonstrate its absurdity. (*Id.* ¶ 16.) Additionally, Cattelan had detailed discussions with his staff regarding the specifications for *Comedian*: the angle at which the banana should be placed, the lengths of duct tape, the height above the ground, etc. (*Id.* ¶¶ 18-19.) One of Cattelan's employees (Jacopo Zotti) also submitted a declaration confirming Cattelan's recollections of the process used to create *Comedian*. (Zotti Decl. ¶ 5-8.) Finally, Cattelan affirmatively states that he had never heard of Morford or *Banana and Orange* prior to this lawsuit. (Cattelan Decl. ¶¶ 24-30.) This is all sufficient and competent evidence of Cattelan's independent creation of *Comedian*. *Calhoun*, 298 F.3d at 1233-34 (holding that composer's affidavit stating he independently created allegedly infringing hymn at church service and did not rely on "any sheet music, lead sheets or hymnals" in doing so, along with affidavits of witness, sufficed to prove independent creation defense when unrebutted).

 Morford never rebuts any of Cattelan's or Zotti's statements. To be sure, he challenges them, and asserts that Cattelan cannot base independent creation on those facts alone. (Pl.'s Resp. at 17-18). But Morford credits Cattelan's own statements in Morford's response to Cattelan's statements of material facts: he cites to Cattelan's declaration for the points the Court has just observed, above. (Pl.'s Resp. SOMF ¶¶ 54-71.) Morford then cites statements from Cattelan suggesting that Cattelan is willing to appropriate another artist's work. (*Id.* ¶¶ 68-71.) None of those statements involve the circumstances at hand, however. Rather, they amount to nothing more than an expression of Cattelan's views on art in general.[12] And, more importantly, Morford never cites to <u>any</u> record evidence that raises a genuine dispute of material fact regarding Cattelan's explanation of independent creation.

 In sum, Cattelan is the only party who has put forward any evidence addressing the defense of independent creation. The Court may, and does, credit his declaration and the declaration of his employee. *Calhoun*, 298 F.3d at 1233-34. Morford puts forward no evidence demonstrating that anything Cattelan or Zotti says is untrue. Therefore, even if Morford could prove factual and legal copying through reasonable opportunity for access and substantial similarity, the independent creation doctrine would prevent his recovery against Cattelan for copyright infringement. *Id.*

---

[12] This even assumes that the Court could or would credit the statements as relevant and as permissible, rather than a non-permissible attack on character. Fed. R. Ev. 401, 404.

### 4. Conclusion

The Court finds that there is no dispute of material facts with regards to Cattelan's lack of access to *Banana and Orange*, the lack of legal similarities between *Comedian* and *Banana and Orange*, and Cattelan's proof of his independent creation of *Comedian*. For these reasons, as detailed above, the Court **grants** Defendant Maurizio Cattelan's motion for summary judgment (**ECF No. 79**) and **denies** Plaintiff Joe Morford's motion for summary judgment (**ECF No. 81**). The Clerk is directed to **close** this matter. Any pending motions are **denied as moot**. The Court will separately enter final judgment, as required by Federal Rule of Civil Procedure 58.

**Done and ordered** at Miami, Florida on June 9, 2023.

_____
Robert N. Scola, Jr.
United States District Judge